PER CURIAM.
The Florida Bar petitions this Court to amend the Rules Regulating The Florida Bar and to change the format of those rules generally to comply with style and gender requirements as mandated by this Court and in response to the Report of The Florida Supreme Court Gender Bias Study Commission, 42 Fla.L.Rev. 803 (1990). We have jurisdiction. Art. V, §§ 2(a) and 15, Fla. Const.
The specific rules before us to be created or amended are listed below. Those rules requiring only style and format changes are not listed.
Rule l-7.3(a) Dues Requirement
Rule 1-7.3(c) Election of Inactive Membership
Rule 2-3.2(d) Powers (previously rule 2-3.2(c))
Rule 3-5. l(i) Restitution (new)
Rule 3-7.4(() Letter Reports of No Probable Cause Cases (previously rule 3-7.4(k))
Rule 3-7.6(n) Cost of Review or Reproduction
Rule 3-7.10(e) Reference of Petition for Hearing
Rule 4-1.17 Sale of Law Practice (new)
Rule 4-5.4(a) Professional Independence of a Lawyer
Rule 4-5.6 Restrictions on Right to Practice
Rule 4-7.2(n) Advertising
Rule 4-7.5 Evaluation of Advertisements
Rule 4-7.8 Lawyer Referral Services
Rule 6-4.4 Recertification (board certified civil trial lawyer)
Rule 6-5.4(b) Recertification (board certified tax lawyer)
Rule 6-6.5(c) Recertification (board certified marital and family lawyer)
Rule 6-8.4(c) Recertification (board certified criminal trial lawyer)
Rule 6-8.6(c) Recertification (board certified criminal appellate lawyer)
Rule 6-9.4(b) Recertification (board certified real estate lawyer)
Rule 6-11.5(d) Recertification (board certified workers’ compensation lawyer)
Chapter 6-12 Basic Skills Course Requirement
Chapter 10 Rules Governing the Investigation and Prosecution of the Unlicensed Practice of Law
Chapter 16 Foreign Legal Consultancy Rule (new)
*253 With minor modifications as set forth herein, we approve the bar’s proposals. We also consider, on our own motion, amendments to the following rules:
Rule 4 — 1.5(f) Fees for Legal Services
Rule 11-1.8 Continuation of Practice Program after Completion of Law School Program or Graduation
We find the following rules deserve discussion.
Rule 4-1-17 — Sale of Law Practice
Rule 4-1.17 is a proposed new rule concerning the sale of a law practice. We approve the rule as proposed. Nevertheless, because of comments we received and because of the need to protect the rights of clients, we request the bar to consider possible future modification of the rule to allow for the sale of a law practice to more than one entity.
Rule 4-7.2(n) — Advertising
The proposed amendment to rule 4-7.2(n) (Advertising) allows lawyers to provide information about an area in which they practice, even though it may not be an area subject to certification. One comment submitted to this Court suggested that language should be added to include information regarding the lawyer’s educational background. The Florida Bar’s Standing Committee on Advertising has agreed to language that would modify the proposed rule as follows:
(3) Technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions.
We find that the additional language should be included in the new rule.
Rule 4~7-5 — Evaluation of Advertisements
The proposed amendment to rule 4-7.5 (Evaluation of Advertisements) removes the specific fees set forth in subdivision (d)(4) for evaluation and review of advertisements and in subdivision (i) for modification of advertisements. In lieu thereof, the proposed amendment provides that the fees are to be set by the board of governors in an amount that approximates the cost of the advertising program. Implementing this change would allow the board of governors to increase the fee without amending this rule. While we agree some flexibility should be incorporated into the rule, we find that the fee should, in no event, exceed $50 and any fee above that amount should first be approved by this Court. In accordance with this conclusion, rule 4-7.5 is modified to read as follows:
(d)(4) Aa fee of-twenty-five dollars to be set by the board of governors but not exceeding $50, made payable to The Florida Bar. This fee shall be used only-for the purposes to offset the cost of evaluation and review of advertisements submitted under these rules and for the related-purpose cost of enforcing these rules.
(i) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee of twenty dollars to be set by the board of governors but not exceeding $50.
Rule 4-7.8 — Lawyer Referral Services
The proposed, change to rule 4-7.8(b) (Lawyer Referral Services) expands the definition of a referral service to include group or pooled advertising schemes between lawyers in different firms. The Lawyers Referral Service Committee of The Florida Bar suggests that the following clarification sentence also be added to the proposed rule:
A pro bono referral program, in which the participating attorneys do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred *254 matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.
As noted by the committee, the distinction is important because most pro bono referral services are bar-sponsored and funded by the local bar association. The Florida Bar has no objection to the inclusion of this additional language, and we find that this sentence should be added to the proposed rule.
Rule 10-7.1 — Procedures for Issuance of Advisory Opinions on the Unlicensed Practice of Law
Rule 10-7.1(f)(3), renumbered 10-9.1(f)(3) (Procedures for Issuance of Advisory Opinions on the Unlicensed Practice of Law), contains a provision that eliminates the need to publish in full a proposed advisory opinion. Instead, the proposed rule requires publication of a notice two weeks before the filing of an opinion and allows interested parties to obtain a copy of the full opinion and file a response. This proposed change places the burden on an interested party to request a copy of the full opinion. Under the existing rule, the burden is on the interested party to simply read the opinion as it appears in the The Florida Bar News. However, as noted by the bar, because the current rule only provides for publication within a “reasonable time,” the proposed two week notice requirement will actually provide interested parties with more time to review and analyze the opinion. Thus, we find that the proposed change does not violate due process, and we reject the suggestion that the present provision should be retained.
New Chapter 16 — Foreign Legal Consultancy Rule
The final proposal of the bar warranting discussion concerns a proposed new chapter 16 entitled “Foreign Legal Consultancy Rule.” This new chapter is designed to allow attorneys admitted to the practice of law in a foreign country to open offices in Florida and to advise persons as to the law of their foreign jurisdiction. A registration and regulatory scheme would be provided, as well as a reciprocity requirement for Florida attorneys in such foreign jurisdictions. This rule is proposed by the International Law Section of the Florida Bar.
The International Law Section believes the new chapter would resolve uncertainty in this unregulated and unsettled area of the law by regulating this type of practice and by making foreign legal consultants accountable in Florida. Additionally, by aiding the delivery of legal services regarding foreign law that are necessary to international trade and investment, the International Law Section believes the proposed chapter would promote Florida’s goal of attracting more foreign investment and business.
The Florida Board of Bar Examiners objects to the proposal, believing that the chapter does not sufficiently protect the public. We disagree. The proposed chapter provides a means of control and protection for the public that does not now exist and, consequently, we find that it is an adequate beginning for regulation of this type of legal activity.
We decline, however, to adopt the proposed provision requiring foreign legal consultants to be admitted to practice in a foreign country that recognizes a reciprocal right of Florida attorneys to practice in that country. As indicated by the United States Trade Representative, the United States Government is currently engaged in negotiations with foreign countries to provide for open markets through mutual agreement that, as a general rule, requires countries to refrain from using reciprocity requirements. The United States Trade Representative has requested we eliminate the reciprocity provision because it would interfere with those trade negotiations. We accede to this request and find it inappropriate to include the reciprocity requirement in the new chapter.
In addition to the bar’s proposals, this Court, on its own motion, makes the following rule changes:
Rule 4-1.5(f) — Fees for Legal Services
Rule 4 — 1.5(f)(4)(B)(i) establishes guidelines for contingent fees and states that *255 contingent fees over the amounts set forth in the rule are presumed to be clearly excessive. As the rule currently reads, the formula for contingency fees is somewhat ambiguous. To eliminate the ambiguity, we have amended the rule as set forth in the appendix to this opinion.
Rule 11-1.8 — Continuation of Practice Program after Completion of Law School Program or Graduation
We have included a new paragraph in rule 11-1.8 to establish the definition of an equivalent law school practice program for students from non-Florida law schools.
Accordingly, we approve amendments to the Rules Regulating The Florida Bar as set forth in the appendix to this opinion. These amendments shall be effective at 12:01 a.m. on January 1, 1993.
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.
APPENDIX
RULES REGULATING THE FLORIDA BAR
CHAPTER 1. GENERAL
INTRODUCTION
The Supreme Court of Florida by these rules establishes the authority and responsibilities of The Florida Bar, an official arm of the Ccourt.
1-1. NAME
The name of the body regulated by these rules shall be THE FLORIDA BAR.
1-2. PURPOSE
The purpose of The Florida Bar shall be to inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence.
1-3. MEMBERSHIP
RULE 1-3.1 COMPOSITION
The membership of The Florida Bar shall be composed of all persons who are admitted by this Court the Supreme Court of Florida to the practice of law in this state and who maintain their membership pursuant to these rules.
RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS
(a) Members in Good Standing. Members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactivez or suspended members. A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon such conditions as the court deems appropriate under the circumstances of the case.
(b) Conditionally Admitted Members. The Supreme Court of Florida may admit a person with a prior history of drug, alcohol,, or psychological problems to membership in The Florida Bar and impose conditions of probation as the Ccourt deems appropriate upon that member. The period of probation shall be no longer than three 3 years, or for such indefinite period of time as the Ccourt may deem appropriate by conditions in its order. The conditions may include, but not be limited toiL participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological exam-inationSj or supervision by another member of The Florida Bar. The probation shall be monitored by The Florida Bar and the costs thereof shall be paid by the member on probation. A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available grievance procedures under the Rules of Discipline.
*256 (c) Inactive Members. Inactive members of The Florida Bar shall mean only those members who have properly elected to be classified as inactive in the manner elsewhere provided.
Inactive members shall:
(1) pay annual dues as set forth in rule 1-7.3;
(2) be exempt from continuing legal education requirements;
(3) affirmatively represent their membership status as inactive members of The Florida Bar when any statement of Florida Bar membership is made;
(4) not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law;
(5) not hold any position that requires the person to be a licensed Florida attorney;
(6) not be eligible for designation or certification under the Florida designation or certification plans;
(7) not vote in Florida Bar elections or be counted for purposes of apportionment of the board of governors;
(8) certify upon election of inactive status that they will comply with all applicable restrictions and limitations imposed on inactive members of The Florida Bar.
Failure of an inactive member to comply with all requirements thereof shall be cause for disciplinary action.
An inactive member may, at any time, apply for reinstatement to membership in good standing in the manner provided in rule 1-3.7.
RULE 1-3.3 OFFICIAL BAR ADDRESS
Each member of The Florida Bar shall designate an official bar mailing address and business telephone number. If the address given is not the physical location or street address of the principal place of employment, then such information shall also be given. Each member shall promptly notify the executive director of any changes in any information required by this rule.
RULE 1-3.4 CLER DELINQUENT MEMBERS AND CLER EXEMPT MEMBERS
(a) CLER Delinquent Members. Any member who is suspended by reason of failure to complete continuing legal education requirements shall be deemed a delinquent member. A delinquent member shall not engage in the practice of law in this state and shall not be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing. Any member suspended for failure to complete continuing legal education requirements may be reinstated as elsewhere provided in these rules.
(b) CLER Exempt Members. Any member who is exempt from continuing legal education requirements (see rule 6-10.3(c)) shall not engage in the practice of law in this states ^provided, however, that a member exempt from continuing legal education requirements by reason of active military service may practice law in Florida if required to do so as a part of assigned military duties.
RULE 1-3.5 RETIREMENT
Any member of The Florida Bar may retire from The Florida Bar upon petition to and approval of the board of governors. A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all dues, fees, costs., or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
RULE 1-3.6 DELINQUENT MEMBERS
Any person now or hereafter licensed to practice law in Florida who fails to pay dues or fails to comply with continuing legal education or basic skills course requirements shall be deemed a delinquent *257 member. While occupying the status of a delinquent member, no person shall engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.
RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP
(a) Eligibility for Reinstatement. Members who have retired, been delinquent in the payment of dues¿ or been delinquent in continuing legal education requirements for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, dues delinqueneyi or continuing legal education delinquency.
Inactive members may also seek reinstatement under this rule.
(ab) Petitions Required. A member seeking-reinstatement must file a petition with the board of governors setting forth the reason for such resignation, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstatement fee of $5Ot0O, payment of all arrear-ages, and, for persons who have retired or have been delinquent for a period of time longer than 3 years, a $500,00 cost deposit for investigation of the petition. Inactive members shall not be required to pay the reinstatement fee or costs deposit. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent in compliance with the continuing legal education or basic skills course requirements.
(be) Members Who Have Retired or Been Delinquent For 3 Years or Less. Members who have retired or been delinquent for 3 years or less may be reinstated by the executive director or the executive director may refer their petition to the board of governors.
(cd) Members Who Have Retired or Been Delinquent For Less Than 5 Years, But More Than 3 Years. Members who have retired or been delinquent for less than 5 years, but more than 3 years, shall have completed 10 hours of continuing legal education courses for each year or portion thereof that the member had or retired or was deemed delinquent. Final action of the board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
(de) Members Who Have Retired or Been Delinquent For More Than 5 Years or More. Members who have retired or have been deemed delinquent for a period of 5 years or longer shall not be reinstated except upon application to and approval by the Florida Board of Bar Examiners.
(ef) Disciplinary — Sanctions Members Delinquent 60 Days or Less. Reinstatement from dues delinquency accomplished within 60 days from the date of delinquency shall be deemed to relate back to the date before the delinquency. Any member reinstated within the 60-day period shall not be subject to disciplinary sanction for practicing law in Florida during that time.
(fg) Inactive Members. Inactive members may be reinstated to membership in good standing by the board of governors by petition filed with the executive director, in the form and as provided in (ab) above, except:
(1) If the members has been inactive for greater than 5 years, but has been authorized to and either actively practiced law in another jurisdiction for the entire period of time or held a position which that requires a license as an attorney, the member shall be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.
(2) If the member has been inactive for greater than 5 years and has been authorized to but has not actively practiced law in another jurisdiction or held a position which that requires a license as an attorney *258 for the entire period of time, the member shall be required to complete the basic skills course requirement and the 30-hour continuing legal education requirement.
(3) An inactive member shall not be eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of dues of members in good standing for the current fiscal year have been paid.
RULE 1-3.8 RIGHT TO INVENTORY
(a) Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons hfe a practice, disappears, or dies,, and no partner, personal representative, or other responsible party capable of conducting the attorney’s affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney and to take such action as seems indicated to protect the interests of clients of the subject attorney, as well as the interest of that attorney.
(b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court which that appointed the attorney to make the inventory.
RULE 1-3.9 LAW FACULTY AFFILIATES
Full-time faculty members in the employment of law schools in Florida approved by the American Bar Association who are admitted to practice and who are in good standing before a court of any state may become “law faculty affiliates” of The Florida Bar. Law faculty affiliates may participate in such activities of The Florida Bar as may be authorized by the board of governors, but shall not be entitled to engage in the practice of law, appear as attorneys before the courts of the state, or hold themselves out as possessing such entitlements.
1-4. BOARD OF GOVERNORS
RULE 1-4.1 COMPOSITION OF BOARD OF GOVERNORS
The board of governors shall be the governing body of tThe Florida Bar. It shall have fifty-one (51) members, fifty (50) of whom shall be voting members, and shall consist of the president and the president-elect of tThe Florida Bar, president and president-elect (who shall vote only in the absence of the president) of the ¥young ©lawyers ©division, three (3) representatives of the active members of tThe Florida Bar in good standing residing outside of the Sstate of Florida, representatives elected by and from the active members of tThe Florida Bar in good standing in each judicial circuit, and two (2) residents of the Sstate of Florida who are not members of tThe Florida Bar. There shall be ese 1 or more such circuit representatives from each judicial circuit who shall be apportioned among and elected from the judicial circuits on the basis of the number of members in good standing residing in each circuit. The formula for determining the number of additional circuit representatives apportioned to and elected from each judicial circuit and all other matters concerning election and term of office for members of the board of governors shall be prescribed in chapter 2.
RULE 1-4.2 AUTHORITY;
SUPERVISION
(a) Authority and Responsibility. The board of governors shall have the authority and responsibility to govern and administer The Florida Bar and to take such action as it may consider necessary to accomplish the purposes of The Florida Bar, subject always to the direction and supervision of the Supreme Court of Florida.
(b) Duty to Furnish Information to Court. The board of governors shall furnish to each member of the Supreme Court of Florida the following:
*259 (1) The minutes of each meeting of the board of governors of The Florida Bar and each meeting of its executive committee except when acting in a prosecutorial role in a disciplinary or unauthorized unlicensed practice of law matter.
(2) Any written report of any section, committee, or division of The Florida Bar submitted to the board of governors which that is either accepted or adopted by the board.
(3) All rules, policies, or procedures adopted by the board of governors under the authority granted to the board by the Ccourt.
(4) Such additional information and material as may be requested by any member of the Ccourt.
(c) Powers of Court. The Supreme Court of Florida may at any time ratify or amend action taken by the board of governors under these rules, order that actions previously taken be rescinded, or otherwise direct the actions and activities of The Florida Bar and its board of governors.
RULE 1-4.3 COMMITTEES
The board of governors shall create an executive committee composed of the president, president-elect, chairman of the budget committee, chairman of the legislati-yeon committee, two (2) members of the board appointed by the president, and fee© (3) members of the board elected by the board to act upon such matters as arise and require disposition between meetings of the board; a budget committee composed of nine (9) members with feee3-year staggered terms; grievance committees as provided for in chapter 3; unlicensed practice of law committees as provided for in chapter 10; and a professional ethics committee.
RULE 1-4.4 BOARD COMMITTEES
The board may create and abolish additional committees as it may consider necessary to accomplish the purposes of The Florida Bar.
RULE 1-4.5 SECTIONS
The board of governors may create and abolish sections as it may consider necessary or desirable to accomplish the purposes and serve the interests of The Florida Bar and of the sections and shall prescribe the powers and duties of such sections. The bylaws of any section shall be subject to approval of the board of governors.
1-5. OFFICERS
RULE 1-5.1 OFFICERS
The officers of The Florida Bar shall be a president, a president-elect, and an executive director.
RULE 1-5.2 DUTIES
Chapter 2 shall prescribe the duties, terms of office, .qualifications, and manner of election or selection of officers of The Florida Bar.
1-6. MEETINGS OF THE FLORIDA BAR
RULE 1-6.1 ANNUAL MEETING
An annual meeting of The Florida Bar shall be held each fiscal year at such time as may be designated by the board of governors.
RULE 1-6.2 SPECIAL MEETINGS
Special meetings of The Florida Bar may be held at such times and places as may be determined by the board of governors or upon petition of five (5) percent of the membership of The Florida Bar.
RULE 1-6.3 NOTICE; RULES OF PROCEDURE
The manner of notice and rules of procedure for all meetings of The Florida Bar shall be prescribed in chapter 2.
1-7. DUES AND FISCAL CONTROL
RULE 1-7.1 BUDGET
The board of governors shall adopt a proposed budget for The Florida Bar in advance of each fiscal year, publish such *260 proposed budget in a publication of The Florida Bar generally circulated to members, and thereafter adopt a budget for the succeeding fiscal year. The budget adopted by the board of governors shall be filed with the Supreme Court of Florida thirty (30) days prior to the beginning of each fiscal year and shall be deemed approved and become the budget of The Florida Bar unless rejected by the Supreme Court of Florida within said thirty30-day period or until amended by the board of governors in accordance with rule 2-6.12.
RULE 1-7.2 OFFICER’S SALARY
No member of the board of governors and no officer of The Florida Bar other than the executive director shall receive a fee or salary from The Florida Bar.
RULE 1-7.3 DUES
(a) Dues Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred2 or been placed on the inactive list pursuant to rule 3-7.123, shall pay annual dues to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the dues at more than $190 per annum. At the time of the payment of dues every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
Dues tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs or restitution imposed against the member in a disciplinary proceeding. Costs shall be deemed delinquent unless paid within thirty (30) days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. Restitution shall be deemed delinquent unless accomplished in the manner and by the date provided in the disciplinary order or agreement.
(b) Prorated Dues. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual dues for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
(c) Election of Inactive Membership. A member in good standing may elect by August 15 of each fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual dues statement and payment of the prescribed annual dues. Failure to make the election by August 15 shall constitute a waiver of the member’s right to the election until the next fiscal year. The election of inactive membership status shall be subject to the restrictions and limitations elsewhere provided.
Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules.
Dues for inactive members shall be set by the board of governors in an amount not to exceed $140 per annum.
(d) Late Payment of Dues. Payment of annual dues must be postmarked no later than August 15. Dues postmarked after August 15 shall be accompanied by a late charge of $25,00. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose dues have not been paid by August 15. Upon failure to pay dues and any late charges by September 30, the member shall be a delinquent member.
RULE 1-7.4 PROCEDURES
Other matters relating to the budget and fiscal control shall be governed by chapter 2.
RULE 1-7.5 RETIRED, RESIGNED, INACTIVE, DELINQUENT MEMBERS
A member who is retired, resigned, inac-tive2 or delinquent shall not practice law in *261 this state until reinstated as provided in these rules.
1-8. PROGRAMS AND FUNCTIONS
RULE 1-8.1 RESPONSIBILITY OF BOARD OF GOVERNORS
Among its other duties, the board of governors is charged with the responsibility of enforcing the Rules of Discipline and the Rules of Professional Conduct.
RULE 1-8.2 UNLICENSED PRACTICE OF LAW
The board of governors shall act as an arm of the Supreme Court of Florida for the purpose of seeking to prohibit the unlicensed practice of law by investigating, prosecuting, and reporting to this Ccourt and to appropriate authorities incidents involving the unlicensed practice of law in accordance with chapter 10.
RULE 1-8.3 BOARD OF CERTIFICA-TIQN-^AND-DESIGNATION LEGAL SPECIALIZATION AND EDUCATION
The board of governors shall establish the board of certification and designation legal specialization and education to function as a central administrative board to oversee specialization regulation in Florida in accordance with chapter 6.
RULE 1-8.4 CLIENTS’ SECURITY FUND
The board of governors may provide monetary relief to persons who suffer reimbursable losses as a result of misappropriation, embezzlement, or other wrongful taking or conversion by a member of The Florida Bar of money or other property that comes into the member’s possession or control, all in accordance with chapter 7.
1-9. YOUNG LAWYERS DIVISION
RULE 1-9.1 CREATION
There shall be a division of The Florida Bar known as the Young Lawyers Division composed of all active members in good standing under the age of thirty-six (36) and all active members in good standing who have not been admitted to the practice of law in any jurisdiction for more than five (5) years.
RULE 1-9.2 POWERS AND DUTIES
The division shall have such powers and duties as shall be prescribed by the board of governors of The Florida Bar.
RULE 1-9.3 BYLAWS
The bylaws of the division shall be subject to approval of the board of governors.
1-10. RULES OF PROFESSIONAL CONDUCT
RULE 1-10.1 COMPLIANCE
All members of The Florida Bar shall comply with the terms and the intent of the Rules of Professional Conduct as established and amended by this Ccourt.
1-11. BYLAWS
RULE 1-11.1 GENERALLY
Bylaws, contained in chapter 2, not inconsistent with these rules shall govern the method and manner by which the requirements of these Rules Regulating The Florida Bar are met.
RULE 1-11.32 NOTICE OF AMENDMENT
Notice of consideration of proposed amendments to chapter 2 by the board of governors of The Florida Bar shall be given to the members of The Florida Bar. Amendments to chapter 2 adopted by the board of governors shall become effective fifty (50) days after the amendment and proof of the prescribed publication are filed with this Court the Supreme Court of Florida unless a later effective date is provided for by the board of governors or unless otherwise ordered by the Ccourt. The Ccourt will consider objections to amendments to chapter 2 adopted by the board of governors which that are filed with the *262 Gcourt before the effective date of the amendment.
RULE 1-11.43 SUPERVISION BY COURT
This Gcourt may at any time amend chapter 2 or modify amendments to chapter 2 adopted by the board of governors or order that amendments to chapter 2 not become effective or become effective at some date other than provided for in this rule.
1-12. AMENDMENTS
RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS
(a) Authority to Amend. The board of governors of The Florida Bar shall have the authority to amend chapters 7 and 9 of these Rules Regulating The Florida Bar, consistent with the notice, publication and comments provided below. Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar.
(b) Proposed Amendments. Any member of The Florida Bar in good standing or a section or committee of The Florida Bar may request the board of governors to consider an amendment to these Rules Regulating The Florida Bar.
(c) Board Review of Proposed Amendments. The board of governors shall review proposed amendments by referral of the proposal to an appropriate committee thereof for substantive review. After substantive review, an appropriate committee of the board shall review the proposal for consistency with these rules and the policies of The Florida Bar. After completion of review, a recommendation concerning the proposal shall be made to the board.
(d) Notice of Proposed Board Action. Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News which that is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall state in general terms the nature of the proposed amendments.
(e) Comments by Members. Any member may request a copy of the proposed amendments and may file written comments concerning same them. The comments shall be filed with the executive director sufficiently in advance of the board meeting to allow for copying and distribution to the members of the board.
(f) Approval of Amendments. Amendments to other than chapters 7 and 9 of these Rules Regulating The Florida Bar shall be by petition to the Supreme Court of Florida. Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing same them with The Florida Bar.
(g) Notice of Intent to File Petition. Notice of intent to file a petition to amend these Rules Regulating The Florida Bar shall be published in The Florida Bar News at least 30 days before the filing of the petition. The notice shall set forth the text of the proposed amendments, shall state the date the petition will be filedi and shall state that any comments or objections must be filed within 30 days of filing the petition. A copy of all comments or objections shall be served on the Executive Director of The Florida Bar and any persons who may have made an appearance in the matter.
(h) Action by the Supreme Court of Florida. The court shall review all proposed amendments filed under this rule and such amendments shall not become effective until an order is issued approving same them. Final action of the court shall be reported in The Florida Bar News.
(i) Waiver. On good cause shown, the court may waive any or all of the provisions of this rule.
1-13. TIME
RULE 1-13.1 TIME
(a) Computation. In computing any period of time prescribed or allowed by the *263 Rules Regulating The Florida Bar, the day of the act, event,, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday, or legal holiday, in which event the period shall run until the end of the next day which that is neither not a Saturday, Sunday, or legal holiday.
(b) Additional Time After Service by Mail. When a person has the right or is required to do some act or take some proceeding within a prescribed period after service of a notice or other paper and the notice or paper is served by mail, 5 days shall be added to the prescribed period.
CHAPTER 2. BYLAWS OF THE FLORIDA BAR
2-1. SEAL, EMBLEMS, AND PUBLICITY SYMBOLS
BYLAW 2-1.1 SEAL
The official seal of The Florida Bar shall be inscribed “The Florida Bar” on upper circular portion,' “1950” on lower circular portion, with the official state seal occupying center portion.
BYLAW 2-1.2 PUBLICITY SYMBOL
The publicity symbol for The Florida Bar to be placed on publicity of The Florida Bar shall consist of an outline of tiie Florida map, scales of justice, book, and gavel. “The Florida Bar” shall be set in circular fashion around the symbol.
BYLAW 2-1.3 USAGE
The usages of the seal, emblems, and publicity symbols of The Florida Bar shall be determined by the board of governors.
2-2. MEMBERSHIP
BYLAW 2-2.1 ATTAINING MEMBERSHIP
Persons shall initially become a member of The Florida Bar, in good standing, only upon certification by the Supreme Court of Florida in accordance with the rules governing the Florida Board of Bar Examiners and administration of the required oath.
BYLAW 2-2.2 LAW FACULTY AFFILIATES
Law faculty affiliates shall pay fees as set by the board of governors, shall be entitled to receive The Florida Bar Journal and The Florida Bar News, and shall have such other privileges and benefits of members of The Florida Bar as the board of governors shall authorize. The executive director shall issue to law faculty affiliates such special identification card as may be authorized by the board of governors.
BYLAW 2-2.3 LIST OF MEMBERS
The executive director shall furnish the chief judge of each circuit and the clerk of each court a list of all members in good standing and a list of all inactive members and shall furnish corrections and additions to such lists as occasion may require.
2-3. BOARD OF GOVERNORS
BYLAW 2-3.1 GENERALLY
The board of governors shall be the governing body of The Florida Bar. The board of governors shall have the power and duty to administer the Rules Regulating The Florida Bar, including the power to employ necessary personnel. Subject to the authority of the Supreme Court of Florida, the board of governors, as the governing body of The Florida Bar, shall be vested with exclusive power and authority to formulate, fix, determine, and adopt matters of policy concerning the activities, affairs, or organization of The Florida Bar. The board of governors shall be charged with the duty and responsibility of enforcing and carrying into effect the provisions of the Rules Regulating The Florida Bar and the accomplishment of the aims and purposes of The Florida Bar. The board of governors shall direct the manner in which all funds of The Florida Bar are disbursed and the purposes therefor and shall adopt and approve a budget for each fiscal year. The board of governors shall perform all other duties imposed under the Rules Reg *264 ulating The Florida Bar and shall have full power to exercise such functions as may be necessary, expedient, or incidental to the full exercise of any powers bestowed upon the board of governors by said rules or any amendment thereto or by this chapter.
BYLAW 2-3.2 POWERS
(а) Authority of Board; Supervision by Court. Subject to the continued direction and supervision by the Supreme Court of Florida, the board of governors may, by amendment to this chapter, take all necessary action to; make nominations and appointments where authorized, support the Florida Bar Foundation, and create or abolish programs.
(ab) Nomination and Appointment by Board. The board of governors may Mmake nominations to or appointments to associations or other entities as required by the Rules Regulating The Florida Bar, this chapter, and any rules or policies adopted by the board of governors in accordance therewith or as required by law.
(be) Florida Bar Foundation. Establish and The board of governors may support the foundation known as The Florida Bar Foundation for charitable, scientific, literary, and educational purposes.
(od) Programs. The board of governors may Eestablish, maintain, and supervise:'
(1) Aa lawyer referral service;
(2) Pprograms for providing continuing legal education for its members;
(3) Tthe publication of a newspaper, a magazine, and other publications for its members, affiliates, and the public;
(4) Aa program for providing information and advice to the courts and all other branches of government concerning current law and proposed or contemplated changes in the law;
(5) Aa program of cooperation with the faculty of accredited Florida law schools; and
(б) Aa program for providing pre-paid legal services^
(7) Aa program for providing adviceT and educational information to members of the bar concerning the operation and management of law offices^
(8) Pprograms for promoting and supporting the Bbar’s public service obligations and activities, including, but not limited to, pro bono services support and law related education^
(9) Pprograms for the development and provision of benefits and services to Bbar members, including, but not limited to, insurance benefits and association member discounts on goods and services^
(10) Aa program or funding for a program to provide for identification of and assistance to members of The Florida Bar who are chemically dependent or addicted^ and
(11) a program for providing enhanced opportunities and participation in the profession to minority members of the bar.
BYLAW 2-3.3 FORMULA FOR APPORTIONMENT OF MEMBERS OF BOARD OF GOVERNORS
The formula for determining the number of representatives apportioned to and elected from each judicial circuit shall be as follows:
(a) Determination of Median Circuit Population. Determine the median number of members in good standing residing in the judicial circuits (“the median circuit population”) by (4) ranking the judicial circuits in order of the number of members in good standing residing in each circuit and (2) determining the number of members in good standing residing in the judicial circuit that is ranked exactly midway between the circuit with the largest number of members and the circuit with the smallest number of members or, if there is an even number of circuits, calculating the average membership of the two (2) circuits that are ranked midway between the circuit with the largest number of members and the circuit with the smallest number of members.
(b) Apportionment of Members Among the Judicial Circuits. Apportion represen *265 tatives among the judicial circuits by assigning to each judicial circuit the number of representatives equal to the quotient obtained by dividing the number of members in good standing residing in that circuit by the median circuit population and rounding to the nearest whole number.
(c) Determination of Deviation From Median Circuit Population. Determine the relative deviation of each circuit’s proportionate representation from the median circuit population by (1) calculating the number of resident members per representative so apportioned, rounded to the nearest whole number, (2) subtracting from that number the median circuit population, (3) dividing the difference by the median circuit population, and (4) converting the quotient so obtained to the equivalent percentile.
(d) Adjustment to Deviation From Median Circuit Population. Determine whether each circuit’s relative deviation from the median circuit population would be reduced by adding or subtracting one 1 representative, and, if so, add or subtract one 1 representative as indicated.
(e) Minimum Guaranteed Representatives. Assign ene 1 representative to each judicial circuit not otherwise qualifying for a representative under the calculations made in subparagraphs subdivisions (a) and (b).
(f) Reduction in Number of Representatives to Maintain Maximum Board Size. If the total number of representatives assigned to the judicial circuits as a result of the steps set forth in subparagraphs subdivisions (a) through (e), when added to the number of officers and other representatives who are members of the board by virtue of the provisions of rule 1-4.1, would result in a board of more than fifty (50) voting persons, reduce the number of members of the board to exactly fifty (50) voting persons by (1) determining which judicial circuit among those to which more than one 1 representative has been apportioned would have the smallest relative deviation from the median circuit population after the loss of one 1 representative, (2) subtracting one 1 representative from that circuit, and (3) repeating those two (2) steps as necessary until the total number of voting board members is reduced to exactly ⅝-(50).
BYLAW 2-3.4 ANNUAL APPORTIONMENT
(a) Certification of Membership by Executive Director. The executive director shall each year as of October 1 determine from the official records of The Florida Bar the number of members, in good standing, of The Florida Bar residing in each judicial circuit. The executive director shall thereafter determine by application of the formula in rule bylaw 2-3.3 the number of members of the board of governors to serve from each judicial circuit. The executive director shall file a certificate setting forth the above information with the clerk of the Supreme Court of Florida and shall cause a copy of such certificate to be published in The Florida Bar News on or before November 1 of each year. The certificate shall be published in the format of rule bylaw 2-3.5(a). The reapportionment established by the terms of such certificate shall automatically amend rule bylaw 2-3.5(a) on December 1 unless the Supreme Court of Florida orders otherwise.
(b) Elected Members to Serve Full Term. No elected member of the board of governors shall serve less than the full term to which elected by reason of any reapportionment required by paragraph subdivision (a).
BYLAW 2-3.5 NOMINATION OF MEMBERS
(a) Staggered Terms. Elections shall be held and appointments made in even-numbered years for the following board of governors’ representatives:
Circuit (seat #)
1
2(2)
3
4(1)
6(1)
7
9(1)
9(3)
*266 10
11(1)
11(3)
11(5)
11(7)
11(9)
13(1)
14
15(1)
15(3)
17(1)
17(4)
18
20
nonresident (2)
public member (2)
Elections shall be held and appointments made in odd-numbered years for the following board of governors’ representatives:
Circuit (seat #)
2(D
4(2)
5
6(2)
6(3)
8
9(2)
11(2)
11(4)
■11(6)
11(8)
11(10)
11(11)
12(1)
13(2)
13(3)
15(2)
16
17(2)
17(3)
19
nonresident (1)
nonresident (3)
public member (1)
As additions or deletions of circuit representatives resulting from the application of the formula provided in this rule necessitate changes in the lists set forth above, both in circuit and office numbers, such changes shall be made by the executive director as appropriate and shall be published in The Florida Bar News on or before November 1.
(b) Time for Filing Nominating Petitions. Nominations for the election of representatives on the board of governors from each judicial circuit shall be made by written petition signed by not fewer than five (5) members of The Florida Bar in good standing. In each circuit in which there is more than one 1 representative to be elected, the offices of the representatives shall be designated numerically, with the executive director making whatever adjustments are necessary to reflect changes resulting from the annual certification, and a nominating petition shall state the number of the office sought by a nominee. Any number of candidates may be nominated on a single petition, and any number of petitions may be filed, but all candidates named in a petition and all members signing such petition shall have their official bar address in the judicial circuit which that the candidate is nominated to represent and shall be members of The Florida Bar in good standing. Nominations for election of a nonresident member of the board of governors shall be by written petition signed by not fewer than five (5) nonresident members of The Florida Bar in good standing. Nominees shall endorse their written acceptance on such petitions but no nominee shall accept nomination for more than one 1 office. All nominating petitions shall be filed with the executive director at the headquarters office on or before 5:00 p.m., December 1 prior to the year of election. On a date to be fixed by the executive director the nominating petitions shall be canvassed and tabulated by the executive director and the clerk of the Supreme Court of Florida, and the executive director and the clerk of the Supreme Court of Florida shall thereupon certify in writing the names of all members who have been properly nominated.
(c) Nomination and Appointment of Nonlawyer Members. The board of governors’ members who are not members of The Florida Bar shall be chosen and appointed by the Supreme Court of Florida from the list of nominees to be filed with the Ccourt by the board of governors. The board of governors of The Florida Bar by majority vote shall nominate three (3) persons for each nonlawyer seat and shall file the nominations with the Supreme Court of Florida on or before April 15 of the ap *267 pointment year for that seat. The two- (2) nonlawyer members shall serve staggered terms of two -(2) years and shall serve no more than two (2) terms.
BYLAW 2-3.6 ELECTION
Voting shall be by secret ballot. The executive director shall prepare and cause to be printed a sufficient number of ballots for the election of nonresident board members and for each judicial circuit office for which an election is to be held. One of such ballots shall be mailed to each member of The Florida Bar in good standing in each of such judicial circuits and to each nonresident member of The Florida Bar in good standing in the case of election of a nonresident board member. The records of the executive director shall be conclusive in determining the members entitled to receive such ballots. When more than one office is to be filled, the offices shall be listed on the ballots in numerical order. The names of candidates on the ballots shall be listed alphabetically for each office. The ballots shall be mailed on or before March 1. Only voted ballots received by the executive director prior to midnight on March 21 shall be counted or tabulated. Immediately after March 21, the executive director and the clerk of the Supreme Court of Florida shall canvass and tabulate the ballots received and certify the results of the election. Failure to make a nomination shall result in a vacancy to be filled in accordance with the provisions of rule bylaw 2-3.9. The candidate for an office receiving a majority of the votes cast for the office shall be declared elected. In the event no candidate receives such majority there shall be a runoff election between the two (2) candidates receiving the highest number of votes. The ballots for the runoff shall be mailed on or before April 1 and the voted ballots shall be received by the executive director prior to midnight on April 22. The ballots shall be counted and the results certified as provided for the first election. In the event that only ose 1 candidate has been nominated for a particular office on the board of governors, such candidate shall be declared elected. Results of the election shall be furnished by the executive director to the officers, members of the board of governors, and all candidates and may be furnished to any other interested persons upon their request.
BYLAW 2-3.7 TERM
The term of office for those persons regularly elected or appointed is two-(2) years and thereafter until a successor’s term commences. The term commences at the conclusion of the annual meeting of The Florida Bar following election or appointment to office. The term of office for those persons elected or appointed to fill a vacancy shall run for the balance of the term.
BYLAW 2-3.8 REMOVAL
Any member of the board of governors may be removed for cause by resolution adopted by two-thirds of the entire membership of the board of governors.
BYLAW 2-3.9 VACANCY
Except for nonlawyer members, in the event of a vacancy on the board of governors the vacancy shall be filled by a special election within the framework of the pertinent election procedures presently existing under these rules relating to the election of members of the board of governors. Notice of the vacancy and the special election shall be given by publication in The Florida Bar News, which notice shall provide that nominating petitions must be filed within thirty (30) days of the date of the publication of the notice with the executive director. The special election shall be held not less than thirty-(30) days and not more than forty-five (45) days after the publication of the notice. The procedures set forth in these rules for election shall be followed as closely as possible. In the event of a vacancy on the board of governors for a nonlawyer member, the vacancy shall be filled by special nomination and appointment in accordance with the provisions of rule bylaw 2-3.5(c).
*268 BYLAW 2-3.10 MEETINGS
The board of governors shall hold si*-(6) regular meetings each year, at least ese 1 of which shall be held at The Florida Bar Center. Subject to the approval of the board of governors, the places and times of such meetings shall be determined by the president, who may make such designation while president-elect. Special meetings shall be held at the direction of the executive committee or the board of governors. Any member of The Florida Bar in good standing may attend meetings at any time except during such times as the board shall be in executive session concerning disciplinary matters, personnel matters, member objections to legislative positions of The Florida Bar, or receiving attorney-client advice. Minutes of all meetings shall be kept by the executive director.
BYLAW 2-3.11 QUORUM
A majority of the members of the board of governors shall constitute a quorum for the transaction of business at all meetings.
BYLAW 2-3.12 EXECUTIVE COMMITTEE
Unless otherwise limited by these rules, the executive committee shall have full power and authority to exercise the function of the board of governors; — (a) Tto the extent authorized by the board of governors on any specific mattery and (b) Oon any other matter which that necessarily must be determined between meetings of the board of governors.
The executive committee shall notify the board of governors at the next meeting of all actions taken by the executive committee during the interim between meetings of the board of governors. Unless modified by the board of governors at such meeting, actions of the executive committee shall be final.
2-4. OFFICERS
BYLAW 2-4.1 DUTIES OF PRESIDENT
The president shall conduct and preside at all meetings of The Florida Bar and the board of governors. The president shall be the official spokesmaaperson for The Florida Bar and the board of governors. Unless otherwise provided herein, the president shall appoint all committees. The president shall be the chief executive of The Florida Bar and shall be vested with full power to exercise whatever functions may be necessary or incident to the full exercise of any power bestowed upon the president by the board of governors consistent with the provisions of these Rules Regulating The Florida Bar. It shall be the duty and obligation of the president to furnish leadership in the accomplishment of the aims and purposes of The Florida Bar.
BYLAW 2-4.2 DUTIES OF PRESIDENT-ELECT
It shall be the duty of the president-elect to render every assistance and cooperation to the president and provide the president with the fullest measure of counsel and advice. The president-elect shall be familiarized with all activities and affairs of The Florida Bar and shall have such other duties as may be assigned to the president-elect by the board of governors. In the event the president-elect is absent or unable to act, or in the event of the president-elect’s death, disability, or resignation, the board of governors shall select an acting president-elect to hold office until a successor shall have been elected by the members of The Florida Bar in good standing at a special election held pursuant to the direction of the board of governors.
BYLAW 2-4.3 DUTIES OF EXECUTIVE DIRECTOR
The executive director shall be chosen by the board of governors and shall perform all duties usually required of a secretary and a treasurer and such other duties as may be assigned by the board of governors. The executive director shall serve as publisher of The Florida Bar Journal and The Florida Bar News and as director of public relations until otherwise directed by the board of governors. The executive director shall keep the records of The Florida Bar and the .board of governors. The exec *269 utive director shall maintain and be in charge of the offices and shall devote his or her full time to the work of The Florida Bar. The board shall fix his or her the executive director's salary and other benefits and emoluments of office.
BYLAW 2-4.4 QUALIFICATIONS FOR OFFICE
Only members of The Florida Bar in good standing shall be eligible to hold any elective office in The Florida Bar. No officer shall engage in political activity on behalf of a candidate for public office except in furtherance of the objectives of The Florida Bar and with the approval of the board of governors.
BYLAW 2-4.5 NOMINATIONS FOR PRESIDENT-ELECT
(a) Nominations. Any member of The Florida Bar in good standing may be nominated as a candidate for president-elect by petition signed by not fewer than 1 percent of the members of The Florida Bar in good standing. Such nominating petitions shall be filed with the executive director at the headquarters office on or after May 15 and on or before 5:00 p.m., June 15 of the year in which the election is to be held. Nominees shall endorse their written acceptance upon such petition. In the event that no member of The Florida Bar in good standing shall be nominated, the board of governors shall thereafter nominate at least 1 candidate for the office of president-elect.
No mailings or solicitations shall be made prior to April 15 for the purposes of seeking support for the nomination of a candidate to the office of president-elect.
(b) Campaigns. Campaigns for the office of president-elect may be conducted only in the same year in which the election is to be held and electioneering or campaign activities may not commence until April 15 and shall end on November 21. In the event of a runoff election, such activities may continue until December 21.
The board of governors of The Florida Bar is hereby authorized to adopt standing policies that govern the conduct of candidates, which shall include creation of a committee to oversee the conduct of such candidates and promulgation of sanctions for failure to' comply with these rules or the policies adopted by authority hereof.
BYLAW 2-4.6 ELECTION OF PRESIDENT-ELECT
The members of The Florida Bar in good standing shall elect annually a president-elect, who shall become president at the conclusion of the annual meeting following the term as president-elect.
Only those members who are members in good standing as of October 15 are eligible to vote in the initial election. If a runoff election is necessary, only those members who are members in good standing as of November 15 are eligible to vote in the runoff election.
Ballots for election of president-elect shall be mailed on November 1 to each eligible member of The Florida Bar. Ballots shall be mailed to the member’s record bar address. The names of the candidates for the office of president-elect shall be printed on the ballot in alphabetical order. Only those ballots received by The Florida Bar or its representative prior to midnight November 21 shall be counted.
Immediately after November 21, the executive director and the clerk of the Supreme Court of Florida shall canvass and tabulate the ballots received prior to midnight November 21 and shall certify the results of the election. The candidate who receives the majority of the votes cast shall be declared elected.
In the event no candidate receives a majority of the votes cast, a runoff election between the 2 candidates receiving the highest number of votes shall be held. Ballots for the runoff election shall be mailed on December 1 to each eligible member of The Florida Bar. The runoff ballots shall be mailed to the member’s record bar address. The names of the runoff candidates shall be printed on the ballot in alphabetical order. Only ballots received by The Florida Bar or its representative *270 prior to midnight December 21 shall be counted.
Immediately after December 21, the executive director and the clerk of the Supreme Court of Florida shall canvass and tabulate the ballots received prior to midnight December 21 and certify the results. The runoff candidate receiving a majority of the votes cast shall be declared elected.
The executive director shall furnish the results of the election to the officers and members of the board of governors of The Florida Bar, as well as to the candidates and, upon request, to any other interested person.
BYLAW 2-4.7 PRESIDENT’S ABSENCE
In the event the president is absent or unable to act, bis the president's duties shall be performed by the president-elect; and in the event of the death or resignation of the president, the president-elect shall serve as president during the remainder of the term of office thus vacated and then shall serve as president for the term for which elected. In the event of the death or disability of both the president and the president-elect, the board of governors shall elect an acting president of The Florida Bar to hold office until the next succeeding annual meeting.
BYLAW 2-4.8 PROHIBITION AGAINST SERVICE ON BOARD OF GOVERNORS AND AS PRESIDENT OR PRESIDENT-ELECT
In the event that a member of the board of governors shall become either the president or the president-elect of The Florida Bar such member shall not serve on the board of governors except as president or president-elect and the office of that member shall become vacant and shall be filled in accordance with the provisions of this chapter.
2-5. MEETINGS
BYLAW 2-5.1 ANNUAL MEETING
A program for the annual meeting of The Florida Bar shall be prepared by the president, with the advice and consent of the board of governors. Such program, when approved by the board of governors, shall be the order of business for the annual meeting and such order of business shall not be altered, except by consent of two-thirds of the members in good standing present and voting. Only the president, with the advice and consent of the board of governors, shall have the authority to extend invitations to nonmembers to attend the annual meeting as honored guests or speakers at the expense of The Florida Bar. No section or committee shall create any debt of The Florida Bar in connection with an annual meeting without prior approval of the board of governors. All papers, addresses, and reports read before or submitted at a meeting shall become the property of The Florida Bar and may be published by The Florida Bar. A registration fee for attendance at the annual meeting may be fixed by the board of governors to defray the costs and expenses in connection with such meeting.
BYLAW 2-5.2 RULES OF PROCEDURE
Only members of The Florida Bar in good standing shall be entitled to vote at the annual meeting. A resolution for consideration at the annual meeting may be proposed by any member in good standing or by the resolutions committee, provided that the resolution shall be presented, handled in accordance with procedures which that shall be established by the board of governors, and published in The Florida Bar Journal or The Florida Bar News a reasonable length of time prior to each annual meeting. Unless indicated on the official program, no person shall speak for more than ten (10) minutes or more than twice on any matter, except upon consent of a majority of the members in good standing present and voting at the meeting. Members of the bar of any foreign country or any state, district, or territory, who are not members of The Florida Bar, may be accorded the privilege of the floor at any annual meeting.
*271 2-6. FISCAL MANAGEMENT
BYLAW 2-6.1 EXPENDITURES
Within the parameters of the budget filed with the Supreme Court of Florida, the board of governors shall be vested with exclusive powers, authority, and control over all funds, property, and assets of The Florida Bar and the method and purpose of expenditure of all funds.
BYLAW 2-6.2 FISCAL YEAR
The fiscal year of The Florida Bar shall commence on July 1 of each year.
BYLAW 2-6.3 ANNUAL BUDGET
The board of governors, with the advice and counsel of the budget committee, shall adopt an annual budget of The Florida Bar, setting forth the anticipated revenues and expenditures for the fiscal year.
BYLAW 2-6.4 BUDGET COMMITTEE
The budget committee shall consist of nine-(9) members having staggered terms. The president-elect, with the approval of the board of governors, shall appoint three (3) members to feee3-year terms, shall fill vacancies for the balance of a term, and shall name a chairman-elect from the members of the committee. The chairman-elect shall become chairman when the president-elect becomes president and he-or- she the chair shall serve as a tenth member of the committee if his or her- the chair’s term on the committee would otherwise expire.
BYLAW 2-6.5 NOTICE OF BUDGET COMMITTEE HEARINGS
The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News not later than a March issue giving notice of meetings of the budget committee in each of the districts of the district courts of appeal to receive suggestions from members of The Florida Bar for the preparation of the budget for the succeeding fiscal year. Such meetings shall be held not earlier than the fifteenth day of the month succeeding the month in which the notice is published. Written notice of intent to appear at such meetings must be received by the executive director at least ten-(10) days prior to the date of the meeting. If no person files such a notice, the meeting may be canceled.
BYLAW 2-6.6 TENTATIVE BUDGET OF BUDGET COMMITTEE
At the meeting announced by such published notice, the budget committee shall hear and receive suggestions from members of The Florida Bar for the preparation of the budget for The Florida Bar for the succeeding fiscal year. The manner of filing and hearing such suggestions shall be set forth in the notice. After consideration of the suggestions received, the budget committee shall prepare a tentative budget for the succeeding fiscal year, which shall be filed with the executive director.
BYLAW 2-6.7 PROPOSED BUDGET OF BOARD OF GOVERNORS
The board of governors, after considering the tentative budget prepared by the budget committee, shall adopt a proposed budget for the succeeding fiscal year in time to allow publication thereof not later than an April issue of The Florida Bar Journal or The Florida Bar News.
BYLAW 2-6.8 DUES
The dues of members of The Florida Bar shall be included in the proposed budget filed by The Florida Bar in the Supreme Court of Florida.
BYLAW 2-6.9 NOTICE OF BOARD OF GOVERNORS HEARING UPON PROPOSED BUDGET
The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News not later than an April issue giving notice of a meeting of the board of governors to be held no earlier than the fifteenth day of the month succeeding the month the notice is published. Such notice shall contain the proposed budget and shall advise that the proposed budget shall become final unless written objections to any item or items therein shall be *272 filed by members of The Florida Bar with the executive director on or before the tenth day of the month following the month of publication.
BYLAW 2-6.10 HEARING AND ADOPTION OF BUDGET BY BOARD OF GOVERNORS
If written objections to any item or items of the proposed budget are filed by members of The Florida Bar within the time provided, a hearing thereon shall be held by the board of governors at the time and place provided in such notice. After such hearing the board of governors shall consider the objections filed and upon consideration thereof the board may amend the proposed budget within the scope of the objections.
BYLAW 2-6.11 FILING OF BUDGET WITH THE SUPREME COURT OF FLORIDA
The budget proposed by the board of governors shall be filed with the Ssupreme Ccourt on or before June 1 and shall become effective unless rejected by the Ccourt within thirty (30) days.
BYLAW 2-6.12 AMENDMENT OF THE BUDGET
The board of governors, in its discretion from time to time, may amend the budget in order to provide funds for needed expenditures; provided, however, that the total of increases in items of the budget made by amendment, including new items created by such amendments, shall not exceed ten (10) percent of the total income of The Florida Bar for the current fiscal year as anticipated at the time of the amendment. If a proposed amendment shall cause the total of increases in items of the budget made by amendment to exceed such limitation, a hearing upon objections to any item or items therein shall be held by the board of governors in like manner as that provided for the proposed budget. The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News giving notice of a board of governors meeting to be held no earlier than the fifteenth day of the month succeeding the month in which the notice is published. Such notice shall contain the proposed amendment and shall advise that the proposed amendment shall become final unless written objections to any item or items therein shall be filed by members of The Florida Bar with the executive director on or before the tenth day of the month following the month of publication. If the proposed amendment is adopted by the board of governors in whole or in part, the amendment of the budget shall be filed with the Supreme Court of Florida within the month following the month in which the amendment is adopted.
BYLAW 2-6.13 APPROPRIATIONS OF THE BUDGET
Each item of the budget shall be deemed a fixed appropriation, subject only to amendment as provided. All uncommitted balances of appropriations except appropriated restrictions of fund balances shall revert at the end of each fiscal year to the funds from which appropriated. No uncommitted appropriations other than those for the clients’ security fund shall continue beyond the fiscal year for which the budget containing the appropriation is adopted.
BYLAW 2-6.14 DISBURSEMENTS
The appropriations of the budget shall be disbursed by the executive director in hfe the executive director’s capacity as treasurer of The Florida Bar in accordance with this chapter. The executive director shall make such disbursements as are required to pay the obligations and expenses of The Florida Bar made within the provisions of the budget.
BYLAW 2-6.15 CONTINUATION OF FUNDING
Any program which that calls for an expenditure of funds in excess of $10,000 during any fiscal year shall not be continued beyond the last day of the second of two (2) fiscal years unless such program is specifically authorized by this or other chapters of the Rules Regulating The Florida Bar.
*273 BYLAW 2-6.16 ACCOUNTING AND AUDIT
The board of governors shall cause books and accounts to be kept in accordance with good accounting practices. Such records shall be audited annually by a certified public accountant authorized to practice in the State of Florida, and a copy of the audit shall be filed forthwith with the Supreme Court of Florida. Within a reasonable time after completion of the audit a condensed summary thereof shall be published in The Florida Bar Journal or The Florida Bar News and a copy filed with the Supreme Court of Florida.
2-7. SECTIONS
BYLAWS 2-7.1 RULES APPLICABLE TO SECTIONS AND DIVISIONS
All sections and divisions are governed by the provisions of the Rules Regulating The Florida Bar, this chapter, and the bylaws of the sections and divisions as approved by the board of governors and have the scope, powers, duties, and functions expressed in those documents.
BYLAW 2-7.2 DUTIES
It is the duty of each section and division, as an integral part of The Florida Bar, to work in cooperation with the board of governors and under its supervision toward accomplishment of the aims and purposes of The Florida Bar and of that section or division.
BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section;
(b) Business Law Section;
(c) Criminal Law Section;
(d) Elder Law Section;
(e) Entertainment, Arts¿ and Sports Law Section;
(f) Environmental and Land Use Law Section;
(g) Family Law Section;
(h) General Practice Section;
(i) Government Lawyer Section;
(j) Health Law Section;
(k) International Law Section;
{l) Labor and Employment Law Section;
(m) Local Government Law Section;
(n) Practice Management and Technology Section;
(©) Public Interest Law Section;
(p) Real Property, Probate.^ and Trust Law Section;
(q) Tax Section;
(r) Trial Lawyers Section; and
(s) Workers’ Compensation Section.
The following divisions of The Florida Bar have been created by the board of governors:
(a) Out-of-State Practitioners Division; and
(b) Young Lawyers Division.
BYLAW 2-7.4 PROCEDURE FOR CREATION OF SECTIONS AND DIVISIONS
Those seeking approval of thé board of governors to establish a section or division shall prepare and submit proposed bylaws for approval by the board of governors. They shall also inform the board of governors of the justification for establishing the section or division, the proposed dues, proposed budgeting, and proposed function and program of the section or division.
BYLAW 2-7.5 LEGISLATIVE ACTION OF SECTIONS AND DIVISIONS
(a) Limits of Legislative Involvement. Sections and divisions may be involved in legislation that is significant to the judiciary, the administration of justice, or the fundamental legal rights of the public or interests of the section or division or its programs and functions.
*274 (b) Procedure to Determine Legislative Policy. Sections and divisions shall be required to adopt and follow a reasonable procedure, approved by the board of governors, for determination of legislative policy on any legislation.
(c) Notice to Executive Director. Sections and divisions shall notify the executive director immediately of determination of any section or division action regarding legislation.
(d) Identification of Action. Any legislative action taken by a section or division shall be clearly identified as the action of the section or division and not that of The Florida Bar.
2-8. COMMITTEES
BYLAW 2-8.1 ESTABLISHMENT AND APPOINTMENT OF COMMITTEES
In addition to those committees established elsewhere under this chapter or other chapters of the Rules Regulating The Florida Bar, the board of governors shall create such committees as it may deem advisable and necessary from time to time. The board of governors may dissolve a committee when it deems that the work of the committee has been completed or is no longer necessary. The board of governors may provide for members of any committee to serve for staggered terms beyond the current administrative year. Any vacancies in these committees shall be filled for the unexpired portion in order to provide a regular rotation of committee members. Before June 1 of each year, the president-elect shall appoint all committee members (except for grievance and unlicensed practice of law), who shall serve for the ensuing administrative year. The president-elect shall report the membership of committees to the board of governors and shall, with the advice and consent of the board of governors, name and designate the chairman and vice-chairman of each committee. Persons who are not members of The Florida Bar may be appointed to committees with the advice and consent of the board of governors. The president shall fill vacancies occurring in the membership of the committees for the remainder of the unexpired term and may remove or appoint additional members to a committee.
BYLAW 2-8.2 COMMITTEE OPERATIONS
Each committee shall select from its membership such officers other than the chairman and vice-chairman as it deems advisable and subcommittees may be designated by the chairman from the membership of the committee. Each committee shall meet at such times and places as may be designated by the chairman or vice-chairman. Each committee shall file with the president and executive director all minutes, annual reports, and procedures and recommendations and such interim reports as desired or may be requested by the president or board of governors. No action, report, or recommendation of any committee shall be binding upon The Florida Bar unless adopted and approved by the board of governors.
BYLAW 2-8.3 STANDING AND SPECIAL COMMITTEES
The board of governors shall determine and designate which committees shall be considered as standing committees (permanent) and which committees shall be considered as special committees (temporary or limited) and shall define the specific powers, duties, functions, and scope thereof.
BYLAW 2-8.4 COMMITTEE FINANCES
No committee shall incur any debt payable by The Florida Bar without prior approval of the executive director. Each committee shall file with the executive director a detailed statement setting forth any funds needed or required in connection with the work of such committee during the ensuing administrative year for consideration by and inclusion in the annual budget of The Florida Bar after approval by the board of governors.
*275 2-9. POLICIES AND RULES
BYLAW 2-9.1 AUTHORITY OF BOARD OF GOVERNORS
In order to accomplish the purposes of The Florida Bar and implement the Rules Regulating The Florida Bar, including this chapter, the board of governors shall have the power and authority to establish policies and rules of procedure on the subjects and in the manner provided in this rule.
BYLAW 2-9.2 STANDING BOARD POLICIES
The board of governors shall adopt standing board policies governing the internal administration and operation of The Florida Bar and the board of governors. The board of governors may adopt, amend, or rescind standing board policies by a majority vote of the membership of the board of governors provided any amendment to any standing board policy shall not be effective until thirty (30) days after adoption. Such standing board policies may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the Iboard of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy. The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.
BYLAW 2-9.3 LEGISLATIVE POLICIES
(a)Adoption of Rules of Procedure and Legislative Positions. The board of governors shall adopt and may repeal or amend rules of procedure governing the legislative activities of The Florida Bar in the same manner as provided in rule bylaw 2-9.2; provided, however, that the adoption of any legislative position shall require the affirmative vote of two-thirds of those present at any regular meeting of the board of governors or two-thirds of the executive committee or by the president, as provided in the rules of procedure governing legislative activities.
(b) Publication of Legislative Positions. The Florida Bar shall publish notice of adoption of legislative positions in The Florida Bar News, in the issue immediately following the board meeting at which the positions were adopted.
(c) Objection to Legislative Positions of The Florida Bar.
(1) Any active member in good standing of The Florida Bar may, within forty-five (45) days of the date of publication of notice of adoption of a legislative position, file with the executive director a written objection to a particular position on a legislative issue. The identity of an objecting member shall be confidential unless made public by The Florida Bar or any arbitration panel constituted under these rules upon specific request or waiver of the objecting member. Failure to object within this time period shall constitute a waiver of any right to object to the particular legislative issue.
(42) After a written objection has been received, the executive director shall promptly determine the pro rata amount of the objecting member’s dues at issue and such amount shall be placed in escrow pending determination of the merits of the objection. The escrow figure shall be independently verified by a certified public accountant.
(23) Upon the deadline for receipt of written objections, the board of governors shall have forty-five (45) days in which to decide whether to give a pro rata refund to the objecting member(s) or to refer the action to arbitration.
(34) In the event the Bboard of Ggover-nors orders a refund, the objecting member’s right to such the refund shall immediately vest although the pro rata amount of the objecting member’s dues at issue shall remain in escrow for the duration of the fiscal year and until the conclusion of The Florida Bar's annual audit as provided in rule bylaw 2-6.16, which shall include final independent verification of the appropriate refund payable. The Florida Bar shall thereafter pay sueh the refund within thirty (30) days of independent verification of *276 the amount of refund, together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member’s dues at issue were received by The Florida Bar, for the period commencing with such date of receipt of the dues and ending on the date of payment of the refund by The Florida Bar.
(d) Composition of Arbitration Panel. Objections to legislative positions of The Florida Bar may be referred by the board of governors to an arbitration panel comprised of three-(3) members of The Florida Bar, to be constituted as soon as practicable following the decision by the board of governors that a matter shall be referred to arbitration.
The objecting members) shall be allowed to choose one 1 member of the arbitration panel», The Florida Bar shall appoint the second panel member, and those two-(2) members shall choose a third member of the panel who shall serve as chairman. In the event the two (2) members of the panel are unable to agree on a third member, the chief judge of the Second Judicial Circuit of Florida shall appoint the third member of the panel.
(e) Procedures for Arbitration Panel.
(1) Upon a decision by the board of governors that the matter shall be referred to arbitration, The Florida Bar shall promptly prepare a written response to the objection and serve a copy on the objecting members). Such response and objection shall be forwarded to the arbitration panel as soon as the panel is properly constituted. Venue for any arbitration proceedings conducted pursuant to this rule shall be in Leon County, Florida^ however, for the conveniénce of the parties or witnesses or in the interest of justice, the proceedings may be transferred upon a majority vote of the arbitration panel. The chairman of the arbitration panel shall determine the time, date2 and place of any proceeding and shall provide notice thereof to all parties. The arbitration panel shall thereafter confer and decide whether The Florida Bar proved by the greater weight of evidence that the legislative matters at issue are constitutionally appropriate for funding from mandatory Florida Bar dues.
(42) The scope of the arbitration panel’s review shall be to determine solely whether the legislative matters at issue are within those acceptable activities for which compulsory dues may be used under applicable constitutional law.
(23) The proceedings of the arbitration panel shall be informal in nature and shall not be bound by the rules of evidence. If requested by an objecting member who is a party to such &e proceedings, such that party and counsel, and any witnesses¿ may participate telephonically, the expense of which shall be advanced by the requesting party. The decision of the arbitration panel shall be binding as to the objecting members) and The Florida Bar. If the arbitration panel concludes the legislative matters at issue are appropriately funded from mandatory dues, there shall be no refund and The Florida Bar shall be free to expend the objecting member’s pro rata amount of dues held in escrow. If the arbitration panel determines the legislative matters at issue are inappropriately funded from mandatory dues, the panel shall order a refund of the pro rata amount of dues to the objecting member(s).
(34) The arbitration panel shall thereafter render a final written report to the objecting member(s) and the board of governors within forty-five (45) days of its constitution.
(45) In the event the arbitration panel orders a refund, the objecting member’s right to such the refund shall immediately vest although the pro rata amount of the objecting member’s dues at issue shall remain in escrow until paid. Within thirty (30) days of independent verification of the amount of refund, The Florida Bar shall provide such refund together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member’s dues at issue were received by The Florida Bar, for the period commencing with such date of receipt of the dues and ending on the date of payment of the refund by The Florida Bar.
*277 (56) Each arbitrator shall be compensated at an hourly rate equal to that of a circuit court judge based on services performed as an arbitrator pursuant to this rule.
(67) The arbitration panel shall tax all legal costs and charges of any arbitration proceeding conducted pursuant to this rule, to include arbitrator expenses and compensation, in favor of the prevailing party and against the nonprevailing party. When there is more than one party on one or both sides of an action, the arbitration panel shall tax such costs and charges against nonprevailing parties as it may deem equitable and fair.
(78) Payment by The Florida Bar of the costs of any arbitration proceeding conducted pursuant to this Rule bylaw, net of costs taxed and collected, shall not be considered to be an expense for legislative activities, in calculating dues refund pursuant to this rule bylaw.
BYLAW 2-9.4 ETHICS
(a) Rules of Procedure. The board of governors shall adopt rules of procedure governing the manner in which opinions on professional ethics may be solicited by members of The Florida Bar, issued by the staff of The Florida Bar or by the professional ethics committee, circulated or published by the staff of The Florida Bar or by the professional ethics committee, and appealed to the board of governors of The Florida Bar.
(b) Amendment. The adoption of, repeal of, or amendment to the rules authorized by paragraph subdivision (a) shall be effective only under the following circumstances:
(1) The proposed rule, repealer, or amendment shall be approved by a majority vote of the board of governors at any regular meeting of the board of governors}.
(2) The proposal thereafter shall be published in The Florida Bar News at least twenty- (20) days preceding the next regular meeting of the board of governors: and
(8) The proposal shall thereafter receive a majority vote of the board of governors at its meeting following publication as herein required.
(c)Waiver. The rules of procedure adopted as required in paragraph subdivision (a) may be temporarily waived as to any particular matter only upon unanimous vote of those present at any regular meeting of the board of governors.
BYLAW 2-9.5 ADMINISTRATIVE POLICIES
The executive director may adopt such policies or procedures necessary to govern the administrative operation of The Florida Bar and The Florida Bar staff, provided all policies of a continuing nature are in writing and a copy of all such policies are is furnished to each member of the board of governors and available for inspection by any member of The Florida Bar at all reasonable times.
BYLAW 2-9.6 RULES OF ORDER
The current edition of Robert’s Rules of Order shall be the rules which that govern the conduct of all meetings of The Florida Bar, its board of governors, its sections, divisions, and committees.
BYLAW 2-9.7 INSURANCE FOR MEMBERS OF BOARD OF GOVERNORS, OFFICERS, GRIEVANCE COMMITTEE MEMBERS, UPL COMMITTEE MEMBERS, AND EMPLOYEES
Appropriate insurance coverage for members of the Bboard of ^governors, officers of The Florida Bar, members of UPL and grievance committees^ and employees of The Florida Bar shall be provided as authorized by the Bbudget Ccommittee and included in the budget. To the extent the person is not covered by insurance, The Florida Bar shall indemnify any officer, Bboard member, UPL or grievance committee member or employee of The Florida Bar who was or is a party, or is threatened to be made a party to any threatened, pending^ or completed action, suit¿ or proceeding, whether civil, criminal, administra *278 tive, or investigative (other than an action by The Florida Bar), by reason of the fact that he or she the person is or was an officer, Bboard member, UPL or grievance committee member, or employee of The Florida Bar, against expenses (including attorneys’ fees), judgments, fines,, and amounts paid in settlement, actually and reasonably incurred by him or her the person in connection with such action, suit, or proceeding, including any appeal thereof, if he-or she the person acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of The Florida Bar, and with respect to any criminal action or proceeding, had no reasonable cause to believe his or her tiie conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the person did not act in good faith and in a manner which he or-she that the person reasonably believed to be in, or not opposed to, the best interests of The Florida Bar, or with respect to any criminal action or proceeding, had reasonable cause to believe that his-or-her the conduct was unlawful.
BYLAW 2-9.8 LAW OFFICE MANAGEMENT ADVISORY SERVICE
The board of governors hereby creates the law office management advisory service and shall adopt standing board policies, as provided in rule bylaw 2-9.2, which that shall govern the operation of the service.
BYLAW 2-9.9 PUBLIC INTEREST PROGRAMS
The board of governors hereby creates a program for promoting and supporting public service activities, which shall include, but not be limited to, pro bono services support and law related education.
BYLAW 2-9.10 MEMBER BENEFITS PROGRAM
The board of governors hereby creates a program for developing and providing benefits to members of the bar, which shall include, but not be limited to, insurance and discounts on goods and/or services.
BYLAW 2-9.11 ASSISTANCE TO MEMBERS ADDICTED TO OR DEPENDENT UPON CHEMICALS
The Florida Bar shall create or fund a program for the identification of its members who are addicted to or dependent upon chemicals and the assistance of those members in overcoming such addictions or dependencies.
2-10. AMENDMENTS
BYLAW 2-10.1 PROPOSED AMENDMENTS
Amendments to these bylaws may be made in the manner set forth in rule 1-12.1.
CHAPTER 3. RULES OF DISCIPLINE
3-1. PREAMBLE
RULE 3-1.1 PRIVILEGE TO PRACTICE
A license to practice law confers no vested right to the holder thereof but is a conditional privilege which that is revocable for cause.
RULE 3-1.2 GENERALLY
The Supreme Court of Florida has the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established.
*279 3-2. DEFINITIONS
RULE 3-2.1 GENERALLY
Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Bar Counsel. A member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(b) The Board or the Board of Governors. The board of governors of The Florida Bar.
(c) Complainant or Complaining Witness. Any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.
(d) This Court or the Court. The Supreme Court of Florida.
(e) Court of this State. A state court authorized and established by the constitution or laws of the State of Florida.
(f) Executive Committee. The executive committee of the board of governors of The Florida Bar.
(g) Executive Director. The executive director of The Florida Bar.
(h) Probable Cause. A finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.
(i) Referee. A judge or retired judge appointed to conduct proceedings as provided under these rules.
(j) Respondent. A member of The Florida Bar or an attorney subject to these rules who is accused of misconduct or whose conduct is under investigation.
(k) Staff Counsel. An employee of The Florida Bar authorized under rule 3-3.3. When used in this rule, the term may include associate or assistant staff counsel.
(/) Branch Staff Counsel. Branch staff counsel ⅛ are the assistant staff counsel in charge of a branch office of The Florida Bar. Any assistant staff counsel of The Florida Bar may serve as branch staff counsel at the direction of the regularly assigned branch staff counsel or headquarters staff counsel. Headquarters staff counsel are the staff counsel assigned to the headquarters office in Tallahassee.
(m) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular grievance committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such grievance committee. In circuits having an unequal number of grievance committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. Staff counsel will be given written notice of changes in the designated reviewing members for a particular committee.
3-3. JURISDICTION TO ENFORCE RULES
RULE 3-3.1 SUPREME COURT OF FLORIDA; DISCIPLINARY AGENCIES
The exclusive jurisdiction of the Supreme Court of Florida over the discipline of persons admitted to the practice of law shall be administered in the following manner subject to the supervision and review of the Ccourt. The following entities are hereby designated as agencies of the Supreme Court of Florida for this purpose and with the following responsibilities, jurisdiction, and powers. The board of governors, grievance committees, and referees shall have such jurisdiction and powers as are necessary to conduct the proper and speedy disposition of any investigation or cause, including the power to compel the attendance of witnesses, to take or cause to be *280 taken the deposition of witnesses^ and to order the production of books, records, or other documentary evidence. Each member of such agencies has power to administer oaths and affirmations to witnesses in any matter within the jurisdiction of the agency.
RULE 3-3.2 BOARD OF GOVERNORS OF THE FLORIDA BAR
(a) Responsibility of Board. The board is assigned the responsibility of maintaining high ethical standards among the members of The Florida Bar. The board shall supervise and conduct disciplinary proceedings in accordance with the provisions of these rules.
(ab) Authority to File a Formal Complaint. No formal complaint shall be filed by The Florida Bar in disciplinary proceedings against a member of the bar unless there shall first be a finding under these rules that probable cause exists to believe that the respondent is guilty of misconduct justifying disciplinary action, or the member has been temporarily-suspended -for is the subject of an order of emergency suspension or emergency probation that is based on the same misconduct that is thé subject matter of the formal complaint, or unless the respondent has been determined or adjudged to be guilty of the commission of a felony, or unless the respondent has been disciplined by another entity having jurisdiction over the practice of law or, with the concurrence of the chairperson of the grievance committee, if a member has been charged with commission of a felony under applicable law which that warrants the imposition of discipline.
(be) Executive Committee. All acts and discretion required by the board under these Rules of Discipline may be exercised by its executive committee between meetings of the board as may from time to time be authorized by standing board of governors’ policies.
RULE 3-3.3 COUNSEL FOR THE FLORIDA BAR
(a) Staff Counsel. The board may employ staff counsel and assistant staff counsel for The Florida Bar to perform such duties, as may be assigned, under the direction of the executive director.
(b) Bar Counsel. Staff counsel may designate members of The Florida Bar to serve as bar counsel to represent The Florida Bar in disciplinary proceedings. Bar counsel shall not be a member of the board or of a grievance committee, except that a member of the board may represent The Florida Bar on any review proceeding under rule 3-7.67. Bar counsel may be compensated in accordance with budgetary policies adopted by the board.
RULE 3-3.4 GRIEVANCE COMMITTEES
There shall be such grievance committees as are herein provided, each of which shall have the authority and jurisdiction required to perform the functions hereinafter assigned to it and which shall be constituted and appointed as follows:
(a) Circuit Grievance Committees. There shall be at least one grievance committee for each judicial circuit of this state and as many more as shall be found desirable by the board. Such committees shall be designated as judicial circuit grievance committees, and in circuits having more than one committee they shall be identified by alphabetical designation in the order of creation. Such committees shall be continuing bodies notwithstanding changes in membership, and they shall have jurisdiction and the power to proceed in all matters properly before them.
(b) Special Grievance Committees. The board may from time to time appoint grievance committees for the purpose of such investigations as may be assigned in accordance with these rules. Such committees shall continue only until the completion of tasks assigned, and they shall have jurisdiction and power to proceed in all matters so assigned to them. All provisions concerning grievance committees shall be applicable to special grievance committees except those concerning terms of office and other restrictions thereon as may be imposed by the board. Any vacan *281 cies occurring in such a committee shall be filled by the board, and such changes in members shall not affect the jurisdiction and power of the committee to proceed in all matters properly before it.
(c) Membership, Appointment, and Eligibility. Each grievance committee shall be appointed by the board and shall consist of not fewer than three (3) members. At least one-third of the committee members shall be nonlawyers. All appointees shall be of legal age and, except for special grievance committees, shall be residents of the circuit or have their principal office in the circuit. The lawyer members of the committee shall have been members of The Florida Bar for at least five (5) years.
No member of a grievance committee shall perform any grievance committee function when that member:
(1) lis related by blood or marriage to the complainant or respondent;
(2) Shas a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;
(3) Shas a personal interest which that could be affected by the outcome of the proceedings or which that could affect the outcome; or
(4) lis prejudiced or biased toward either the complainant or the respondent.
Upon notice of the above prohibitions the affected members should recuse themselves from further proceedings. The grievance committee chairperson shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exist and are stated of record or in writing in the file by the chairperson.
(d) Terms. The terms of the members shall be for one 1 year from the date of administration of the oath of service on the grievance committee or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed three (3) years. A member shall not be reappointed for a period of three (3) years after the end of his-or-her the member’s term; provided, however, the expiration of the term of any member shall not disqualify such member from concluding any investigation then pending before the committee.
(e) Officers. There shall be a chairperson and vice-chairperson designated by the designated reviewer of that committee. The chairperson and vice-chairperson shall be members of The Florida Bar.
(f) Oath. Each new member of a committee shall subscribe to an oath to fulfill the duties of the office. Such oaths shall be filed with the executive director and placed with the official records of The Florida Bar.
(g) Removal. Any member may be removed from office by the designated reviewer of that committee or the board.
(h) Grievance Committee Meetings. Grievance committees should meet at regularly scheduled times, not less frequently than quarterly each year, and either the chairperson or vice-chairperson may call special meetings. Grievance committees should meet at least monthly during any period when the committee has one or more pending cases assigned for investigation and report. The time, date, and place of regular monthly meetings should be set in advance by agreement between the committee and branch staff counsel.
RULE 3-3.5 CIRCUIT COURT JURISDICTION
The jurisdiction of the circuit courts shall be concurrent with that of The Florida Bar under these Rules of Discipline. The forum first asserting jurisdiction in a disciplinary matter shall retain the same to the exclusion of the other until the final determination of the cause.
3-4. STANDARDS OF CONDUCT
RULE 3-4.1 NOTICE AND KNOWLEDGE OF RULES
Every member of The Florida Bar and every attorney of another state who is admitted to practice for the purpose of a specific case before a court of record of this state is within the jurisdiction of this *282 Ccourt and its agencies under this rule and is charged with notice and held to know the provisions of this rule and the standards of ethical and professional conduct prescribed by this Ccourt. Jurisdiction over an attorney of another state who is not a member of The Florida Bar shall be limited to conduct as an attorney in relation to the business for which the attorney was permitted to practice in this state and the privilege in the future to practice law in the Sstate of Florida.
RULE 3-4.2 RULES OF PROFESSIONAL CONDUCT
Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.
RULE 3-4.3 MISCONDUCT AND MINOR MISCONDUCT
The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibitiveed acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act which that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the Sstate of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.
RULE 3-4.4 CRIMINAL MISCONDUCT
Unless modified or stayed by the Supreme Court of Florida as provided elsewhere herein, a determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction of any crime or offense that is a felony under the laws of such jurisdiction is cause for automatic suspension from the practice of law in Florida. In addition, whether the alleged misconduct constitutes a felony or misdemeanor The Florida Bar may initiate disciplinary action regardless of whether the respondent has been tried, acquitted, or convicted in a court for the alleged criminal offense; however, the board may, in its discretion, withhold prosecution of disciplinary proceedings pending the outcome of criminal proceedings against the respondent. The acquittal of the respondent in a criminal proceeding shall not necessarily be a bar to disciplinary proceedings nor shall the findings, judgment, or decree of any court in civil proceedings necessarily be binding in disciplinary proceedings.
RULE 3-4.5 REMOVAL FROM JUDICIAL OFFICE BY THE SUPREME COURT OF FLORIDA
Whenever a judge is removed from office by the Supreme Court of Florida on the basis of a Judicial Qualifications Commission proceeding, the removal order, when the record in such proceedings discloses the appropriate basis, may also order the suspension of the judge as an attorney pending further proceedings hereunder.
RULE 3-4.6 DISCIPLINE BY FOREIGN OR FEDERAL JURISDICTION
A final adjudication in a disciplinary proceeding by a court or other authorized disciplinary agency of another jurisdiction, state or federal, that an attorney licensed to practice in that jurisdiction is guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule.
RULE 3-4.7 OATH
Violation of the oath taken by an attorney to support the constitutions of the United States and the State of Florida is ground for disciplinary action. Membership in, alliance with, or support of any organization, group, or party advocating or dedicated to the overthrow of the government by violence or by any means in violation of the Constitution of the United *283 States or constitution of this state shall be a violation of the oath.
3-5. TYPES OF DISCIPLINE
RULE 3-5.1 GENERALLY
A judgment entered, finding a member of the Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Admonishments. A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appear before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafter be made a part of the record of the proceeding.
(b) Minor Misconduct. Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
a,(A) Tthe misconduct involves misappropriation of a client’s funds or property-;
b,(B) Tthe misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights2 or valuable property rights) to a client or other person,;
c,(C) Tthe respondent has been publicly disciplined in the past three (3) years-;
&(D) Tthe misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past five (5) years,;
e,(E) Tthe misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent,; or
f,(F) Tthe misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of one 1 or more of the criteria described in paragraph subdivision (1)T above, a grievance committee may recommend an admonishment for minor misconduct when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee’s recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recommending the manner of administration and for the taxing of costs against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3-7.5(b)), the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within fifteen (15) days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance commit *284 tee, shall be deemed a finding of probable cause. The rejection of such report by a respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within fifteen-(15) days after a finding of probable cause by a grievance committee^ a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further eviden-tiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent’s admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c)Probation. The respondent may be placed upon probation for a stated period of time of not less than six-(6) months nor more than three (3) years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation;, which may include but are not limited to the following: supervision of all or part of the respondent’s work by a member of The Florida Bar; the making of reports to a designated agency; the satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida; such supervision over fees and trust accounts as the Ccourt may direct. The respondent will also reimburse the bar for the costs of supervision. Failure to observe the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.
(d) Public Reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida Bar. A suspension of ninety (90) days or less *285 shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than ninety — (90) days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination. No suspension shall be ordered for a specific period of time in excess of three (3) years.
(f) Disbarment. A judgment of disbarment terminates the respondent’s status as a member of the bar. A former member who has been disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within five (5) years after the date of disbarment or such longer period as the Gcourt might determine in the disbarment order.
(g) Notice to Clients. Upon service on the respondent of an order of disbarment, suspension, resignation for cause, temporary emergency suspension, or placement on the inactive list, the respondent shall, unless this requirement is waived or modified in the Gcourt’s order, forthwith furnish a copy of the order to all of his the respondent’s clients with matters pending in the respondent’s practice, and within thirty-(30) days after service of the order the respondent shall furnish staff counsel of The Florida Bar with a sworn affidavit listing the names . and addresses of all clients who have been furnished copies of the order.
(h) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging2 or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients’ Security Fund and disbursed in accordance with its rules and regulations.
(i)Restitution. In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not exceed the amount of such fee, or in the case of conversion shall not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
RULE 3-5.2 EMERGENCY SUSPENSION AND PROBATION
(a) Initial Petition. On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by ose 1 or more affidavits demonstrating facts personally known to the affi-ants that, if unrebutted, would establish clearly and convincingly that an attorney appears to be causing great public harm, the Supreme Court of Florida may issue an order imposing emergency conditions of probation on said attorney or suspending said attorney on an emergency basis.
(b) Trust Accounts. Any order of emergency suspension or probation that restricts the attorney in maintaining a trust account shall, when served on any bank or other financial institution maintaining an account against which said attorney may make withdrawals, serve as an injunction to prevent said bank or financial institution from making further payment from such account or accounts on any obligation except in accordance with restrictions imposed by the Gcourt.
*286 (c) New «Cases —&- ■ and «Existing «Clients. Any order of emergency suspension issued under this rule shall immediately preclude the attorney from accepting any new cases and unless otherwise ordered permit the attorney to continue to represent existing clients for only the first 30 days after issuance of such emergency order. Any fees paid to the suspended attorney during the 30-day period shall be deposited in a trust account from which withdrawals may be made only in accordance with restrictions imposed by the Ccourt.
(d) Filing of Formal Complaints. The Florida Bar shall file a formal complaint within 60 days of the emergency order and proceed to trial of the underlying issues, without the necessity of a finding of probable cause by either a grievance committee or the board of governors.
(e) Motions for Dissolution.
(1) The attorney may move at any time for dissolution or amendment of an emergency order by motion filed with the Supreme Court of Florida, a copy of which will be served on bar counsel. Such motion shall operate as a stay of any other proceedings and applicable time limitations in the case and, unless the motion fails to state good cause or is procedurally barred as an invalid successive motion, shall immediately be assigned to a referee designated by the chief justice.
(2) The referee shall hear such motion within 7 days of assignment, or a shorter time if practicable, and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing, or a shorter time if practicable. The referee shall recommend dissolution or amendment, whichever is appropriate, to the extent that bar counsel cannot demonstrate a likelihood of prevailing on the merits on any element of the underlying complaint.
(3) Successive motions for dissolution shall be summarily dismissed by the Ssu-preme Ccourt to the extent that they raise issues that were or with due diligence could have been raised in a prior motion.
(4)Upon receipt of the referee’s recommended order on the motion for dissolution or amendment, the Ssupreme Ccourt shall review and act upon the referee’s findings and recommendations. If the court continues the order of emergency suspension or probation in any manner, The Florida Bar shall file a formal complaint, if one has not yet been filed, within 60 days of the continuance and proceed to trial of the underlying issues, without the necessity of a finding of probable cause by either a grievance committee or the board of governors. A continuance of the emergency suspension or probation dissolves the stay of other proceedings.
(f) Hearings on Formal Complaints. Upon the filing of a formal complaint based on charges supporting an emergency order, the chief justice shall appoint a referee to hear the matter in the same manner as provided in rule 3-7.5, except that the referee shall hear the matter and issue a report and recommendation within 90 days of appointment or, if the attorney has filed an unsuccessful motion for dissolution or amendment after the appointment of the referee, within 90 days of the Ssupreme Ccourt’s continuance of the emergency order. This time limit shall apply only to trials on complaints in connection with which an temporary emergency suspension is in effect. If the time limit specified in this paragraph subdivision is not met, that portion of an emergency order imposing a suspension shall be automatically dissolved, except upon order of the Ssupreme Ccourt upon showing of good cause, provided that any other appropriate disciplinary action on the underlying conduct still may be taken.
(g) Proceedings in the Supreme Court of Florida. Consideration of the referee’s report and recommendation shall be expedited in the Ssupreme Ccourt. If oral argument is granted, the Cchief Jjustice shall schedule oral argument as soon as practicable.
(h) Waiver of Time Limits. Respondent may at any time waive the time requirements set forth in this rule by written request made to and approved by the referee assigned to hear the matter.
*287 3-6. EMPLOYMENT OF CERTAIN DISCIPLINED ATTORNEYS
RULE 3-6.1 GENERALLY
When attorneys have been placed on the inactive list, suspended, disbarred, or allowed resignation pursuant to rule 3-7.12 by order of this Gcourt, they are ineligible to practice law until reinstated or readmitted. However, this shall not preclude a lawyer, law firm, or professional association from employing the suspended, disbarred, or resigned individual to perform such services only as may ethically be performed by other lay persons employed in attorneys’ offices under the following conditions:
(a) Notice of Employment. Notice of employment along with a full job description will be provided to staff counsel before employment commences.
(b) Reports by Employee and Employer. Information reports verified by the employee and employer will be submitted to staff counsel quarterly. Such reports shall contain a statement by the employing lawyer certifying that no aspect of the employee’s work for the period involved the unlicensed practice of law.
(c) Client Contact. No suspended, resigned, or disbarred attorney shall have direct contact with any client or receive, disburse, or otherwise handle trust funds or property.
3-7. PROCEDURES
RULE 3-7.1 CONFIDENTIALITY
(a) Scope of Confidentiality. All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information which that is part of the public record as defined in these rules.
(ab) Public Record. The public record shall consist of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida2 and any reports, correspondence, papers, recordings2 and/or transcripts of hearings furnished to, served on2 or received from the respondent or the complainant.
(be) Circuit Court Proceedings. Proceedings under rule 3-3.5 shall be public information. Contempt proceedings authorized elsewhere in these rules shall be public information even though the underlying disciplinary matter is confidential as defined in these rules.
(ed) Limitations on Disclosure. Any material provided to The Florida Bar which that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chairman, the referee2 or the Supreme Court of Florida.
(de) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent^ or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(ef) Response to Inquiry. Representatives of The Florida Bar7 authorized by the board of governorsT shall respond to specific inquiries concerning matters which that are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.
(fg) Notice to Law Firms. When a disciplinary file is opened the respondent shall disclose to his or her the respondent's current law firm and, if different, the respondent’s law firm at the time of the act(s) or acts giving rise to the complaint, the fact that a disciplinary file has been opened. *288 Disclosure shall be in writing and in the following form:
A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are_This notice is provided pursuant to rule 3-7.1 (fg) of the Rules Regulating The Florida Bar.
The notice shall be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice shall be served on The Florida Bar.
(gh) Pending Investigations. Disciplinary matters pending at the initial investigatory and grievance committee levels shall be treated as confidential by The Florida Bar, except as provided in rule 3-7.1(ef).
(hi) Minor Misconduct Cases. Any case in which a finding of minor misconduct has been entered, by action of the grievance committee or board, shall become public information.
(¾) Probable Cause Cases. Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall be public information. For purposes of this paragraph subdivision a finding of probable cause shall be deemed to have been made in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.
(jk) No Probable Cause Cases. Any disciplinary case -which that has been concluded by a finding of no probable cause for further disciplinary proceedings shall become public information.
(kl) Production of Disciplinary Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena? issued by a regulatory agency, may provide any documents which that are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(1m) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential disciplinary case and may be provided with a copy of the public record. The judge shall maintain the confidentiality of the matter.
(mn) Evidence of Crime. The confidential nature of these proceedings shall not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.
(no) Alcohol and Drug Treatment. That an attorney has voluntarily sought, received, or accepted treatment for alcoholism or alcohol or drug abuse shall be confidential and shall not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.
It is the purpose of this paragraph subdivision to encourage attorneys to voluntarily seek advice, counsel, and treatment available to attorneys, without fear that the fact it is sought or rendered? will or might cause embarrassment in any future disciplinary matter.
(op) Response to False or Misleading Statements. If public statements which that are false or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statements.
(pg) Disclosure by Waiver of Respondent. Upon written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:
(1) Tthe Florida Board of Bar Examiners or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of an applicant for admission to practice law in that jurisdiction; or
(2) Florida judicial nominating commissions or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of a candidate for judicial office; or
(3) Tthe ©governor of the Sstate of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.
*289 RULE 3-7.2 PROCEDURES UPON CRIMINAL OR PROFESSIONAL MISCONDUCT; DISCIPLINE UPON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT
(a) Definitions.
(1) Judgment of Guilt. For the purposes of these rulesT “judgment of guilt” shall include only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.
(2) Determination of Guilt. For the purposes of these rulesT “determination of guilt” shall include only those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of tiie respondent’s guilt of the offense(s) charged.
(3) Convicted Attorney. For the purposes of these rules7 “convicted attorney” shall mean an attorney who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.
(⅛) Determination or Judgment of Guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any crime or offense that is a felony under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.
(c)Notice of Determination or Judgment of Guilt. Upon the entry of a determination or judgment of guilt against a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any offense that is a felony under the laws applicable to such court, such convicted attorney shall within thirty (30) days of such determination or judgment notify the executive director of The Florida Bar of such determination or judgment. Notice shall include a copy of the order(s) whereby such determination or judgment was entered.
(d) Notice of Determination or Judgment of Guilt by Courts of the State of Florida. If any such determination or judgment is entered by a court of the State of Florida, the judge or clerk thereof shall transmit to the Supreme Court of Florida and the executive director of The Florida Bar a certified copy of the order(s) whereby the determination or judgment was entered.
(e) Suspension by Judgment of Guilt (Felonies). Upon receiving notice that a member of the bar has been determined or adjudicated guilty of a felony, branch staff counsel will file a “Notice of Determination or Judgment of Guilt” in the Supreme Court of Florida. A copy of the judgment shall be attached to the notice. Upon the filing with the Supreme Court of Florida by The Florida Bar and service upon the respondent of a notice of determination or judgment of guilt for offenses that are felonies under applicable law, the respondent shall stand suspended as a member of The Florida Bar on the eleventh day after filing of the notice of determination or judgment of guilt unless he the respondent shall, on or before the tenth day after filing of such notice, file a petition to terminate or modify such suspension.
(f) Petition to Modify or Terminate Suspension.
(1) At any time after the filing of a notice of determination or judgment of guilty the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and shall serve a copy thereof upon the executive director.
(2) If such petition is filed on or before the tenth day following the filing of the notice, the suspension will be deferred until entry of an order on the petition.
(3) If such petition is filed after the tenth day following the filing of the notice of judgment of guilt, the suspension shall remain in effect pending disposition of the petition. Modification or termination of the suspension shall be granted only upon a showing of good cause.
*290 (g) Response to Petition to Modify or Terminate Automatic Suspension. The Florida Bar - shall be allowed twenty (20) days from the filing of a petition to modify or terminate automatic suspension to respond to the same. Staff counsel will oppose all petitions to modify or withhold an automatic suspension on a notice of determination or judgment of guilt unless the designated reviewer recommends and the executive committee concurs in not opposing such a petition.
(h) Term of Suspension.
(1) Maximum Term of Suspension. Unless the Supreme Court of Florida permits an earlier application for reinstatement, the suspension imposed on the determination or judgment of guilt shall remain in effect for three-(3) years and thereafter until civil rights have been restored and until the respondent is reinstated under rule 3-7.910 hereof.
(42) Continuation During Appeal. A final termination of the criminal cause resulting in the affirmance of a determination or judgment of guilt shall continue the suspension until expiration of all periods for appeal and rehearing.
(23) Continuation of Suspension Until Final Disposition. If an appeal is taken by the respondent from the determination or judgment of the trial court in the criminal proceeding, and on review the cause is remanded for further proceedings, the suspension shall remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.
(34) Termination of Suspension. A final disposition of the criminal cause resulting in acquittal will terminate the suspension.
(i) Separate Disciplinary Action.
(1) Initiation of Action. The Florida Bar may, at any time, initiate separate disciplinary action against the respondent.
(42) Conclusive Proof of Probable Cause. A determination or judgment of guilt, where the offense is a felony under applicable law, shall constitute conclusive proof of probable cause and The Florida Bar may file a complaint with the Supreme Court of Florida, or proceed under rule 3-7.89, without there first having been a separate finding of probable cause.
(23) Determination or Judgment of Guilt as Evidence. A determination or judgment of guilt, whether for charges that are felony or misdemeanor in nature, shall be admissible in disciplinary proceedings under these rules, and in those cases where the underlying criminal charges constitute felony charges, determinations or judgments of guilt shall, for purposes of these rules, constitute conclusive proof of the criminal offense(s) charged. The failure of a trial court to adjudicate the convicted attorney guilty of the offense(s) charged shall be considered as a matter of mitigation only.
(j)Professional Misconduct in Foreign Jurisdiction.
(1) Notice of Discipline by a Foreign Jurisdiction. A member of The Florida Bar disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court shall within thir-ty-(30) days after the effective date of disbarment or suspension file with the Supreme Court of Florida a copy of the order or judgment effecting such disbarment or suspension.
(2) Adjudication or Discipline by a Foreign Jurisdiction. In cases of a final adjudication by a court or other authorized disciplinary agency of another jurisdiction, such adjudication of misconduct shall be sufficient basis for the filing of a complaint by The Florida Bar and assignment for hearing before a referee without a finding of probable cause under these rules.
RULE 3-7.3 REVIEW OF INQUIRIES, COMPLAINT PROCESSING, AND INITIAL INVESTIGATORY PROCEDURES
(a) Screening of Inquiries. Prior to opening a disciplinary file, bar counsel shall review the inquiry made and determine whether the alleged conduct, if proven, would constitute a violation of the Rules Regulating The Florida Bar warranting the *291 imposition of discipline. If bar counsel determines that the facts, if proven, would not constitute a violation of the Rules Regulating The Florida Bar warranting the imposition of discipline, bar counsel may decline to pursue the inquiry. A decision by bar counsel not to pursue an inquiry shall not preclude further action or review under the Rules Regulating The Florida Bar. The complainant shall be notified of a decision not to pursue an inquiry and shall be given the reasons therefor.
(b) Complaint Processing and Bar Counsel Investigation. If bar counsel decides to pursue an inquiry, a disciplinary file shall be opened and the inquiry shall be considered as a complaint, if the form requirement of (c) is met. Bar counsel shall investigate the allegations contained in the complaint.
(c) Form for Complaints. All complaints, except those initiated by The Florida Bar, shall be in writing and under oath. The complaint shall contain a statement providing that:
Under penalty of perjury, I declare the foregoing facts are true, correct and complete.
(d) Dismissal of Disciplinary Cases. Bar counsel may dismiss disciplinary cases if, after complete investigation, bar counsel determines that the facts show that the attorney did not violate the Rules Regulating The Florida Bar. Dismissal by bar counsel shall not preclude further action or review under the Rules Regulating The Florida Bar. Nothing in these rules shall preclude bar counsel from obtaining the concurrence of the grievance committee chairperson on the dismissal of a case. If a disciplinary case is dismissed, the complainant shall be notified of the dismissal and shall be given the reasons therefor.
(e) Referral to Grievance Committees. Bar counsel may refer disciplinary cases to a grievance committee for its further investigation or action as authorized elsewhere in these rules. Bar counsel may recommend specific action on a case referred to a grievance committee.
(f)Information Concerning Closed Inquiries and Complaints Dismissed by Staff. When bar counsel does not pursue an inquiry or dismisses a disciplinary case, such action shall be deemed a finding of no probable cause for further disciplinary proceedings and the matter shall become public information.
RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
(a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
(ab) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate branch staff counsel for docketing and assignment of a case number, unless the committee resolves the complaint within ten (10) days after receipt of the complaint. A written report to branch staff counsel shall include the following information: complainant’s name and address^ respondent’s name^ date complaint received by committee^ copy of complaint letter or summary of the oral complaint made^ and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to staff counsel for docketing.
(be) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by staff counsel whether based upon a written complaint or not.
(ed) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
(de) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent is made a party of to civil litigationT or is a defendant or is acquitted in a criminal action, notwithstanding that either of such *292 proceedings involves the subject matter of the investigation.
(ef) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Staff counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
(fg) Quorum, Vote. Three (3) members of the committee, two-(2) of whom must be lawyers, shall constitute a quorum. The grievance committee may consider cases in panels of not fewer than three-(3) members, two (2) of whom must be lawyers. Consideration of matters by a panel of three-(3) members shall only be conducted upon concurrence of the designated reviewer and the chairperson of the grievance committee. The three-{3): member panel shall elect one 1 of its lawyer members to preside over the panel’s actions. If the chairperson or vice-chairperson is a member of a three (3)-meinber panel, the chairperson or vice-chairperson shall be the presiding officer. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least two — (2) members. The number of committee members voting for or against the committee report shall be reflected in the transcript. Minority reports may be filed. A lawyer grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
(gh) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made1 the respondent shall be advised of the conduct which that is being investigated and the rules which that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
(hi) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless it is found to be impractical by the chairman of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitutio^ will excuse the completion of an investigation. The complaining witness shall have no right to appeal.
(q) No Finding of Probable Cause. If a grievance committee upon termination of its investigation does not find probable cause, the committee shall dispose of its file in the manner directed by the board of governors. If the grievance committee has notified the respondent of the investigation, then the committee shall notify the respondent of the action of the committee. The failure of a grievance committee to find probable cause shall not preclude further proceedings.
(jk) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent and the transcript of *293 grievance committee meetings or hearings, if the proceedings were attended by a court reporter^ ^provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be signed by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, he-or she the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by bar headquarters staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the responden^, and a A copy of the record shall be made available to the respondent at his or her the respondent’s expense.
(fcl) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, the-presiding member of the committee bar counsel will submit a report of the no probable cause finding to bar counsel w-ith a copy to the complainant, presiding member, investigating memberz and the respondent if the respondent-was notified-of the investigation. — The report should includeing any documentation deemed appropriate by the presiding member bar counsel, — Bar counsel shall send a letter to the complainant and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a grievance committeeT in connection with findings of no probable eauseT shall be ⅛ writing and signed by the presiding member of the committee, and Letter reports and letters of advice shall not constitute a disciplinary record.
(lm) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the chairperson or-vice chairperson or the member of-the three (3) member panel who was-elected to-preside- over the panel’s action presiding member. The committee report need only include: (1) the committee’s recommendations regarding the admonishment, designation withdrawal, and conditions of redesignation; (2) the committee’s recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges which that will be dismissed if the admonishment is approved; (4) any comment on mitigating, aggravating, or eviden-tiary matters which that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt to minor misconduct. No record need be submitted with such a report. After the chairperson, vice — chairper-son,—or presiding member signs the grievance committee report, he or she shall return the report shall be returned to bar counsel. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
(nut) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within fifteen (15) days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by branch staff bar counsel as in the case of a finding of probable cause.
(no) Appointment of Bar Counsel. When a grievance committee formal com *294 plaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel of The Florida Bar headquarters in Tallahassee may appoint bar counsel unless bar counsel has been appointed, sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, staff counsel will prepare the formal complaint.
RULE 3-7.5 PROCEDURES BEFORE THE BOARD OF GOVERNORS
(a) Review of Grievance Committee Matters.
(1) The disciplinary review committee shall review those grievance committee matters referred to it by a designated reviewer. The committee shall make a report to the board and unless overruled by the board the report shall be final.
(42) Whenever a grievance matter is referred to the disciplinary review committee by the designated reviewer, the disciplinary review committee shall promptly review the actions of the grievance committee and the recommendations of the designated reviewer and make a report to the board providing for the issuance of:
aRA) Aan admonishment^ which the respondent may thereafter reject in the same manner as an admonishment recommended by a grievance committee;
b,(B) Cconfirmation of the formal complaint;
e,(C) Rreversal of the grievance committee and a finding of no probable cause; or
dr(D) Sreturn of the matter to the grievance committee for further proceedings.
(23) The disciplinary review committee report shall be final unless overruled by the board. If the board shall find no probable cause, staff counsel shall notify the respondent, the grievance committee, and the complaining witness.
(b) Review by the Designated Reviewer. A designated reviewer may review the actions of a grievance committee. In order to allow for review by the designated reviewer, notice of grievance committee action finding no probable cause, no probable cause with a letter of advice, minor'misconduct, or probable cause shall be given to the designated reviewer. If the designated reviewer disagrees with the grievance committee action¿ the designated reviewer shall make a report and recommendation to the disciplinary review committee. The designated reviewer shall make the report and recommendation within twenty-one(21) days following the mailing date of the notice of grievance committee action; otherwise the grievance committee action shall become final.
(c) Finding of Probable Cause. The board, on the basis of the report of any regular or special grievance committee, may by majority vote find probable cause and direct the filing of a formal complaint against an attorney.
(d) Finding of No Probable Cause. A finding of no probable cause by the board shall be final and no further proceedings shall be had in the matter by The Florida Bar.
(e) Control of Proceedings. Bar counsel, however appointed, at all times shall be subject to the direction of the board. In the exercise of its discretion as the governing body of The Florida Bar, the board prior to the receipt of evidence by the referee has the power to terminate disciplinary proceedings before a referee, whether such proceedings have been instituted upon a finding of probable cause by the board or a grievance committee.
(f) Filing Service on Board of Governors. All matters to be filed with or served upon the board shall be addressed to the board of governors and filed with the executive director. The executive director shall be the custodian of the official records of The Florida Bar.
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief *295 judge of a judicial circuit the power to appoint referees for duty in the chief judge’s respective circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding which that shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant^ v. (name of respondent), Respondent/’ and “In The Supreme Court of Florida (Before a Referee).”
(e) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasijudicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned. Assistant bar counsel shall serve under the general supervision of bar counsel.
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
MA) Filing. Staff counsel shall prepare the complaint and file the same in the Supreme Court of Florida.
MB) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
e,(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against one or more respondents, and charges may be against any one or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent may answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. All pleadings of the respondent must be filed within twenty (20) days of service of a copy of the complaint.
(3) Reply. If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within ten-(10) days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent’s answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
MA) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been *296 made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings theretofore filed with the Ccourt to the referee for action.
MB) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on the staff counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than ten — (10) day’s notice. The trial shall be held as soon as possible following the expiration of ten-(10) days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
(i) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(j) Complaining Witness. The complaining witness shall have no rights other than those of any other witness; the complaining witness has no right to be present during a hearing or trial but may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial.
(k) Referee’s Report.
(l) Contents of Report. Within thirty (30) days after the conclusion of a trial before a referee or ten (10) days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
(4A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(2B) recommendations as to whether or not the respondent should be found guilty of misconduct justifying disciplinary measures;
(3C) recommendations as to the disciplinary measures to be applied;
(4D) a statement of any past disciplinary measures as to the respondent which that are on record with the executive director of The Florida Bar or which that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt2 all evidence of prior disciplinary measures may be offered by bar *297 counsel subject to appropriate objection or explanation by respondent); and
(5E) a statement of costs incurred by The Florida Bar and recommendations as to the manner in which such costs should be taxed. The costs of the proceedings shall include investigative costs, including travel and out-of-pocket expenses, court reporters’ fees, copy costs, witness and traveling expenses, and reasonable traveling and out-of-pocket expenses of the referee and bar counsel, if any. Costs shall also include a $500 charge for administrative costs. Costs taxed shall be payable to The Florida Bar.
(2) Filing. The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of The Florida Bar. The referee shall serve a copy of the record on staff counsel with the report. Staff counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
(Z) The Record.
(1) Reporting of Testimony. All hearings at which testimony is presented shall be reported and the transcript of the testimony shall be filed in the cause.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, transcript of testimony, exhibits in evidence, and the report of the referee.
(m)Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedingSj a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n)Cost of Review or Reproduction.
(1) The actual cost of reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules is determined by the board to be $ld)0 per page. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to whom the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar's consent.
RULE 3-7.7 PROCEDURES BEFORE SUPREME COURT OF FLORIDA
All reports of a referee and all judgments entered in proceedings under these rules shall be subject to review by the *298 Supreme Court of Florida in the following manner:
(a) Right of Review.
(1) Any party to a proceeding may procure review of a report of a referee or a judgment, or any specified portion thereof, entered under these rules.
(2) The Supreme Court of Florida shall review all reports and judgments of referees recommending probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings.
(3) A referee’s report that does not recommend probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings, shall be final if not appealed.
(b) Appointment of Bar Counsel. The board or staff counsel, if authorized by the board, may appoint new or additional bar counsel to represent The Florida Bar on any review.
(c) Procedure For Review. Review by the Supreme Court of Florida shall be in accordance with the following procedures:
(1)Time for Review. Proceedings for review shall be commenced within fifteen (15) days of the termination of the meeting of the board following by tea-(10) days the mailing date of a letter from the referee serving a copy of the referee report on the respondent and The Florida Bar, but in all events the respondent shall be allowed at least thirty (30) days after the mailing date of such letter to commence review. Prompt written notice of such termination date and the board’s action, if any, shall be communicated to the respondent. The proceeding shall be commenced by filing with the Supreme Court of Florida a petition for review, specifying those portions of the report of a referee sought to be reviewed. Within ten (10) days after service of such petition, the opposing party may file a cross-petition for review specifying any additional portion of the report which that said party desires reviewed. The filing of such petition or cross-petition shall be jurisdictional as to a review to be procured as a matter of right, but the Ccourt may, in its discretion, consider a late-filed petition or cross-petition upon a showing of good cause.
(2) Record on Review. The report and record filed by the referee shall constitute the record on review.
(3) Briefs. The party first seeking review shall file a brief in support of the petition for review within thirty (30) days of the filing of the petition. The opposing party shall file an answering brief within twenty — (20) days after the service of the brief of the party seeking review, which answering brief shall also support any cross-petition for review. The party originally seeking petition for review may file a reply brief within ten (10) days after the service of the answering brief.
(4) Oral Argument. Request for oral argument may be filed in any case wherein a petition for review is filed, at the time of filing the first brief. If no request is filed, the case will be disposed of without oral argument unless the Ccourt orders otherwise.
(5) Burden. Upon review, the burden shall be upon the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified.
(6) Judgment of Supreme Court of Florida. After review, the Supreme Court of Florida shall enter an appropriate order or judgment. If no review is sought of a report of a referee entered under the rules and filed in the Ccourt, the findings of fact shall be deemed conclusive and the disciplinary measure recommended by the referee shall be the disciplinary measure imposed by the Ccourt, unless the Ccourt directs the parties to submit briefs or oral argument directed to the suitability of the disciplinary measure recommended by the referee. A referee’s report which that becomes final when no review has been timely filed shall be reported in an order of the Supreme Court of Florida.
(d)Precedence of Proceedings. Petitions for review in disciplinary proceedings shall take precedence over all other civil causes in the Supreme Court of Florida.
*299 (e) Extraordinary Writs. All applications for extraordinary writs which that are concerned with disciplinary proceedings under these rules of discipline shall be made to the Supreme Court of Florida.
(f) Florida Rules of Appellate Procedure. To the extent necessary to implement this rule and if not inconsistent herewith, the Florida Rules of Appellate Procedure shall be applicable to petitions for review in disciplinary proceedings, provided service on The Florida Bar shall be accomplished by service on bar counsel and staff counsel.
(g) Contempt by Respondent. Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on such petition may be filed in and determined by the Supreme Court of Florida or as provided under rule 3-7.101(f).
(h) Pending Disciplinary Cases. If disbarment is ordered by the Ccourt, dismissal without prejudice of other pending cases against the respondent may be ordered in the Ccourt’s disbarment order.
RULE 3-7.8 PROCEDURES BEFORE A CIRCUIT COURT
(a) Filing of Motion. Whenever it shall be made known to any of the judges of the district courts of appeal or any judge of a circuit court or a county court in this state that a member of The Florida Bar practicing in any of the courts of the district or judicial circuit or county has been guilty of any unprofessional act as defined by these rules, such judge may direct the state attorney for the circuit in which the alleged offense occurred to make in writing a motion in the name of the State of Florida to discipline such attorney, setting forth in the motion the particular act or acts of conduct for which the attorney is sought to be disciplined.
(b) Copy Served Upon Respondent. Upon the filing of a motion in circuit court to discipline an attorney, a copy thereof shall be served upon the respondent attorney, and the respondent shall, within twenty-(20) days after the service thereof, file an answer thereto. A copy of such motion shall be filed with the executive director of The Florida Bar at the time of service upon the respondent.
(c) Trial Before a Circuit Judge. Upon the filing of the answer, the chief judge of the judicial circuit in which the alleged offense occurred shall designate a judge other than the judge who directed the filing of the motion to try said cause. Such judge shall conduct a hearing thereon and shall hear the evidence to be offered by the State of Florida and the respondent. A representative or representatives of The Florida Bar, appointed by the board, shall have the right to be present and to observe the proceedings. Upon the conclusion of the hearing, the judge shall enter such judgment of dismissal, reprimand, probation, suspension, or disbarment as shall be appropriate to the circumstances. The parties shall be entitled to compulsory process to force the attendance of any witnesses.
(d) Judgment Filed in Supreme Court of Florida. If the judgment be one of public reprimand, probation, suspension, or disbarment, three (3) certified copies of the same shall be forthwith filed by the clerk of the trial court with the clerk of the Supreme Court of Florida. The clerk of the Supreme Court of Florida shall retain one copy for the Ccourt’s records, deliver to the executive director of The Florida Bar one copy of the judgment for The Florida Bar’s official records, and shall forthwith serve the third copy upon the respondent.
(e) Petition for Appellate Review. The respondent may appeal from a judgment entered by a circuit court. Such appeal shall be made in the manner provided by rule 3-7.67.
(f) Duty to Expedite Proceedings. It shall be the duty of the state attorney who is directed to file said motion to file the same promptly and to dispose of said controversy expeditiously.
(g) Readmission or Reinstatement. Readmission or reinstatement of attorneys disbarred or suspended by proceedings in *300 circuit courts shall be governed as elsewhere provided in these rules.
(h) Reporting Misconduct to The Florida Bar. Nothing herein shall be construed to discourage or restrict the right and responsibility of a judge to refer to The Florida Bar the conduct of its members, which in the opinion of the judge, warrants investigation to determine if a violation of the Rules of Professional Conduct has occurred.
RULE 3-7.9 CONSENT JUDGMENT
(a) Before Formal Complaint is Filed. If before a formal complaint is filed a respondent states his or her a desire to plead guilty to a grievance committee report that finds probable cause and recommends further disciplinary proceedings, then staff counsel,, with the approval of the designated board reviewer and concurrence of the board of governors, may consult established board guidelines for discipline, and advise the respondent of the discipline that will be recommended to the Supreme Court of Florida if a written plea of guilty is entered. If the board of governors or designated reviewer rejects a proposed consent judgment, staff counsel shall prepare and file a complaint as provided elsewhere in these rules.
(b) After Filing of Formal Complaint. If a respondent states his or her a desire to plead guilty to a formal complaint that has been filed, then bar counsel, with the approval of the designated board reviewer, may consult established board guidelines for discipline and advise the respondent of the discipline the bar will recommend to the referee if a written plea of guilty is entered.
(c) Approval of Consent Judgments. Acceptance of any proposed consent judgment more severe than an admonishment shall be conditioned on final approval by the Supreme Court of Florida, and the Ccourt’s order will recite the disciplinary charges against the respondent.
(d) Content of Conditional Pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made.
(e)Authority of Staff Counsel. Staff counsel has no authority to commit the board on any consent judgment not previously approved by the board. All consent judgments tentatively approved by staff counsel without prior approval of the board shall be subject to board approval. In negotiating consent judgments with a respondent or in recommending acceptance, rejection or offer of a tendered consent judgment the grievance committee, branch staff counsel and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include withdrawal of any designations held by the attorney and restrictions to be placed on redesignation in such areas. When withdrawal of designation is agreed to in a consent judgment, the withdrawal and any conditions on redesignation will be reported to the designation staff for recording purposes.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Readmission. A former member who has been disbarred or who has been permitted to resign pending disciplinary proceedings, pursuant to rule 3-7.142, may only be admitted again only upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within five (5) years after the date of disbarment or such longer period as the Geourt might determine in the disbarment order.
(b) Reinstatement. An attorney who has been suspended may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of dues.
(c) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and three (3) copies thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme *301 Court of Florida, and -aA copy shall be served on The Florida Bar in Tallahassee.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for in rule 3-7.©10(n)(l) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments^ disciplinary judgments^ copies of income tax returns together with consents to secure original returns^ occupation during suspension and information in connection therewith^ financial statements^ and statement of restitution of funds which that were the subject matter of disciplinary proceedings.
(d) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ien-sure payment of reasonable costs of the proceedings. Such costs in the discretion of the board of governors may include court reporters’ fees, witness fees and traveling expenses, and reasonable traveling expenses and out-of-pocket costs of the referee and attorneys for The Florida Bar.
(e) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearings ^provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary proceedings have been paid and restitution has been made.
(f) Attorney for the Bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the active members in good standing of The Florida Bar designated by the staff counsel to serve as bar counsel, one or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence which that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g) Determination of Fitness by Referee Hearing. The referee to which whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as proceedings are conducted under the rule concerning trials. The matter to decide shall be the fitness of the petitioner to resume the practice of law.
(h) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least te»-(10) days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any of-said persons to whom notice is given, any other interested personsi or any local bar association may appear before said the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(i) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report which that shall include the findings of fact and a recommendation as to whether or not the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon *302 request and payment of actual costs of reproduction.
(j) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.67.
(k) Judgment. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate him the petitioner in The Florida Bar; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct which that led to the petitioner’s suspension of membership in The Florida Bar; and further provided, however, if suspension of the petitioner has continued for more than three (3) years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension.
(/) Successive Petitions. No petition for reinstatement shall be filed within enel year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.
(m) Readmission After Resignation. In the case of a resignation submitted in connection with a disciplinary action, no readmission application may be filed until three -(3) years after the date of the order of the Supreme Court of Florida which that accepted such resignation, or such additional time as the attorney may have stated in a petition to resign and not until all costs in disciplinary cases that were dismissed because of the resignation have been paid by the applicant for readmission. If an attorney’s petition to resign states that it is without leave to apply for readmission permanently, such condition shall preclude any readmission.
(n) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to suspended members of the bar when the disciplinary judgment conditions their reinstatement upon' a showing of compliance with specified conditions.
(12) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in quadruplicate, with a copy served on staff counsel and The Florida Bar in Tallahassee.
(23) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner’s. tax returns for the past five-(5) years or since admission to the bar, whichever is greater. SaidThe authorization shall be furnished on a separate sheet. SaidThe petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
a»(A) Nname, age, residence, address, and number and relation of dependents of the petitioner;
MB) Tthe offense or misconduct upon which the suspension was based, together with the date of such suspension;
MC) Tthe names and addresses of all complaining witnesses in any disciplinary proceedings w-h-ieh that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
MD) Tthe nature of the petitioner’s occupation in detail since suspension with names and addresses of all partners, associates in business, and employers, if any, *303 and dates and duration of all such relations and employments;
e>(E) Aa statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
⅛(F) Aa statement showing all residences maintained during said period, with names and addresses of landlords, if any;
' g»(G) Aa statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
far(H) Aa statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
⅛1} Aa statement showing dates, general nature,, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
jr(J) Aa statement as to whether or not any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date% and the name? and address of the authority to whom it was addressed and the disposition thereof;
k,(K) Aa statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, which that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
b(L) Aa statement as to whether or not any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
m,(M) Aa concise statement of facts claimed to justify reinstatement to The Florida Bar;
m(N) Aa statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
Ot(Q) Aa statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against him the petitioner have been paid by the accused attorney petitioner and the source and amount of funds used for this purpose.
(34) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this ruleT and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(45) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
RULE 3-7.11 GENERAL RULE OF PROCEDURE
(a) Time is Directory. Except as provided herein, the time intervals required are directory only and are not jurisdiction *304 al. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
(b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this Ccourt shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attorney at any address listed by the attorney in the pleadings in such case.
(c) Notice in Lieu of Process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
(d) Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
(1)Referees. Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.
(2) Grievance Committees. Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued by the chairperson or vice-chairperson of a grievance committee in pursuance of an investigation authorized by the committee. Such subpoenas may be served by any member of such committee, by an investigator employed by The Florida Bar¿ or in the manner provided by law for the service of process.
(3) Board of Governors. Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director and shall be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(4) Confidential Proceedings. If the proceeding is confidential a subpoena shall not name the respondent but shall style the proceeding as “Confidential Proceeding by The Florida Bar under the Rules of Discipline.”
(5) Contempt. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this Ccourt in the manner provided by this rule.
(e) Oath of Witness. Every witness in every proceeding under these rules shall be sworn to tell the truth. Violation of this oath shall be an act of contempt of this Ccourt.
(f) Contempt. If an agency other than a circuit court shall find that a person is in contempt under these rules, such person shall be cited for contempt in the following manner, except that a respondent in a disciplinary proceeding may be cited for contempt by petition for an order to show cause filed and heard in the Supreme Court of Florida or in the circuit court:
(1) Petition for Order to Show Cause. The agency shall direct bar counsel or chairperson of the agency if there is no bar counsel serving in the matter in which the *305 contempt occurSj to present to the circuit court having jurisdiction a petition for the issuance of an order to show cause why the person so accused should not be held in contempt of this Ceourt.
(2) Appellate Review. A judgment in such contempt proceedings may be appealed by either party in the manner provided in the rule on appellate review, except that a copy of the petition for review shall not be filed with the clerk of the circuit court, and the record shall be forwarded by the judge or the agency possessing the same.
(g) Testimony of Witnesses; Contempt. Unless the respondent claims a privilege or right properly available under applicable law, the respondent or any other person who is subpoenaed to appear and give testimony or produce books, papers, or documents and who refuses to appear or produce such books, papers, or documents or who, having been duly sworn to testify, refuses to answer any proper question may be cited for contempt of this Ceourt.
(h) Court Reporters. Court reporters who are full or part-time employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent attorney objects at least forty-eighb-(48) hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for court reporter service may be taxed to a respondent for payment to The Florida Bar.
(i) Disqualification as Trier and Attorney For Respondent Due to Conflict.
(1) Employees and Members of the Board of Governors. No employee of The Florida Bar and no member of the board of governors of The Florida Bar shall represent a party other than The Florida Bar in any of the following specific matters:
ftr(A) ©designation appeals;
MB) Ccertification appeals;
MC) Aappeals to or from the committee on professional ethics; and
MD)Ceases being investigated or litigated involving the unlicensed practice of law.
(2) Former Members or Employees. No former member of the board of governors or former employee of The Florida Bar shall represent any party other than The Florida Bar in such matters if personally involved to any degree in the matter while a member of the board of governors . or while an employee of The Florida Bar.
(3) Attorneys Precluded From Representing Parties Other Than The Florida Bar. An attorney shall not represent any party other than The Florida Bar in proceedings provided for in these disciplinary rules under any of the following circumstances:
a,(A) If the attorney is a member or former member of the board of governors, member or former member of any grievance committee, or employee or former employee of The Florida Bar and while in such capacity participated personally in any way in the investigation or prosecution of the matter or any related matter in which the attorney seeks to be a representative or if the attorney served in a supervisory capacity over such investigation or prosecution;.
MB) A partner, associate, employer, or employee of an attorney prohibited from representation by paragraph subdivision (3)a(A) shall likewise be prohibited from representing any such party;.
e,(C) A member of the board shall not represent any party except The Florida Bar while serving as a member of the board of governors or for one year thereafter;..
MD) An employee of The Florida Bar shall not represent any party except The Florida Bar while an employee of The Florida Bar and shall not thereafter represent such party for a period of ©eel year without the express consent of the board;.
ME) A member of a grievance committee shall not represent any party except The Florida Bar while a member of a grievance committee and shall not thereafter represent such party for a period of ose 1 year without the express consent of the boardr-asd.
*306 f,(F) A partner, associate, employer, or employee of an attorney prohibited from representation by paragraphs subdivisions (3)e(C), (3)d(D), and (3)e(E) of this rule shall not represent any party except The Florida Bar without the express consent of the board of governors.
RULE 3-7.12 RESIGNATION FROM THE FLORIDA BAR
If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and the resignation shall be made pursuant to this rule. An attorney may resign from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for Leave to Resign. The petition for leave to resign shall be filed with the Supreme Court of Florida and shall contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings^ and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within sixty — (60) days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for leave to resign. A copy of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will not adversely affect the purity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting leave to resign; otherwise, the petition shall be denied. If the judgment grants to the petitioner leave to resign, the judgment may require that the resignation be subject to appropriate conditions.
(c) Delay of Disciplinary Proceedings. The filing of a petition for leave to resign pending disciplinary proceedings shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then with the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If resignation is accepted under this rule, such resignation shall serve to dismiss all pending disciplinary cases. The resigned attorney may be readmitted as a member of The Florida Bar in good standing pursuant to rule 3-7.910(a) and (m) and upon full compliance with any conditions required by the judgment w-hiefa that granted the leave to resign. A rejection of such application may be reviewed by petition to the Ssupreme Gcourt.
RULE 3-7.13 PLACEMENT ON INACTIVE LIST FOR INCAPACITY NOT RELATED TO MISCONDUCT
Whenever an attorney who has not been adjudged incompetent is incapable of practicing law because of physical or mental illness, incapacity, or other infirmity, the attorney may be placed upon an inactive list and shall refrain from the practice of law for such reason even though no misconduct is alleged or proved. Proceedings with a view of placing an attorney on the inactive list under this section rule shall be processed under the Rules of Discipline in the same manner as proceedings involving acts of misconduct. A member who has been placed on such inactive list may be readmitted upon application to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
A lawyer who has been adjudicated insane or mentally incompetent or hospital *307 ized under the Florida Mental Health Act shall be placed on an inactive list and shall refrain from the practice of law. If an order of restoration is entered by a court having jurisdiction or the lawyer is discharged from hospitalization under the Florida Mental Health Act, the lawyer may be readmitted upon application to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
RULE 3-7.14 FLORIDA STATUTES SUPERSEDED
These Rules of Discipline shall supersede such parts of sections 454.18, 454.31, and 454.32, Florida Statutes (197791), as are in conflict herewith.
RULE 3-7.15 AMENDMENTS
Petitions for revision of or amendments to chapter 3 will be entertained by this Ccourt when presented by the board of governors or by not fewer than fifty (50) active members in good standing of The Florida Bar. Notice of intention to file such petition together with a copy of the proposed amendment shall be published in The Florida Bar News not less than thirty (30) days prior to the filing of such petition. The Ccourt will thereafter accept objections or comments on such petition.
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
PREAMBLE: A LAWYER’S RESPONSIBILITIES
A lawyer is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.
As a representative, of clients, a lawyer performs various functions. As an adviser, a lawyer provides a client with an informed understanding of the client’s legal rights and obligations and explains their practical implications. As an advocate, a lawyer zealously asserts the client’s position under the rules of the adversary system. As a negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As an intermediary between clients, a lawyer seeks to reconcile their interests as an adviser and, to a limited extent, as a spokesmanperson for each client. A lawyer acts as an evaluator by examining a client’s legal affairs and reporting about them to the client or to others.
In all professional functions a lawyer should be competent, prompt, and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or by law.
A lawyer’s conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer’s business and personal affairs. A lawyer should use the law’s procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. While it is a lawyer’s duty, when necessary, to challenge the rectitude of official action, it is also a lawyer’s duty to uphold legal process.
As a public citizen, a lawyer should seek improvement of the law, the administration of justice, and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law, and work to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.
*308 Many of the lawyer’s professional responsibilities are prescribed in the Rules of Professional Conduct and in substantive and procedural law. A lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession’s ideals of public service.
A lawyer’s responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious. Zealous advocacy is not inconsistent with justice. Moreover, unless violations of law or injury to another or hfe another’s property are fe involved, preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.
In the practice of law conflicting responsibilities are often encountered. Difficult ethical problems may arise from a conflict between a lawyer’s responsibility to a client and the lawyer’s own sense of personal honor, including obligations to society and the legal profession. The Rules of Professional Conduct prescribe terms for resolving such conflicts. Within the framework of these rules many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules.
Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. Within that context, the legal profession has been granted powers of self-government. Self-regulation helps maintain the legal profession’s independence from undue government domination. An independent legal profession is an important force in preserving government under law, for abuse to legal authority is more readily challenged by a profession whose members are not dependent on the executive and legislative branches of government for the right to practice. Supervision by an independent judiciary, and conformity with the rules the judiciary adopts for the profession, assures both independence and responsibility.
Thus, every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which that it serves.
Scope:
The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are imperatives, cast in the terms of “shall” or “shall not.” These define proper conduct for purposes of professional discipline. Others, generally cast in the term “may,” are permissive and define areas under the rules in which the lawyer has professional discretion. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other rules define the nature of relationships between the lawyer and others. The rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer’s professional role.
The comment accompanying each rule explains and illustrates the meaning and purpose of the rule. The comments are intended only as guides to interpretation, whereas the text of each rule is authoritative. Thus, comments, even when they use the term “should,” do not add obligations to the rules but merely provide guidance for practicing in compliance with the rules.
The rules presuppose a larger legal context shaping the lawyer’s role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers;, and substantive and procedural law in general. Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when neces *309 sary, upon enforcement through disciplinary proceedings. The rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The rules simply provide a framework for the ethical practice of law.
Furthermore, for purposes of determining the lawyer’s authority and responsibility, principles of substantive law external to these rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under rule 4-1.6, which may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.
Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer’s conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer’s self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.
Moreover, these rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are ordinarily entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. In exceptional situations, the rules might allow or require the lawyer to disclose a client confidence. This, however, does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be compelled only in accordance with recognized exceptions to the attorney-client and work product privileges.
The lawyer’s exercise of discretion not to disclose information under rule 4-1.6 should not be subject to reexamination. Permitting such reexamination would be incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure.
Terminology:
“Belief” or “believes” denotes that the person involved actually supposed the fact in question to be true. A person’s belief may be inferred from circumstances.
“Consult” or “consultation” denotes communication of information reasonably suffi *310 cient to permit the client to appreciate the significance of the matter in question.
“Firm” or “law firm” denotes a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization and lawyers employed in a legal services organization. See comment, rule 4-1.10.
“Fraud” or “fraudulent” denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.
“Knowingly,” “known,” or “knows” denotes actual knowledge of the fact in question. A person’s knowledge may be inferred from circumstances.
“Lawyer” denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the State of Florida.
“Partner” denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation.
“Reasonable” or “reasonably” when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.
“Reasonable belief” or “reasonably believes” when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.
“Reasonably should know” when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.
“Substantial” when used in reference to degree or extent denotes a material matter of clear and weighty importance.
4-1. CLIENT-LAWYER RELATIONSHIP
RULE 4-1.1 COMPETENCE
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
Comment
Legal knowledge and skill
In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer’s general experience, the lawyer’s training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.
A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.
In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client’s interest.
A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. *311 This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also rule 4-6.2.
Thoroughness and preparation
Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and .procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances.
Maintaining competence
To maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education.
RULE 4-1.2 SCOPE OF REPRESENTATION
(a) Lawyer to Abide by Client’s Decisions. A lawyer shall abide by a client’s decisions concerning the objectives of representation, subject to paragraphs subdivisions (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client’s decision whether to make or accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client’s decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial¿ and whether the client will testify.
(b) No Endorsement of Client’s Views or Activities. A lawyer’s representation of a client, including representation by appointment, does not constitute an endorsement of the client’s political, economic, social, or moral views or activities.
(c) Limitation of Objectives of Representation. A lawyer may limit the objectives of the representation if the client consents after consultation.
(d) Criminal or Fraudulent Conduct. A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.
(e) Limitation on Lawyer’s Conduct. When a lawyer knows or reasonably should know that a client expects assistance not permitted by the rRules of professional eConduct or by law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer’s conduct.
Comment
Scope of representation
Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer’s professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer’s scope of authority in litigation varies among jurisdictions.
In a case in which the client appears to be suffering mental disability, the lawyer’s *312 duty to abide by the client’s decisions is to be guided by reference to rule 4-1.14.
Independence from client’s views or activities
Legal representation should not be denied to people who are unable to afford legal services or whose cause is controversial or the subject of popular disapproval. By the same token representing a client does not constitute approval of the client’s views or activities.
Services limited in objectives or means
The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The terms upon which representation is undertaken may exclude specific objectives or means. Such limitations may exclude objectives or means that the lawyer regards as repugnant or imprudent.
An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and law. Thus, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer’s services or the right to settle litigation that the lawyer might wish to continue.
Criminal, fraudulent, and prohibited transactions
A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client’s conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not assist a client in conduct which that the lawyer knows or reasonably should know to be criminal or fraudulent. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.
When the client’s course of action has already begun and is continuing, the lawyer’s responsibility is especially delicate. The lawyer is not permitted to reveal the client’s wrongdoing, except where permitted or required by rule 4-1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.
Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
Paragraph Subdivision (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability. Paragr-aph Subdivision (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last sentence of paragraph subdivision (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
RULE 4-1.3 DILIGENCE
A lawyer shall act with reasonable diligence and promptness in representing a client.
Comment
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction^ or personal inconvenience to the lawyer and may take whatever lawful and ethical measures are required to vindicate a client’s cause or endeavor. A lawyer *313 should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client’s behalf. However, a lawyer is not bound to press for every advantage that might be realized for a client. A lawyer has professional discretion in determining the means by which a matter should be pursued. See rule 4-1.2. A lawyer’s workload should be controlled so that each matter can be handled adequately.
Perhaps no professional shortcoming is more widely resented than procrastination. A client’s interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client’s legal position may be destroyed. Even when the client’s interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer.
Unless the relationship is terminated as provided in rule 4-1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer’s employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client’s affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.
RULE 4-1.4 COMMUNICATION
(a) Informing Client of Status of Representation. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) Duty to Explain Matters to Client. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
Comment
The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party, and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See rule 4-1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter.
Adequacy of communication depends in part on the kind of advice or assistance involved. For example, in negotiations where there is time to explain a proposal, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client’s best interests and the client’s overall requirements as to the character of representation.
*314 Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from mental disability. See rule 4-1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See rule 4-1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.
Withholding information
In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer’s own interest or convenience. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 4-3.4(c) directs compliance with such rules or orders.
RULE 4-1.5 FEES FOR LEGAL SERVICES
(Aa) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1)Aafter a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2)Tthe fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a non-client party, or any court, as to either entitlement to, or amount of, the fee.
(Bb) Factors to be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include the following:
(1) Tthe time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) Tthe likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) Tthe fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) Tthe significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) Tthe time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) Tthe nature and length of the professional relationship with the client;
(7) Tthe experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) Wwhether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(€c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or *315 lower than that which would result from application of only the time and rate factors.
(Dd) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(Ee) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(Ef) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (E|)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(aA) Aany fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(bB) Aa contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(aA) The contract shall contain the following provisions:
R(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
2r(ii) “This contract may be cancelled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown *316 below, and if cancelled the client shall not be obligated to pay any fees to the attorney's) for the work performed during that time. If the attorney)») haves advanced funds to others in representation of the client, the attorney(s)-are is entitled to be reimbursed for such amounts as they have the attorney has reasonably advanced on behalf of the client.”
(bB) The contract for representation of a client in a matter set forth in paragraph subdivision (Ef)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
R(i) Without prior court approval as specified below, any contingent fee which that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. 38⅛% of any recovery up to $1 million-tThrough the time of filing of an answer or the demand for appointment of arbitrators — 33½% of any recovery up to $1 millionf.
b. 40% of-any recovery up to $1 ■million fFrom the time of filing an answer or the demand for appointment of arbitrators through the entry of judgment}:
1. 40% of any recovery up to $1 million; plus
c2. 30% of any portion of the recovery between $1 million and $2 million; plus
43. 20% of any portion of the recovery in excess of exceeding $2 million^
ec. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
(i)l. 33½% of any recovery up to $1 millionthrough trial; plus
(4)2. 20% of any portion of the recovery between $1 million and $2 million; plus
(4i)3. 15% of any portion of the recovery in excess-of for any amount exceeding $2 million}.
Id. An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.
⅛(4) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in (Ef)(4)(bB)4r(j), the client may petition the circuit court for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of his or her the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under paragraphs subdivisions (Aa) and (Bb).
&(iii) In cases where the client is to receive a recovery which that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney’s fees in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(eC) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions *317 and requirements as paragraph subdivision (Ff)(5).
(dD) As to lawyers not in the same firm, a division of any fee within paragraph subdivision (Ff)(4) shall be on the following basis:
4r(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
&(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
S,(iii) The 25% limitation shall not apply to those cases in which two-(2) or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply for circuit court authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel which that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this section subdivision shall contain a certificate showing service on the client and tThe Florida Bar. Counsel may proceed with representation of the client pending court approval.
4(iv) The percentages required by this section subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for six-(6) years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(Gg) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of paragraph subdivision (Ff)(4)(dD), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) Tthe division is in proportion to the services performed by each lawyer; or
(2) Bby written agreement with the client:
(aA) Eeach lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(bB) Tthe agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(Hh) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a per *318 centage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three-(3) business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about his-or her the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether he or she the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyersi he or-she the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least ose 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract which that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money which that you might have to pay to your lawyer for costs and liability you might have for attorney's fees to,, the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to any *319 one, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any timeT you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 904-222-5286561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.
Client Signature Attorney Signature
Date Date
Comment
Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the feeT but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a feeT but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers whieh that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to de *320 fine the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(Ff)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4-1.5(Ff)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(Ef)(4)(bB) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4-1.5(Ef)(4)(bB) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(Ff)(4)(bB). Rule 4-1.5(Ff)(4)(bB) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(Ff)(4)(bB).
The limitations in rule 4-1.4(Ff)(4)(bB)R(i)ekc are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(Ff)(4)(bB)&(ii) provides the limitations set forth in paragraph subdivision (Ff)(4)(bB)R(i) may be waived by the client upon approval by a circuit court judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee which that would exceed rule 4-1.5(Aa) or (Bb). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent him or her the client or the case involves complex, difficult, or novel questions of law or fact which that would justify a contingent fee greater than the schedule but not a contingent fee which that would exceed rule 4-1.5(Bb).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands his or-her the right to have the limitations in rule 4-1.5(Ff)(4)(bB) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim which that is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(Ff)(4)(bB)&(iii) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the *321 same length of time as the schedule of payments to the client.
Division of fee
A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of paragraph subdivision (Ff)(4)(4D), paragraph subdivision (Gg) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
Disputes over fees
If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4-1.5(Ff)(4)(4D)2»(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4-1.5(Ff)(4)(dD)§r(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4-1.5(Ff)(4)(dD)§r(iii) should only occur in a small percentage of cases arising under rule 4-1.5(F|)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility;. and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages; or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(Ff)(4)(4D)gr(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee divi *322 sion agreed upon by the lawyers and the client.
Rule 4-1.5(Ef)(4)(dD)4(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in paragraph subdivision (Ff)(4)(dD) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
RULE 4-1.6 CONFIDENTIALITY OF INFORMATION
(a) Consent Required to Reveal Information. A lawyer shall not reveal information relating to representation of a client except as stated in paragraphs subdivisions (b), (c), and (d)z unless the client consents after disclosure to the client.
(b) When Lawyer Must Reveal Information. A lawyer shall reveal such information to the extent the lawyer believes necessary:
(1) Tto prevent a client from committing a crime; or
(2) Tto prevent a death or substantial bodily harm to another.
(c) When Lawyer May Reveal Information. A lawyer may reveal such information to the extent the lawyer believes necessary:
(1) Tto serve the client’s interest unless it is information the client specifically requires not to be disclosed;
(2) Tto establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client;
(3) Tto establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved;
(4) Tto respond to allegations in any proceeding concerning the lawyer’s representation of the client; or
(5) Tto comply with the Rules of Professional Conduct.
(d) Exhaustion of Appellate Remedies. When required by a tribunal to reveal such information, a lawyer may first exhaust all appellate remedies.
Comment
The lawyer is part of a judicial system charged with upholding the law. One of the lawyer’s functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.
The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client’s confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.
The principle of confidentiality is given •effect in two 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Profes *323 sional Conduct or by law. However, none of the foregoing limits the requirement of disclosure in paragraph subdivision (b). This disclosure is required to prevent a lawyer from becoming an unwitting accomplice in the fraudulent acts of a client. See also Scope.
The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.
Authorized disclosure
A lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client’s instructions or special circumstances limit that authority. In litigation, for example, a lawyer may disclose information by admitting a fact that cannot properly be disputed or in negotiation by making a disclosure that facilitates a satisfactory conclusion.
Lawyers in a firm may, in the course of the firm’s practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.
Disclosure adverse to client
The confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to disclose a client’s purposes, the client will be inhibited from revealing facts which that would enable the lawyer to counsel against a wrongful course of action. While the public may be protected if full and open communication by the client is encouraged, several situations must be distinguished.
First, the lawyer may not counsel or assist a client in conduct that is criminal or fraudulent. See rule 4 — 1.2(d). Similarly, a lawyer has a duty under rule 4-3.3(a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in rule 4-1.2(d) to avoid assisting a client in criminal or fraudulent conduct.
Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In such a situation the lawyer has not violated rule 4-1.2(d), because to “counsel or assist” criminal or fraudulent conduct requires knowing that the conduct is of that character.
Third, the lawyer may learn that a client intends prospective conduct that is criminal. As stated in paragraph subdivision (b)(1), the lawyer shall reveal information in order to prevent such consequences. It is admittedly difficult for a lawyer to “know” when the criminal intent will actually be carried out, for the client may have a change of mind.
Paragraph Subdivision (b)(2) contemplates past acts on the part of a client which that may result in present or future consequences that may be avoided by disclosure of otherwise confidential communications. Rule 4-1.6(b)(2) would now require the attorney to disclose information necessary to prevent the future death or substantial bodily harm to another, even though the act of the client has been completed.
The lawyer’s exercise of discretion requires consideration of such factors as the nature of the lawyer’s relationship with the client and with those who might be injured by the client, the lawyer’s own involvement in the transaction^ and factors that may extenuate the conduct in question. Where practical the lawyer should seek to persuade the client to take suitable action. In any case, a disclosure adverse to the client’s interest should be no greater than the lawyer reasonably believes necessary to the purpose.
Withdrawal
If the lawyer’s services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in rule 4-1.16(a)(1).
After withdrawal the lawyer is required to refrain from making disclosure of the *324 client’s confidences, except as otherwise provided in rule 4-1.6. Neither this rule nor rule 4-1.8(b) nor rule 4-1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.
Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to guide conduct in connection with the rule, the lawyer may make inquiry within the organization as indicated in rule 4-1.13(b).
Dispute concerning lawyer’s conduct
Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client’s conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer’s right to respond arises when an assertion of such complicity has been made. Paragraph Subdivision (c) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer’s ability to establish the defense, the lawyer should advise the client of the third party’s assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which that limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
If the lawyer is charged with wrongdoing in which the client’s conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, crimina^ or professional disciplinary proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by paragraph subdivision (c) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.
Disclosures otherwise required or authorized
The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, rule 4-1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.
The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See rules 4-2.2, 4-2.3, 4-3.3, and 4-4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes rule 4-1.6 is a matter of interpretation beyond the scope of these rules, but a presumption should exist against such a supersession.
Former client
The duty of confidentiality continues after the client-lawyer relationship has terminated.
*325 RULE 4-1.7 CONFLICT OF INTEREST; GENERAL RULE
(a) Representing Adverse Interests. A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) Tthe lawyer reasonably believes the representation will not adversely affect the lawyer’s responsibilities to and relationship with the other client; and
(2) Beach client consents after consultation.
(b) Duty to Avoid Limitation on Independent Professional Judgment. A lawyer shall not represent a client if the lawyer’s exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person or by the lawyer’s own interest, unless:
(1) Tthe lawyer reasonably believes the representation will not be adversely affected; and
(2) Tthe client consents after consultation.
(c) Explanation to Clients. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
(d) Lawyers Related by Blood or Marriage. A lawyer related to another lawyer as parent, child, sibling, or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.
Comment
Loyalty to a client
Loyalty is an essential element in the lawyer’s relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See rule 4-1.16. Where more than one 1 client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9. See also rule 4-2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see comment to rule 4-1.3 and scope.
As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client^ or another client’s interests without the affected client’s consent. Paragraph Subdivision (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Paragraph Subdivision (a) applies only when the representation of one 1 client would be directly adverse to the other and where the lawyer’s responsibilities of loyalty and confidentiality of the other client might be compromised.
Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer’s other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Para* graph Subdivision (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer’s independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
*326 Consultation and consent
A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph subdivision (a)(1) with respect to representation directly adverse to a client and paragraph subdivision (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client’s consent. When more than one 1 client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and ese 1 of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.
Lawyer’s interests
The lawyer’s own interests should not be permitted to have adverse effect on representation of a client. For example, a lawyer’s need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See rules 4-1.1 and 4-1.5. If the probity of a lawyer’s own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.
Conflicts in litigation
Paragraph Subdivision (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraphs subdivisions (b) and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties’ testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one 1 co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph subdivision (b) are met. Compare rule 4-2.2 involving in-termediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer’s relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.
Interest of person paying for a lawyer’s service
A lawyer may be paid from a source other than the client, if the client is in *327 formed of that fact and consents and the arrangement does not compromise the lawyer’s duty of loyalty to the client. See rule 4-1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel’s professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors ofr employees, if the clients consent after consultation and the arrangement ensures the lawyer’s professional independence.
Other conflict situations
Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer’s relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arisei and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.
For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.
Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of some jurisdictions. In Florida, the personal representative is the client rather than the estate or the beneficiaries. The lawyer should make clear the relationship to the parties involved.
A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two 2 roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer’s resignation from the board;, and the possibility of the corporation’s obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer’s independence of professional judgment, the lawyer should not serve as a director.
Conflict charged by an opposing party
Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See scope.
Family relationships between lawyers
Rule 4-1.7(d) applies to related lawyers who are in different firms. Related lawyers in the same firm are also governed by rules 4-1.9 and 4-1.10. The disqualification stated in rule 4 — 1.7(d) is personal and is not imputed to members of firms with whom the lawyers are associated.
RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED TRANSACTIONS
(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transac *328 tion with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer’s fee or expenses, unless:
(1) Tthe transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which that can be reasonably understood by the client;
(2) Tthe client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) Tthe client consents in writing thereto.
(b) Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by rule 4-1.6.
(c) Gifts to Lawyer or Lawyer’s Family. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Acquiring Literary or Media Rights. Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) Financial Assistance to Client. A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) Aa lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) Aa lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) Compensation by Third Party. A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) Tthe client consents after consultation;
(2) Tthere is no interference with the lawyer’s independence of professional judgment or with the client-lawyer relationship; and
(3) linformation relating to representation of a client is protected as required by rule 4-1.6.
(g) Settlement of Claims for Multiple Clients. A lawyer who represents two-(2) or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) Limiting Liability for Malpractice. A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) Acquiring Proprietary Interest in Cause of Action. A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) Aacquire a lien granted by law to secure the lawyer’s fee or expenses; and
(2) Ccontract with a client for a reasonable contingent fee.
Comment
Transactions between client and lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on *329 behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client’s disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client’s consent, seek to acquire nearby property where doing so would adversely affect the client’s plan for investment. Paragraph Subdivision (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in paragraph subdivision (a) are unnecessary and impracticable. Likewise, paragraph subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer’s fee or expenses.
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If ef-fectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Paragraph Subdivision (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
Literary rights
An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer’s fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and paragraph subdivision (i).
Person paying for lawyer’s services
Rule 4-1.8(f) requires disclosure of the fact that the lawyer’s services are being paid for by a third party. Such an arrangement must also conform to the requirements of rule 4-1.6 concerning confidentiality and rule 4-1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.
Acquisition of interest in litigation
Paragraph Subdivision (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the exception for certain advances of the costs of litigation set forth in paragraph subdivision (e).
This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
RULE 4-1.9 CONFLICT OF INTEREST; FORMER CLIENT
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Rrepresent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Uuse information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
Comment
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this rule. The principles in rule 4-1.7 determine whether the interests of the present and *330 former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client, a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
The scope of a “matter” for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer’s involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.
Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer’s intended role in behalf of the new client.
With regard to an opposing party’s raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.
RULE 4-1.10 IMPUTED DISQUALIFICATION; GENERAL RULE
(a) Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them shall knowingly represent a client when any ©nel of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
(b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
(c) Representing Interests Adverse to Clients of Formerly Associated Lawyer. When a lawyer- has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) Tthe matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) Aany lawyer remaining in the firm has information protected by rules 4-1.6 and 4 — 1.9(b) that is material to the matter.
(d) Waiver of Conflict. A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.
Comment
Definition of “firm”
For purposes of the Rules of Professional Conduct, the term “firm” includes law *331 yers in a private firm and lawyers employed in the legal department of a corporation or other organization or in a legal services organization. Whether two (2) or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two — (2) practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that'information acquired by one lawyer is attributed to another.
With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.
Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1). The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.
Different provisions are thus made for movement of a lawyer from one 1 private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11. However, if the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government’s recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.
Principles of imputed disqualification
The rule of imputed disqualification stated in paragraph subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations' can be considered from the premise that a firm of lawyers is essentially one 1 lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. ParagraphSubdivision (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from ©se 1 firm to another the situation is governed by paragraphs subdivisions (b) and (c).
*332 Lawyers moving between firms
When lawyers have been associated in a firm but then end their association, however, the problem is more complicated. The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to ©se 1 field or another, and that many move from ©se 1 association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from ose 1 practice setting to another and of the opportunity of clients to change counsel.
Reconciliation of these competing principles in the past has been attempted under two (2) rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.
The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety and was proscribed in former Canon 9 of the Code of Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since “impropriety” is undefined, the term “appearance of impropriety” is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.
A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two (2) functions are involved: preserving confidentiality and avoiding positions adverse to a client.
Confidentiality
Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions^ or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm’s clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those — of information about other clients.
Application of paragraphs subdivisions (b) and (c) depends on a situation’s particular facts. In any such inquiry, the burden *333 of proof should rest upon the firm whose disqualification is sought.
Paragraphs Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9(b). Thus, if a lawyer while with one 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two (2) clients conflict.
Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See rules 4-1.6 and 4-1.9.
Adverse positions
The second aspect of loyalty to client is the lawyer’s obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by rule 4-1.9(a). Thus, if a lawyer left ose 1 firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of rule 4-1.10(b) and (c) concerning confidentiality have been met.
RULE 4-1.11 SUCCESSIVE GOVERNMENT AND PRIVATE EMPLOYMENT
(a)Representation of Private Client by Former Public Officer or Employee. A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) Tthe disqualified lawyer is screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) Wwritten notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) Use of Confidential Government Information. A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
(c) Limits on Participation of Public Officer or Employee. A lawyer serving as a public officer or employee shall not:
(1) ^participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer’s stead in the matter; or
(2) Nnegotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.
(d) Matter Defined. As used in this rule, the term "matter” includes:
(1) Aany judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties; and
*334 (2) Aany other matter covered by the conflict of interest rules of the appropriate government agency.
(e) Confidential Government Information Defined. As used in this rule, the term “confidential government information” means information which that has been obtained under governmental authority and which that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which that is not otherwise available to the public.
Comment
This rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of rule 4-1.10(b), which applies to lawyers moving from one 1 firm to another.
A lawyer representing a government agency, whether employed or specially retained by the government, is subject to the rules of professional conduct, including the prohibition against representing adverse interests stated in rule 4-1.7 and the protections afforded former clients in rule 4-1.9. In addition, such a lawyer is subject to rule 4-1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this rule.
Where the successive clients are a public agency and a private client, the risk exists that power or discretion vested in public authority might be used for the special benefit of a private client. A lawyer should not be in a position where benefit to a private client might affect performance of the lawyer’s professional functions on behalf of public authority. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client’s adversary obtainable only through the lawyer’s government service. However, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. The provisions for screening and waiver are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.
When the client is an agency of one 1 government, the agency should be treated as a private client for purposes of this rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents a city and subsequently is employed by a federal agency.
Paragraphs Subdivisions (a)(1) and (b) do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement. They prohibit directly relating the attorney’s compensation to the fee in the matter in which the lawyer is disqualified.
Paragraph Subdivision (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government agency or affected person will have a reasonable opportunity to ascertain that, the lawyer is complying with rule 4-1.11 and to take appropriate action if they the agency or person believes the lawyer is not complying.
Paragraph Subdivision (b) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.
Paragraphs Subdivisions (a) and (c) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by rule 4-1.7 and is not otherwise prohibited by law.
Paragraph Subdivision (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
*335 RULE 4-1.12 FORMER JUDGE OR ARBITRATOR
(a) Representation of Private Client by Former Judge, Arbitrator, or Law Clerk. Except as stated in paragraph subdivision (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, unless all parties to the proceeding consent after disclosure.
(b) Negotiation of Employment by Judge, Arbitrator, or Law Clerk. A lawyer shall not negotiate for employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer or arbitrator. A lawyer serving as a law clerk to a judge, other adjudicative officer, or arbitrator may negotiate for employment with a party or attorney involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge, other adjudicative officer, or arbitrator.
(c) Imputed Disqualification of Law Firm. If a lawyer is disqualified by paragraph subdivision (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) Tthe disqualified lawyer is screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) Wwritten notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.
(d) Exemption for Arbitrator as Partisan. An arbitrator selected as a partisan of a party in a multimember arbitration panel is not prohibited from subsequently representing that party.
Comment
This rule generally parallels rule 4-1.11. The term “personally and substantially” signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits. Compare the comment to rule 4-1.11. The term “adjudicative officer” includes such officials as judges pro tempore, referees, special masters, hearing officers, and other parajudicial officers and also lawyers who serve as part-time judges. Compliance Canons A(2), B(2), and C of Florida’s Code of Judicial Conduct provide that a part-time judge, judge pro tempore, or retired judge recalled to active service may not “act as a lawyer in a proceeding in which he fthe lawyer! has served as a judge or in any other proceeding related thereto.” Although phrased differently from this rule, those rules correspond in meaning.
RULE 4-1.13 ORGANIZATION AS CLIENT
(a) Representation of Organization. A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(b) Violations by Officers or Employees of Organization. If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act, or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization or a violation of law which that reasonably might be imputed to the organization and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer’s representation, the responsi *336 bility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
(1) Aasking reconsideration of the matter;
(2) Aadvising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(3) Preferring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.
(c) Resignation as Counsel For Organization. If, despite the lawyer’s efforts in accordance with paragraph subdivision (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with rule 4-1.16.
(d) Identification of Client. In dealing with an organization’s directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization’s interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) Representing Directors, Officers, Employees, Members, Shareholders, or Other Constituents of Organization. A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7. If the organization’s consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.
Comment
The entity as the client
An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders, and other constituents. Officers, directors, employees, and shareholders are the constituents of the corporate organizational client. The duties defined in this comment apply equally to unincorporated associations. “Other constituents” as used in this comment means the positions equivalent to officers, directors, employees, and shareholders held by persons acting for organizational clients that are not corporations.
When one 1 of the constituents of an organizational client communicates with the organization’s lawyer in that person’s organizational capacity, the communication is protected by rule 4-1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client’s employees or other constituents are covered by rule 4-1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by rule 4-1.6.
When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer’s province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seri *337 ousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization’s interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization’s highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.
Relation to other rules
The authority and responsibility provided in paragraph subdivision (b) are concurrent with the authority and responsibility provided in other rules. In particular, this rule does not limit or expand the lawyer’s responsibility under rule 4-1,6, 4-1.8, 4-1.16, 4-3.8, or 4-4.1. If the lawyer’s services are being used by an organization to further a crime or fraud by the organization, rule 4-1.2(d) can be applicable.
Government agency
The duty defined in this rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. Although in some circumstances the client may be a specific agency, it is generally the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the government as a whole may be the client for purposes of this rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This rule does not limit that authority. See note on scope.
Clarifying the lawyer’s role
There are times when the organization’s interest may be or becomes adverse to those of ene 1 or more of its constituents. In such circumstances the lawyer should advise any constituent whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest that the lawyer cannot represent such constituent and that such person may wish to obtain independent representation. Care must be taken to assure that the constituent understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent and that discussions between the lawyer for the organization and the constituent may not be privileged.
Whether such a warning should be given by the lawyer for the organization to any constituent may turn on the facts of each case.
Dual representation
Paragraph Subdivision (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.
*338 Derivative actions
Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.
The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer’s client does not alone resolve the issue. Most derivative actions are a normal incident of an organization’s affairs, to be defended by the organization’s lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer’s duty to the organization and the lawyer’s relationship with the board. In those circumstances, rule 4-1.7 governs who should represent the directors and the organization.
Representing related organizations
Consistent with the principle expressed in paragraph subdivision (a) of this rule, an attorney or law firm who represents or has represented a corporation (or other organization) ordinarily is not presumed to also represent, solely by virtue of representing or having represented the client, an organization (such as a corporate parent or subsidiary) that is affiliated with the client. There are exceptions to this general proposition, such as, for example, when an affiliate actually is the alter ego of the organizational client or when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client’s affiliate(s). Absent such an exception, an attorney or law firm is not ethically precluded from undertaking representations adverse to affiliates of an existing or former client.
RULE 4-1.14 CLIENT UNDER A DISABILITY
(a) Maintenance of Normal Relationship. When a client’s ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) Appointment of Guardian. A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client’s own interest.
Comment
The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client’s own well-being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five-(5) or six-(6) years of age, and certainly those of ten-(lO) or twelve (12), are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody. So also, it is recognized that some persons of advanced age can be quite capable of handling routine financial matters while needing special legal protection concerning major transactions.
The fact that a client suffers a disability does not diminish the lawyer’s obligation to treat the client with attention and respect. If the person has no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the law *339 yer should as far as possible accord the represented person the status of client, particularly in maintaining communication.
If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client’s best interests. Thus, if a disabled client has substantial property that should be sold for the client’s benefit, effective completion of the transaction ordinarily requires appointment of a legal representative. In many circumstances, however, appointment of a legal representative may be expensive or traumatic for the client. Evaluation of these considerations is a matter of professional judgment on the lawyer’s part.
If the lawyer represents the guardian as distinct from the ward and is aware that the guardian is acting adversely to the ward’s interest, the lawyer may have an obligation to prevent or rectify the guardian’s misconduct. See rule 4-1.2(d).
Disclosure of client’s condition
Rules of procedure in litigation generally provide that minors or persons suffering mental disability shall be represented by a guardian or next friend if they do not have a general guardian. However, disclosure of the client’s disability can adversely affect the client’s interests. The lawyer may seek guidance from an appropriate diagnostician.
RULE 4-1.15 SAFEKEEPING PROPERTY
(a)Clients’ and Third Party Funds to be Held in Trust. A lawyer shall hold in trust, separate from the lawyer’s own property, funds and property of clients or third persons that are in a lawyer’s possession in connection with a representation. All funds, including advances for costs and expenses, shall be kept in a separate account maintained in the state where the lawyer’s office is situated or elsewhere with the consent of the client or third person, provided that funds may be separately held and maintained other than in a bank account if the lawyer receives written permission from the client to do so and provided that such written permission is received prior to maintaining the funds other than in a separate bank account. In no event may the lawyer commingle the client’s funds with those of his or hers the lawyer or those of his or her the lawyer’s law firm. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property, including client funds not maintained in a separate bank account, shall be kept by the lawyer and shall be preserved for a period of sfe-(6} years after termination of the representation.
(b) Notice of Receipt of Trust Funds; Delivery; Accounting. Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) Disputed Ownership of Funds. When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
(d) Compliance With Trust Accounting Rules. A lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts.
*340 Comment
A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be. kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances. All property which that is the property of clients or third persons should be kept separate from the lawyer’s business and personal property and, if money, in one 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
Lawyers often receive funds from third parties from which the lawyer’s fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer’s contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be. promptly distributed.
Third parties, such as a client’s creditors, may have just claims against funds or other property in a lawyer’s custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party and where appropriate the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
Paragraph Subdivision (d) of this rule requires each lawyer to be familiar with and comply with Rules Regulating Trust Accounts as adopted by The Florida Bar.
Money or other property entrusted to a lawyer for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This is not to preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.
RULE 4-1.16 DECLINING OR TERMINATING REPRESENTATION
(a) When Lawyer Must Decline or Terminate Representation. Except as stated in paragraph subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) Tthe representation will result in violation of the ¿Rules of professional «Conduct or law;
(2) Tthe lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client; or
(3) Tthe lawyer is discharged.
(b) When Withdrawal is Allowed. Except as stated in paragraph subdivision (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
(1) Tthe client persists in a course of action involving the lawyer’s services that the lawyer reasonably believes is criminal or fraudulent;
(2) Tthe client has used the lawyer’s services to perpetrate a crime or fraud;
*341 (3) Aa client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
(4) Tthe client fails substantially to fulfill an obligation to the lawyer regarding the lawyer’s services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(5) Tthe representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(6) ©other good cause for withdrawal exists.
(c) Compliance With Order of Tribunal. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Protection of Client’s Interest. Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled^ and refunding any advance payment of fee that has not been earned. The lawyer may retain papers and other property relating to or belonging to the client to the extent permitted by law.
Comment
A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest, and to completion.
Mandatory withdrawal
A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope th'at a lawyer will not be constrained by a professional obligation.
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also rule 4-6.2. Difficulty may be encountered if withdrawal is based on the client’s demand that the lawyer engage in unprofessional conduct. The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer’s statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.
Discharge
A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer’s services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to be self-represented himself.
If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client’s interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. See rule 4-1.14.
Optional withdrawal
A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client’s interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not *342 further it. Withdrawal is also permitted if the lawyer’s services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on a repugnant or imprudent objective.
A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.
Assisting the client upon withdrawal
Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers and other property as security for a fee only to the extent permitted by law.
Whether or not a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization’s highest authority is beyond the scope of these rules.
Refunding advance payment of unearned fee
Upon termination of representation, a lawyer should refund to the client any advance payment of a fee that has not been earned. This does not preclude a lawyer from retaining any reasonable nonrefundable fee which that the client agreed would be deemed earned when the lawyer commenced the client’s representation. See also rule 4-1.5.
RULE 4-1.17 SALE OF LAW PRACTICE
A lawyer or a law firm may sell or purchase a law practice provided that:
(a) Sale of Practice as an Entirety. The practice is sold as an entirety to a single purchaser, which is another lawyer or law firm authorized to practice law in Florida.
(b) Notice to Clients. Written notice is served by certified mail, return receipt requested, upon each of the seller’s clients of:
(1) the proposed sale;
(2) the client’s right to retain other counsel; and
(3) the fact that the client’s consent to the substitution of counsel will be presumed if the client does not object within 30 days after being served with notice.
(c) Court Approval Required. If a representation involves pending litigation, there shall be no substitution of counsel or termination of representation unless authorized by the court. The seller may disclose, in camera, to the court information relating to the representation only to the extent necessary to obtain an order authorizing the substitution of counsel or termination of representation.
(d) Client Objections. If a client objects to the proposed substitution of counsel, the seller shall comply with the requirements of rule 4-1.16(d).
(e) Consummation of Sale. A sale of a law practice shall not be consummated until:
(1) with respect to clients of the seller who were served with written notice of the proposed sale, the 30-day period referred to in subdivision (b)(3) has expired or all such clients have consented to the substitution of counsel or termination of representation; and
(2) court orders have been entered authorizing substitution of counsel for all clients who could not be served with written notice of the proposed sale and whose representations involve pending litigation; provided, in the event the court fails to grant a substitution of counsel in a matter involving pending litigation, that matter shall not be included in the sale and the sale otherwise shall be unaffected. Further, the matters not involving pending litigation of any client who cannot be served with written notice of the proposed sale shall not be included in the sale and the sale otherwise shall be unaffected.
(f) Existing Fee Contracts Controlling. The purchaser shall honor the fee agreements that were entered into between the seller and the seller’s clients. The fees *343 charged clients shall not be increased by reason of the sale.
Comment
The practice of law is a profession, not merely a business. Clients are not commodities that can be purchased and sold at will. In accordance with the requirements of this rule, when a lawyer or an entire firm sells the practice and another lawyer or firm takes over the representation, the selling lawyer or firm may obtain compensation for the reasonable value of the practice as may withdrawing partners of law firms. See rules 4-5.4 and 4-5.6.
Single purchaser
The requirement that all of the private practice be sold is satisfied if the seller in good faith makes the entire practice available for sale to the purchaser. The fact that a number of the seller’s clients decide not to be represented by the purchaser but take their matters elsewhere, therefore, does not result in a violation. Similarly, a violation does not occur merely because a court declines to approve the substitution of counsel in the cases of a number of clients who could not be served with written notice of the proposed sale.
The rule requires that the practice be sold as an entirety to a single purchaser. The prohibition against piecemeal sale of a practice protects those clients whose matters are less lucrative and who might find it difficult to secure other counsel if a salé could be limited to substantial fee-generating matters. The purchaser is required to undertake all client matters in the practice, subject to client consent or court authorization. If, however, the purchaser is unable to undertake all client matters because of a conflict of interest in a specific matter respecting which the purchaser is not permitted by rule 4-1,7 or another rule to represent the client, the requirement that there be a single purchaser is nevertheless satisfied.
Client confidences, consent, and notice
Negotiations between seller and prospective purchaser prior to disclosure of information relating to a specific representation of an identifiable client do not violate the confidentiality provisions of rule 4-1.6 any more than do preliminary discussions concerning the possible association of another lawyer or mergers between firms, with respect to which client consent ordinarily is not required. Providing the prospective purchaser access to client-specific information relating to the representation and to the file, however, requires client consent or court authorization. See rule 4-1.6. Rule 4-1.17 provides that the seller must attempt to serve each client with written notice of the contemplated sale, including the identity of the purchaser and the fact that the decision to consent to the substitution of counsel or to make other arrangements must be made within 30 days. If nothing is heard within that time from a client who was served with written notice of the proposed sale, that client’s consent to the substitution of counsel is presumed. However, with regard to clients whose matters involve pending litigation but who could not be served with written notice of the proposed sale, authorization of the court is required before the files and client-specific information relating to the representation of those clients may be disclosed by the seller to the purchaser and before counsel may be substituted.
A lawyer or law firm selling a practice cannot be required to remain in practice just because some clients cannot be served with written notice of the proposed sale. Because these clients cannot themselves consent to the substitution of counsel or direct any other disposition of their representations and files, with regard to clients whose matters involve pending litigation the rule requires an order from the court authorizing the substitution (or withdrawal) of counsel. The court can be expected to determine whether reasonable efforts to locate the client have been exhausted, and whether the absent client’s legitimate interests will be served by authorizing the substitution of counsel so that the purchaser may continue the representation. Preservation of client confidences requires that the petition for a court order be considered in camera. If, however, the court fails to grant substitution of counsel in a matter *344 involving pending litigation, that matter shall not be included in the sale and the sale may be consummated without inclusion of that matter.
The rule provides that matters not involving pending litigation of clients who could not be served with written notice may not be included in the sale. This is because the clients’ consent to disclosure of confidential information and to substitution of counsel cannot be obtained and because the alternative of court authorization ordinarily is not available in matters not involving pending litigation. Although such matters shall not be included in the sale, the sale may be consummated without inclusion of those matters.
If a client objects to the proposed substitution of counsel, the rule treats the seller as attempting to withdraw from representation of that client and, therefore, provides that the seller must comply with the provisions of rule 4-1.16 concerning withdrawal from representation. Additionally, the seller must comply with applicable requirements of law or rules of procedure.
All the elements of client autonomy, including the client’s absolute right to discharge a lawyer and transfer the representation to another, survive the sale of the practice.
Fee arrangements between client and purchaser
The sale may not be financed by increases in fees charged the clients of the practice. Existing agreements between the seller and the client as to fees and the scope of the work must be honored by the purchaser. This obligation of the purchaser is a factor that can be taken into account by seller and purchaser when negotiating the sale price of the practice.
Other applicable ethical standards
Lawyers participating in the sale of a law practice are subject to the ethical standards applicable to involving another lawyer in the representation of a client for all matters pending at the time of the sale. These include, for example, the seller’s ethical obligation to exercise competence in identifying a purchaser qualified to assume the practice and the purchaser's obligation to undertake the representation competently (see rule 4-1.1); the obligation to avoid disqualifying conflicts, and to secure client consent after consultation for those conflicts that can be agreed to (see rule 4-1.7); and the obligation to protect information relating to the representation (see rules 4-1.6, 4-1.8(b), and 4-1.9(b)). If the terms of the sale involve the division between purchaser and seller of fees from matters that arise subsequent to the sale, the fee-division provisions of rule 4-1.5 must be satisfied with respect to such fees. These provisions will not apply to the division of fees from matters pending at the time of sale.
If approval of the substitution of the purchasing attorney for the selling attorney is required by the rules of any tribunal in which a matter is pending, such approval must be obtained before the matter can be included in the sale (see rule 4-1.16).
Applicability of this rule
This rule applies, among other situations, to the sale of a law practice by representatives of a lawyer who is deceased, disabled, or has disappeared. It is possible that a nonlawyer, who is not subject to the Rules of Professional Conduct, might be involved in the sale. When the practice of a lawyer who is deceased, is disabled, or has disappeared is being sold, the notice required by subdivision (b) of this rule must be given by someone who is legally authorized to act on the selling lawyer’s behalf, such as a personal representative or a guardian. This is because the sale of a practice and transfer of representation involve legal rights of the affected clients.
Bona fide admission to, withdrawal from, or retirement from a law partnership or professional association, retirement plans and similar arrangements, and a sale of tangible assets of a law practice, do not constitute a sale or purchase governed by this rule.
4-2. COUNSELOR
RULE 4-2.1 ADVISER
In representing a client, a lawyer shall exercise independent professional judg *345 ment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors that may be relevant to the client’s situation.
Comment
Scope of advice
A client is entitled to straightforward advice expressing the lawyer’s honest assessment. Legal advice often involves unpleasant facts and alternatives that a client may be disinclined to confront. In presenting advice, a lawyer endeavors to sustain the client’s morale and may put advice in as acceptable a form as honesty permits. However, a lawyer should not be deterred from giving candid advice by the prospect that the advice will be unpalatable to the client.
Advice couched in narrowly legal terms may be of little value to a client, especially where practical considerations, such as cost or effects on other people, are predominant. Purely technical legal advice, therefore, can sometimes be inadequate. It is proper for a lawyer to refer to relevant moral and ethical considerations in giving advice. Although a lawyer is not a moral adviser as such, moral and ethical considerations impinge upon most legal questions and may decisively influence how the law will be applied.
A client may expressly or impliedly ask the lawyer for purely technical advice. When such a request is made by a client experienced in legal matters, the lawyer may accept it at face value. When such a request is made by a client inexperienced in legal matters, however, the lawyer’s responsibility as adviser may include indicating that more may be involved than strictly legal considerations.
Matters that go beyond strictly legal questions may also be in the domain of another profession. Family matters can involve problems within the professional competence of psychiatry, clinical psychology, or social work; business matters can involve problems within the competence of the accounting profession or of financial specialists. Where consultation with a professional in another field is itself something a competent lawyer would recommend, the lawyer should make such a recommendation. At the same time, a lawyer’s advice at its best often consists of recommending a course of action in the face of conflicting recommendations of experts.
Offering advice
In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, duty to the client under rule 4-1.4 may require that the lawyer act if the client’s course of action is related to the representation. A lawyer ordinarily has no duty to initiate investigation of a client’s affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client’s interest.
RULE 4-2.2 INTERMEDIARY
(a) When Lawyer May Act as Intermediary. A lawyer may act as intermediary between clients if the lawyer:
(1) The lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved? and the effect on the attorney-client privileges¿ and obtains each client’s consent to the common representation;
(2) The lawyer reasonably believes that the matter can be resolved on terms compatible with the clients’ best interests, that each client will be able to make adequately informed decisions in the matter, and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
(3) The lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.
*346 (b) Lawyer as Intermediary; Consultation With Clients. While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.
(c) Withdrawal as Intermediary; Effect. A lawyer shall withdraw as intermediary if any of the clients so requests or if any of the conditions stated in paragraph subdivision (a) is are no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the in-termediation.
Comment
A lawyer acts as intermediary under this rule when the lawyer represents two (2) or more parties with potentially conflicting interests. A key factor in defining the relationship is whether the parties share responsibility for the lawyer's fee, but the common representation may be inferred from other circumstances. Because confusion can arise as to the lawyer’s role where each party is not separately represented, it is important that the lawyer make clear the relationship.
The rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association.
A lawyer acts as intermediary in seeking to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two-(2) or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two-(2) or more clients have an interest, arranging a property distribution in settlement of an estate, or mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties’ mutual interests. The alternative can be that each party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication, or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.
In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment and recrimination. In some situations the risk of failure is so great that intermediation is plainly impossible. For example, a lawyer cannot undertake common representation of clients between whom contentious litigation is imminent or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients’ interests can be adjusted by intermediation ordinarily is not very good.
The appropriateness of intermediation can depend on its form. Forms of in-termediation range from informal arbitration, where each client’s case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients’ interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating a relationship between the parties or terminating one.
Confidentiality and privilege
A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information relating to the representation. See rules 4-1.4 and 4-1.6. Complying with both requirements while acting as *347 intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented one 1 of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.
Consultation
In acting as intermediary between clients, the lawyer is required to consult with the clients on the implications of doing so and to proceed only upon consent based on such a consultation. The consultation should make clear that the lawyer’s role is not that of partisanship normally expected in other circumstances.
Paragraph Subdivision (b) is an application of the principle expressed in rule 4-1.4. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.
Withdrawal
Common representation does not diminish the rights of each client in the client-lawyer relationship. Each has the right to loyal and diligent representation, the right to discharge the lawyer as stated in rule 4-1.16, and the protection of rule 4-1.9 concerning obligations to a former client.
RULE 4-2.3 EVALUATION FOR USE BY THIRD PERSONS
(a)When Lawyer May Undertake Evaluation. A lawyer may undertake an evaluation of a matter affecting a client for the use of someone other than the client if:
(1) Tthe lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer’s relationship with the client; and
(2) Tthe client consents after consultation.
(b) Limitation on Scope of Evaluation. In reporting the evaluation, the lawyer shall indicate any material limitations that were imposed on the scope of the inquiry or on the disclosure of information.
(c) Maintaining Client Confidences. Except as disclosure is required in connection with a report of an evaluation, information relating to the evaluation is otherwise protected by rule 4-1.6.
Comment
Definition
An evaluation may be performed at the client’s direction but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.
Lawyers for the government may be called upon to give a formal opinion on the legality of contemplated government agency action. In making such an evaluation, the government lawyer acts at the behest of the government as the client but for the purpose of establishing the limits of the agency’s authorized activity. Such an opinion is to be distinguished from confidential legal advice given agency officials. The critical question is whether the opinion is to be made public.
A legal evaluation should be distinguished from an investigation of a person with whom the lawyer does not have a *348 client-lawyer relationship. For example, a lawyer retained by a purchaser to analyze a vendor’s title to property does not have a client-lawyer relationship with the vendor. So also, an investigation into a person’s affairs by a government lawyer, or by special counsel employed by the government, is not an evaluation as that term is used in this rule. The question is whether the lawyer is retained by the person whose affairs are being examined. When the lawyer is retained by that person, the general rules concerning loyalty to client and preservation of confidences apply, which is not the case if the lawyer is retained by someone else. For this reason, it is essential to identify the person by whom the lawyer is retained. This should be made clear not only to the person under examination, but also to others to whom the results are to be made available.
Duty to third person
When the evaluation is intended for the information or use of a third person, a legal duty to that person may or may not arise. That legal question is beyond the scope of this rule. However, since such an evaluation involves a departure from the normal client-lawyer relationship, careful analysis of the situation is required. The lawyer must be satisfied as a matter of professional judgment that making the evaluation is compatible with other functions undertaken in behalf of the client. For example, if the lawyer is acting as an advocate in defending the client against charges of fraud, it would normally be incompatible with that responsibility for the lawyer to perform an evaluation for others concerning the same or a related transaction. Assuming no such impediment is apparent, however, the lawyer should advise the client of the implications of the evaluation, particularly the lawyer’s responsibilities to third persons and the duty to disseminate the findings.
Access to and disclosure of information
The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily, a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. For example, certain issues or sources may be categorically excluded or the scope of search may be limited by time constraints or the noncooperation of persons having relevant information. Any such limitations which that are material to the evaluation should be described in the report. If, after a lawyer has commenced an evaluation, the client refuses to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer’s obligations are determined by law, having reference to the terms of the client’s agreement and the surrounding circumstances.
Financial auditors’ requests for information
When a question concerning the legal situation of a client arises at the instance of the client’s financial auditor and the question is referred to the lawyer, the lawyer’s response may be made in accordance with procedures recognized in the legal profession. Such a procedure is set forth in the American Bar Association Statement of Policy Regarding Lawyers’ Responses to Auditors’ Requests for Information, adopted in 1975.
4-3. ADVOCATE
RULE 4-3.1 MERITORIOUS CLAIMS AND CONTENTIONS
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification¿ or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.
Comment
The advocate has a duty to use legal procedure for the fullest benefit of the client’s cause, but also a duty not to abuse *349 legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law’s ambiguities and potential for change.
The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client’s position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.
RULE 4-3.2 EXPEDITING LITIGATION
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.
Comment
Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates or for the purpose of frustrating an opposing party’s attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.
RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL
(a)False Evidence; Duty to Disclose. A lawyer shall not knowingly:
(1) Mmake a false statement of material fact or law to a tribunal;
(2) Ffail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) Ffail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) Fpermit any witness, including a criminal defendant, to offer testimony or other evidence that the lawyer knows to be false. A lawyer may not offer testimony which he that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures.
(b) Extent of Lawyer’s Duties. The duties stated in paragraph subdivision (a) continue beyond the conclusion of the proceeding and apply even if compliance requires disclosure of information otherwise protected by rule 4-1.6.
(c) Evidence Believed to be False. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(d) Ex Parte Proceedings. In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer which that will enable the tribunal to make an informed decision, whether or not the facts are adverse.
Comment
The advocate’s task is to present the client’s case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate’s duty of candor to the tribunal. However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.
Representations by a lawyer
An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have *350 personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client’s behalf, and not assertions by the lawyer. Compare rule 4-3.1. However, an assertion purporting to be on the lawyer’s own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in rule 4-1.2(d) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with rule 4-1.2(d), see the comment to that rule. See also the comment to rule 4-8.4(b).
Misleading legal argument
Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of ' pertinent legal authorities. Furthermore, as stated in paragraph subdivision (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.
False evidence
When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client’s wishes.
When false evidence is offered by the client, however, a conflict may arise between the lawyer’s duty to keep the client’s revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures.
Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client’s deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which that the adversary system is designed to implement. See rule 4-1.2(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence¿ the client can simply reject the lawyer’s advice to reveal the false evidence and insist that the lawyer keep silent. Thus, the client could in effect coerce the lawyer into being a party to fraud on the court.
Perjury by a criminal defendant
Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer’s duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible if trial is imminent, if the confrontation with the client does not take place until the trial itself, or if no other counsel is available.
The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer’s effort to rectify the situation can increase the likelihood of the client’s being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer *351 participates, although in a merely passive way, in deception of the court.
Remedial measures
If perjured testimony or false evidence has been offered, the advocate’s proper course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. Subject to the caveat expressed in the next section of this comment, if withdrawal will not remedy the situation or is impossible and the advocate determines that disclosure is the only measure that will avert a fraud on the court, the advocate should make disclosure to the court. It is for the court then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer’s version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.
Constitutional requirements
The general rule — that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client — applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer’s ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases.
Refusing to offer proof believed to be false
Generally speaking, a lawyer has authority to refuse to offer testimony or other proof that the lawyer believes is untrustworthy. Offering such proof may reflect adversely on the lawyer’s ability to discriminate in the quality of evidence and thus impair the lawyer’s effectiveness as an advocate. In criminal cases, however, a lawyer may, in some jurisdictions, be denied this authority by constitutional requirements governing the right to counsel.
A lawyer may not assist hfe the client or any witness in offering false testimony or other false evidence, nor may the lawyer permit hfe the client or any other witness to testify falsely in the narrative form unless ordered to do so by the tribunal. If a lawyer knows that hfe ttie client intends to commit perjury, the lawyer’s first duty is to attempt to convince persuade the client to testify truthfully. If the client still insists on committing perjury, the lawyer must threaten to disclose the client’s intent to commit perjury to the judge. If the threat of disclosure does not successfully convince persuade the client to testify truthfully, the lawyer must disclose the fact that hfe the client intends to lie to the tribunal and, per 4-1.6, information sufficient to prevent the commission of the crime of perjury.
The lawyer’s duty not to assist witnesses, including hfe the lawyer’s own client, in offering false evidence stems from the Rules of Professional Conduct, Florida statutes^, and caselaw.
Rule 4-1.2(d) prohibits the lawyer from assisting a client in conduct that the lawyer knows or reasonably should know is criminal or fraudulent.
Rule 4-3.4(b) prohibits a lawyer from fabricating evidence or assisting a witness to testify falsely.
Rule 4-8.4(a) prohibits the lawyer from violating the Rules of Professional Conduct or knowingly assisting another to do so.
Rule 4-8.4(b) prohibits a lawyer from committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer.
Rule 4-8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
*352 Rule 4-8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.
Rule 4-1.6(b) requires a lawyer to reveal information to the extent the lawyer reasonably believes necessary to prevent a client from committing a crime.
This rule, 4-3.3(a)(2), requires a lawyer to reveal a material fact to the tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, and 4-3.3(a)(4) prohibits a lawyer from offering false evidence and requires the lawyer to take reasonable remedial measures when false material evidence has been offered.
Rule 4-1.16 prohibits a lawyer from representing a client if the representation will result in a violation of the Rules of Professional Conduct or law and permits the lawyer to withdraw from representation if the client persists in a course of action which that the lawyer reasonably believes is criminal or fraudulent or repugnant or imprudent. Rule 4-1.16(c) recognizes that notwithstanding good cause for terminating representation of a client, a lawyer is obliged to continue representation if so ordered by a tribunal.
To permit or assist a client or other witness to testify falsely is prohibited by -Florida Statute § section 837.02, Florida Statutes (1991), which makes perjury in an official proceeding a felony;, and by Florida Statute § section 777.011, Florida Statutes (1991), which proscribes aiding, abetting, or counseling commission of a felony.
Florida caselaw prohibits lawyers from presenting false testimony or evidence. Kneale v. Williams, [158 Fla. 811] 30 So.2d 284 (Fla.1947), states that perpetration of a fraud is outside the scope of the professional duty of an attorney and no privilege attaches to communication between an attorney and a client with respect to transactions constituting the making of a false claim or the perpetration of a fraud. Dodd v. The Florida Bar, 118 So.2d 17 (Fla.1960), reminds us that “the courts are ... dependent on members of the bar to ... present the true facts of each cause ... to enable the judge or the jury to [decide the facts] to which the law may be applied. When an attorney ... allows false testimony ... he fthe attorney] ... makes it impossible for the scales [of justice] to balance.” See also The Florida Fla. Bar v. Agar, 394 So.2d 405 (Fla.1981), and The Florida Fla. Bar v. Simons, 391 So.2d 684 (Fla.1980).
The United States Supreme Court in Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988 [89 L.Ed.2d 123] (1986), answered in the negative the constitutional issue of whether it is ineffective assistance of counsel for an attorney to threaten disclosure of his a client’s (a criminal defendant^) intention to testify falsely.
Ex parte proceedings
Ordinarily, an advocate has the limited responsibility of presenting one 1 side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining — order injunction, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
RULE 4-3.4 FAIRNESS OF OPPOSING PARTY AND COUNSEL
A lawyer shall not:
(a) ^unlawfully obstruct another party’s access to evidence} or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceedings A lawyer shall not nor counsel or assist another person to do any such act.
(b) Ffabricate evidence, counsel or assist a witness to testify falsely, or offer an *353 inducement to a witness that is prohibited by law.
(c) Kknowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
(d) lin pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party.
(e) lin trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
(f) Srequest a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) Tthe person is a relative or an employee or other agent of a client^ and
(2) lit is reasonable to believe that the person’s interests will not be adversely affected by refraining from giving such information.
Comment
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealedi or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Parar graph Subdivision (a) applies to evidentiary material generally, including computerized information.
With regard to paragraph subdivision (b), it is not improper to pay a witness’s expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.
Paragraph Subdivision (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also rule 4-4.2.
RULE 4-3.5 IMPARTIALITY AND DECORUM OF THE TRIBUNAL
(a) Influencing Decision Maker. A lawyer shall not seek to influence a judge, juror, prospective juror, or other decision maker except as permitted by law or the rules of court.
(b) Communication with Judge or Official. In an adversary proceeding a lawyer shall not communicate or cause another to communicate as to the merits of the cause with a judge or an official before whom the proceeding is pending except:
(1) lin the course of the official proceeding in the cause;
(2) lin writing if the lawyer promptly delivers a copy of the writing to the opposing counsel or to the adverse party if not represented by a lawyer;
(3) ©orally upon notice to opposing counsel or to the adverse party if not represented by a lawyer; or
(4) Aas otherwise authorized by law.
(c) Disruption of Tribunal. A lawyer shall not engage in conduct intended to disrupt a tribunal.
*354 (d) Communication With Jurors. A lawyer shall not:
(1) ©before the trial of a case with which he or she the lawyer is connected, communicate or cause another to communicate with anyone he or she the lawyer knows to be a member of the venire from which the jury will be selected*;
(2) ©during the trial of a case with which he or she the lawyer is connected, communicate or cause another to communicate with any member of the jury*;
(3) ©during the trial of a case with which he or she the lawyer is not connected, communicate, or cause another to communicate with a juror concerning the case*;
(4) Aafter dismissal of the jury in a case with which he or she the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge*; ©provided, a lawyer may not interview jurors for this purpose unless he or-she the lawyer has reason to believe that grounds for such challenge may exist*; and ©provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the veniremen or jurors in the course of official proceedings or as authorized by court rule or written order of the court.
Comment
Many forms of improper influence upon a tribunal are proscribed by criminal law. Others are specified in Florida’s Code of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions.
The advocate’s function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate’s right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge’s default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review,, and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
RULE 4-3.6 TRIAL PUBLICITY
(a) Prejudicial Extrajudicial Statements Prohibited. A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding. A lawyer shall not counsel or assist another person to make such a statement. Prosecutors and defense counsel shall exercise reasonable care to prevent investigators, employees, or other persons assisting in or associated with a criminal case from making extrajudicial statements that are prohibited under this rule.
(b) Matter Constituting Prejudicial Extrajudicial Statements. A statement referred to in paragraph subdivision (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:
(1) Tthe character, credibility, reputation, or criminal record of a party, suspect in a criminal investigation, or witness or the identity of a witness or the expected testimony of a party or witness;
(2) lin a criminal case or proceeding that could result in incarceration, the possibility of' a plea of guilty to the offense, or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person’s refusal or failure to make a statement;
(3) Tthe performance or results of any examination or test, or the refusal or failure of a person to submit to an examina *355 tion or test, or the identity or nature of physical evidence expected to be presented;
(4) Aany opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;
(5) linformation the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and wouldI if disclosedi create a substantial risk of prejudicing an impartial trial; or
(6) Tthe fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.
(c) Permitted Extrajudicial Statements. Notwithstanding paragraphs subdivisions (a) and (b)(1) through (5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:
(1) Tthe general nature of the claim or defense;
(2) Tthe information contained in a public record;
(3) Tthat an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim, or defense involved and, except when prohibited by law, the identity of the persons involved;
(4) Tthe scheduling or result of any step in litigation;
(5) Aa request for assistance in obtaining evidence and information necessary thereto;
(6) Aa warning of danger concerning the behavior of a person involved when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
(7) lin a criminal case:
a»(A) Tthe identity, residence, occupation, and family status of the accused;
b,(B) lif the accused has not been apprehended, information necessary to aid in apprehension of that person;
€r(C) Tthe fact, time, and place of arrest; and
dr(D) Tthe identity of investigating and arresting officers or agencies and the length of the investigation.
Comment
It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.
Special rules of confidentiality may validly govern proceedings in juvenile, domestic relationSi and mental disability proceedings¿ and perhaps other types of litigation. Rule 4-3.4(c) requires compliance with such rules.
RULE 4-3.7 LAWYER AS WITNESS
(a) When Lawyer May Testify. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of his or her the client except where:
(1) Tthe testimony relates to an uncontested issue;
(2) Tthe testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) Tthe testimony relates to the nature and value of legal services rendered in the case; or
*356 (4) ©disqualification of the lawyer would work substantial hardship on the client.
(b) Other Members of Law Firm as Witnesses. A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by rule 4-1.7 or 4-1.9.
Comment
Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.
The opposing party has proper objection where the combination of roles may prejudice that party’s rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
Paragraph Subdivision (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraphs Subdivisions (a)(2) and (3) recognize that, where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has firsthand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.
Apart from these two (2) exceptions, paragraph subdivision (a)(4) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer’s testimony, and the probability that the lawyer’s testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified;, due regard must be given to the effect of disqualification on the lawyer’s client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The principle of imputed disqualification stated in rule 4-1.10 has no application to this aspect of the problem.
Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by rule 4-1.7 or 4-1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer’s firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. See comment to rule 4-1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, rule 4-1.10 disqualifies the firm also.
RULE 4-3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR
The prosecutor in a criminal case shall:
(a) Rrefrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;
(b) Nnot seek to obtain from an unrepresented accused a waiver of important pretrial rights such as a right to a preliminary hearing;
(c) Mmake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.
Comment
A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries *357 with it specific obligations such as making a reasonable effort to assure that the accused has been advised of the right toT and the procedure forT obtaining counsel and has been given a reasonable opportunity to obtain counsel so that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate. Florida has adopted the American Bar Association Standards of Criminal Justice Relating to Prosecution Function. This is the product of prolonged and careful deliberation by lawyers experienced in criminal prosecution and defense and should be consulted for further guidance. See also rule 4-3.3(d) governing ex parte proceedings, among which grand jury proceedings are included. Applicable law may require other measures by the prosecutor and knowing disregard of these obligations or systematic abuse of prosecutorial discretion could constitute a violation of rule 4-8.4.
Paragraph subdivision (b) does not apply to an accused appearing pro se with the approval of the tribunal, nor does it forbid the lawful questioning of a suspect who has knowingly waived the rights to counsel and silence.
The exception in paragraph subdivision (c) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.
RULE 4-3.9 ADVOCATE IN NONADJUDICATIVE PROCEEDINGS
A lawyer representing a client before a legislative or administrative tribunal in a nonadjudicative proceeding shall disclose that the appearance is in a representative capacity and shall conform to the provisions of rules 4-3.3(a) through (c), 4-3.4(a) through (c), and 4-3.5(a), (c), and (d).
Comment
In representation before bodies such as legislatures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues, and advance argument in the matters under consideration. The decision-making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body should deal with the tribunal honestly and in conformity with applicable rules of procedure.
Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this rule therefore may subject lawyers to regulations inapplicable to advocates who are not lawyers. However, legislatures and administrative agencies have a right to expect lawyers to deal with them as they deal with courts.
This rule does not apply to representation of a client in a negotiation or other bilateral transaction with a governmental agency; representation in such a transaction is governed by rules 4-4.1 through 4-4.4.
4-4. TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS
RULE 4-4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS
In the course of representing a client a lawyer shall not knowingly:
(a) Mmake a false statement of material fact or law to a third person; or
(b) Ffail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by rule 4-1.6.
Comment
Misrepresentation
A lawyer is required to be truthful when dealing with others on a client’s behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act.
*358 Statements of fact
This rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party’s intentions as to an acceptable settlement of a claim are in this category^, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud.
Fraud by client
Paragraph subdivision (b) recognizes that substantive law may require a lawyer to disclose certain information to avoid being deemed to have assisted the client’s crime or fraud. The requirement of disclosure created by this paragraph subdivision is, however, subject to the obligations created by rule 4-1.6.
RULE 4-4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another’s client in order to meet the requirements of any statute or contract requiring notice or service of process directly on an adverse party, in which event the communication shall be strictly restricted to that required by statute or contract, and a copy shall be provided to the adverse party’s attorney.
Comment
This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between 2 organizations, does not prohibit a lawyer for either from communicating with non-lawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this rule prohibits communications by a lawyer for one 1 party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her the agent’s or employee's own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4 — 3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
RULE 4-4.3 DEALING WITH UNREPRESENTED PERSONS
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer’s role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
Comment
An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterest *359 ed authority on the law even when the lawyer represents a client. During the course of a lawyer’s representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.
RULE 4-4.4 RESPECT FOR RIGHTS OF THIRD PERSONS
In representing a client;, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.
Comment
Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons.
4-5. LAW FIRMS AND ASSOCIATIONS
RULE 4-5.1 RESPONSIBILITIES OF A PARTNER OR SUPERVISORY LAWYER
(a) Partners’ Duties Concerning Adherence to Rules of Professional Conduct. A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.
(b) Supervisory Lawyer’s Duties. A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.
(c) Responsibility For Rules Violations. A lawyer shall be responsible for another lawyer’s violation of the Rules of Professional Conduct if:
(1) Tthe lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) Tthe lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
Comment
Paragraphs Subdivisions (a) and (b) refer to lawyers who have supervisory authority over the professional work of a firm or legal department of a government agency. This includes members of a partnership and the shareholders in a law firm organized as a professional corporation^ lawyers having supervisory authority in the law department of an enterprise or government agency^ and lawyers who have intermediate managerial responsibilities in a firm.
The measures required to fulfill the responsibility prescribed in paragraphs subdivisions (a) and (b) can depend on the firm’s structure and the nature of its practice. In a small firm, informal supervision and occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate procedures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior partner or special committee. See rule 4-5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event the ethical atmosphere of a firm can influence the conduct of all its members and a lawyer having authority over the work of another may not assume that the subordinate lawyer will inevitably conform to the rules.
Paragraph Subdivision (c)(1) expresses a general principle of responsibility for acts of another. See also rule 4-8.4(a).
Paragraph Subdivision (c)(2) defines the duty of a lawyer having direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of *360 fact. Partners of a private firm have at least indirect responsibility for all work being done by the firm, while a partner in charge of a particular matter ordinarily has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner would depend on the immediacy of the partner’s involvement and the seriousness of the misconduct. The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
Professional misconduct by a lawyer under supervision could reveal a violation of paragraph subdivision (b) on the part of the supervisory lawyer even though it does not entail a violation of paragraph subdivision (c) because there was no direction, ratification, or knowledge of the violation.
Apart from this rule and rule 4-8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, associate, or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer’s conduct is a question of law beyond the scope of these rules.
RULE 4-5.2 RESPONSIBILITIES OF A SUBORDINATE LAWYER
(a) Rules of Professional Conduct Apply. A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.
(b) Reliance on Supervisor’s Opinion. A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer’s reasonable resolution of an arguable question of professional duty.
Comment
Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the rules. For example, if a subordinate filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document’s frivolous character.
When lawyers in a supervisor-subordinate relationship encounter a matter involving professional judgment as to ethical duty, the supervisor may assume responsibility for making the judgment. Otherwise a consistent course of action or position could not be taken. If the question can reasonably be answered only one 1 way, the duty of both lawyers is clear and they are equally responsible for fulfilling it. However, if the question is reasonably arguable, someone has to decide upon the course of action. That authority ordinarily reposes in the supervisor, and a subordinate may be guided accordingly. For example, if a question arises whether the interests of two (2) clients conflict under rule 4-1.7, the supervisor’s reasonable resolution of the question should protect the subordinate professionally if the resolution is subsequently challenged.
RULE 4-5.3 RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS
With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) Aa partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person’s conduct is compatible with the professional obligations of the lawyer;
(b) Aa lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) Aa lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
*361 (1) Tthe lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) Tthe lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
Comment
Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer’s professional services. A lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.
RULE 4-5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
(a)Sharing Fees With Nonlawyers. A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) Aan agreement by a lawyer with the lawyer’s firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer’s death, to the lawyer’s estate, or to one 1 or more specified persons;
(2) Aa lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which that fairly represents the services rendered by the deceased lawyer; and
(3)a lawyer who purchases the practice of a deceased, disabled, or disappeared lawyer may, in accordance with the provisions of rule 4-1.17, pay to the estate or other legally authorized representative of that lawyer the agreed upon purchase price; and
(34) Aa lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.
(b) Partnership With Nonlawyer. A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(c) Exercise of Independent Professional Judgment. A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer’s professional judgment in rendering such legal services.
(d) Nonlawyer Ownership of Professional Service Corporation or Association. A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit if:
(1) Aa nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; or
(2) Aa nonlawyer has the right to direct or control the professional judgment of a lawyer.
Comment
The provisions of this rule express traditional limitations on sharing fees. These limitations are to protect the lawyer’s professional independence of judgment. Where someone other than the client pays the lawyer’s fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer’s obligation to the client. As stated in paragraph subdivision (c), such arrangements should not interfere with the lawyer’s professional judgment.
*362 RULE 4-5.5 UNLICENSED PRACTICE OF LAW
A lawyer shall not:
(a) ^practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
(b) Aassist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law.
Comment
The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. Paragraph Subdivision (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See rule 4-5.3. Likewise, it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants, and persons employed in government agencies. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.
RULE 4-5.6 RESTRICTIONS ON RIGHT TO PRACTICE
A lawyer shall not participate in offering or making:
(a) Aa partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b)' Aan agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy between private parties.
Comment
An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Paragraph Subdivision (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
Paragraph Subdivision (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
This rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice in accordance with the provisions of rule 4-1.17.
4-6. PUBLIC SERVICE
RULE 4-6.1 PRO BONO PUBLIC SERVICE
A lawyer should render public interest legal service. A lawyer may discharge this responsibility by:
(a) Pproviding professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations;
(b) Sservice without compensation in public interest activities that improve the-law, the legal system^ or the legal profession; or
(c) Efinancial support for organizations that provide legal services to persons of limited means.
Comment
Each lawyer engaged in the practice of law has a responsibility to provide public interest legal services without fee, or at a substantially reduced fee, in ose 1 or more of the following areas: poverty law, civil rights law, public rights law, charitable organization representation, and the administration of justice. This rule expresses that policy but is not intended to be enforced through disciplinary process.
The rights and responsibilities of individuals and organizations in the United States are increasingly defined in legal terms. As *363 a consequence, legal assistance in coping with the web of statutes, rules, and regulations is imperative for all persons.
The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provision of legal services to the disadvantaged. The provision of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer as well as the profession generally, but the efforts of individual lawyers are often not enough to meet the need. Thus, it has been necessary for the profession and government to institute additional programs to provide legal services. Accordingly, legal aid offices, lawyer referral services, and other related programs have been developed, and others will be developed by the profession and government. Every lawyer should support all proper efforts to meet this need for legal services.
RULE 4-6.2 ACCEPTING APPOINTMENTS
A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as when:
(a) ¡¡^representing the client is likely to result in violation of the Rules of Professional Conduct or law;
(b) ¡Representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) Tthe client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer’s ability to represent the client.
Comment
A lawyer ordinarily is not obliged to accept a client whose character or cause the lawyer regards as repugnant. The lawyer’s freedom to select clients is, however, qualified. All lawyers have a responsibility to assist in providing pro bono publico service. See rule 4-6.1. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters or indigent or unpopular clients. A lawyer may also be subject to appointment by a court to serve unpopular clients or persons unable to afford legal services.
Appointed counsel
For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see rule 4-1.1, or if undertaking the representation would result in an improper conflict of interest, for example, when the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer’s ability to represent the client. A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.
An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the rules.
RULE 4-6.3 MEMBERSHIP IN LEGAL SERVICES ORGANIZATION
A lawyer may serve as a director, office^ or member of a legal services organization, apart from the law firm in which the lawyer practices, notwithstanding that the organization serves persons having interests adverse to the client of the lawyer. The lawyer shall not knowingly participate in a decision or action of the organization:
(a) iif participating in the decision would be incompatible with the lawyer’s obligations to a client under rule 4-1.7; or
(b) Wwhere the decision could have a material adverse effect on the representation of a client of the organization whose *364 interests are adverse to a client of the lawyer.
Comment
Lawyers should be encouraged to support and participate in legal service organizations. A lawyer who is an officer or a member of such an organization does not thereby have a client-lawyer relationship with persons served by the organization. However, there is potential conflict between the interests of such persons and the interests of the lawyer’s clients. If the possibility of such conflict disqualified a lawyer from serving on the board of a legal services organization, the profession’s involvement in such organizations would be severely curtailed.
It may be necessary in appropriate cases to reassure a client of the organization that the representation will not be affected by conflicting loyalties of a member of the board. Established, written policies in this respect can enhance the credibility of such assurances.
RULE 4-6.4 LAW REFORM ACTIVITIES AFFECTING CLIENT INTERESTS
A lawyer may serve as a director, officer, or member of an organization involved in reform of the law or its administration notwithstanding that the reform may affect the interests of a client of the lawyer. When the lawyer knows that the interests of a client may be materially affected by a decision in which the lawyer participates, the lawyer shall disclose that fact but need not identify the client.
Comment
Lawyers involved in organizations seeking law reform generally do not have a client-lawyer relationship with the organization. Otherwise, it might follow that a lawyer could not be involved in a bar association law reform program that might indirectly affect a client. See also rule 4-1.2(b). For example, a lawyer specializing in antitrust litigation might be regarded as disqualified from participating in drafting revisions of rules governing that subject. In determining the nature and scope of participation in such activities, a lawyer should be mindful of obligations to clients under other rules, particularly rule 4-1.7. A lawyer is professionally obligated to protect the integrity of the program by making an appropriate disclosure within the organization when the lawyer knows a private client might be materially affected.
4-7. INFORMATION ABOUT LEGAL SERVICES
RULE 4-7.1 COMMUNICATIONS CONCERNING A LAWYER’S SERVICES
A lawyer shall not make or permit to be made a false, misleading, deceptive1 or unfair communication about the lawyer or the lawyer’s services. A communication violates this rule if it:
(a) ^contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(to) li's likely to create an unjustified expectation about results the lawyer can achieve or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
(c) Gcompares the lawyer’s services with other lawyers' services, unless the comparison can be factually substantiated; or
(d) ^contains a testimonial.
Comment
This rule governs all communications about a lawyer’s services, including advertising permitted by rule 4-7.2. Whatever means are used to make known a lawyer’s services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with rule 4-7.5, where a lawyer implies that any court, tribuna^ or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example *365 of a misleading omission is an advertisement for a law firm which that states that all the firm’s lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although rule 4-7.2 permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that he or — she the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter two 2 examples of misleading omissions also are examples of unfair advertising.
The prohibition in paragraph subdivision (b) of statements that may create “unjustified expectations” precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer’s record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in paragraph subdivision (c) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that he or she the lawyer or his-or her the lawyer’s law firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law.
The prohibition in paragraph subdivision (d) would preclude endorsements or testimonials because they are inherently misleading to a layman person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
4-7.2 ADVERTISING
(a) Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.5, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio, television, and recorded messages the public may access by dialing a telephone number, or through written communication not involving solicitation as defined in rule 4-7.4. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the State of Florida.
(b) Single Voice Requirement; Employee of Lawyer or Law Firm. Advertisements on the electronic media such as television and radio may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than instrumental music. The voice may be that of a full-time employee of the firm whose services are advertised; it shall not be that of a celebrity whose voice is recognizable to the public. The lawyer or full-time employee of the firm whose services are being advertised may appear on screen or on radio.
(c) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least one 1 lawyer or the lawyer referral service responsible for their content.
(d) Disclosure Statement. Except as provided in this paragraph subdivision, all advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” This disclosure need not ap *366 pear in electronic advertisements or advertisements in the public print media that contain no illustrations and no information other than that listed in paragraph subdivision (n)(l)-(8) of this rule.
(e) Dramatizations Prohibited. There shall be no dramatization in any advertisement in any medium.
(f) Use of Illustrations. Illustrations used in advertisements shall present information which that can be factually substantiated and is not merely self-laudatory.
(g) Fields of Practice. Every advertisement and written communication that indicates ene 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of rule 4-7.6.
(h) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer’s fee, including those which that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee. Additionally, advertisements and written communications indicating that the charging of a fee is contingent on outcome or that the fee will be a percentage of the recovery shall disclose (1) that the client will be liable for expenses regardless of outcome, if the lawyer so intends to hold the client liable; and (2) whether the percentage fee will be computed before expenses are deducted from the recovery, if the lawyer intends to compute the percentage fee before deducting the expenses.
(i) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than ©se 1 year following publication.
(j) Self-laudatory Statements. A lawyer shall not make statements which that are merely self-laudatory or statements describing or characterizing the quality of the lawyer’s services in advertisements and written communications; provided thatj this provision shall not apply to information furnished to a prospective client at that person’s request or to information supplied to existing clients.
(k) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.7.
(l) Location of Practice. All advertisements and written communications provided for under these rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed.
(m) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer.
(n) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of rule 4-7.1:
(1) Ssubject to the requirements of this rule and rule 4-7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as “attorney” or “law firmT”;
(2) ©date of admission to The Florida Bar and any other bars and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice,-;
*367 (3) ^technical and professional licenses granted by the state or other recognized licensing authorities* and educational degrees received, including dates and institutions;
(4) Fforeign language ability^
(5) Efields of law in which the lawyer is certified or designated practices, subject to the requirements of rule 4-7.6*:;
(6) Pprepaid or group legal service plans in which the lawyer participates*;
(7) Aacceptance of credit cards*'
(8) Efee for initial consultation and fee schedule, subject to the requirements of paragraphs subdivisions (h) and (i) of this rule*; and
(9) Aa listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic2 or community program or event.
(o) Advertising in Law Directory. Nothing in this rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has traditionally been included in these publications.
(p) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the Sstanding ^committee on Advertising in accordance with the requirements of rule 4-7.5, and the lawyer shall retain a copy or recording for three 3 years after its last dissemination along with a record of when and where it was used.
(q) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules2 and may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
Comment
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public’s need to know about legal services can be fulfilled in part through advertising which that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by laymen persons untrained in the law. Such advertising can also adversely affect the public’s confidence and trust in our judicial system.
In order to balance the public’s need for useful information, the state’s need to ensure a system by which justice will be administered fairly and properly, as well as the state’s need to regulate and monitor the advertising practices of lawyers, and a lawyer’s right to advertise the availability of the lawyer’s services to the public, this rule permits public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer’s fees are determined, including prices for specific services and payment and credit arrangements; a lawyer’s foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of televi *368 sion and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public’s confidence in the legal profession and this country’s system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
Paragraphs Subdivisions (b) and (e) of this rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the rule allows all lawyer advertisements in which the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer’s background and experience.
The prohibition in paragraph subdivision (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Paragraph Subdivision 4 — 7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Paragraph Subdivision (e) prohibits dramatizations in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes creating suspense, scenes containing exaggerations or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. While informational illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, self-laudatory illustrations are inherently misleading and thus prohibited. As an example, a drawing of a fist, to suggest the lawyer’s ability to achieve results, would not be informational and would be barred.
Regardless of medium, a lawyer’s advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, or oversized electrical and neon signs¿ or sound trucksz fail to meet these standards and diminish public confidence in the legal system.
The disclosure required by paragraph subdivision (d) of this rule is designed to encourage the informed selection of a lawyer. As provided in rule 4-7.3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus in print advertisements, the type size used for the disclosure must be sufficient to cause the disclosure to be conspicuous; in recorded advertisementsi the disclosure must be spoken at a speed that allows comprehension by the average listener. This rule does not specify the exact type size to be used for the disclosure or the exact speed at which the disclosure may be spoken; good faith and common sense should serve as adequate guides for any lawyer.
Neither this rule nor rule 4-7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
This rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer’s or law firm’s availability to provide legal services. The rule does not apply to communications between lawyers, including brochures used for recruitment purposes.
*369 Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.8. Parar graph Subdivision (q) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
RULE 4-7.3 LEGAL SERVICE INFORMATION
(a) Information Regarding Qualifications. Each lawyer or law firm that advertises his, her, or its the lawyer’s or law firm’s availability to provide legal services shall have available in written form for delivery to any potential client:
(1) Aa factual statement detailing the background, trainingi and experience of each lawyer or the law firing
(2) lif the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer’s or law firm’s practice to special types of cases or clients, the written information shall setting forth the factual details of the lawyer’s experience, expertise, background, and training in such matters.
(b) Information to be Included in Written Communications. A lawyer or law firm that advertises services by written communication not involving solicitation, as defined in rule 4-7.4, shall enclose with each such written communication the information described in paragraph subdivision (a) of this rule.
(c) Request for Information by Potential Client. Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in paragraph subdivision (a).
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services which that will require that the client read and sign a copy of the “Statement of Client’s Rights” as required by these rules, then a copy of such statement shall be furnished contemporaneously with the above information.
(4) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size one size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
(d) Retention of Copies of Information. A copy of all information furnished to clients by reason of this rule shall be retained by the lawyer or law firm for a period of three 3 years after last regular use of the information.
(e) Disclosure Statement. If the lawyer or law firm advertises its services pursuant to rule 4-7.2, the advertisement shall contain the disclosure set forth in rule 4-7.2(d) unless exempt by the terms of that rule. This disclosure need not appear in written communications under rule 4-7.4, which must be accompanied by a copy of the statement of qualifications and experience described in paragraph subdivision (a) of this rule.
(f) Misleading or Deceptive Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not:
*370 (1) Bbe directly or impliedly false or misleading;
(2) Bbe potentially false or misleading;
(3) Ffail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(4) Bbe unsubstantiated in fact; or
(5) Bbe unfair or deceptive.
(g) Proof of Statements or Claims. Upon reasonable request by The Florida Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with paragraph subdivision (f) above.
(h) Disclosure of Intent to Refer Matter to Another Lawyer or Law Firm. A statement and any information furnished to a prospective client, as authorized by paragraph subdivision (a) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or. law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.
Comment '
Consumers and potential clients have a right to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer’s office to obtain it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.
RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient and not meeting the requirements of paragraph subdivision (b) of this rule.
(b) Written Communication.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer's behalf of himself,- his or on behalf of the lawyer’s firnv-fefe or partner, an associate, or any other lawyer affiliated with him or his the lawyer or the lawyer’s firm, a written communication to a prospective client for the purpose of obtaining professional employment if:
a,(A) Tthe written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than thirty 30 days prior to the mailing of the communication;
(b)r(B) Tthe written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
e»(C) lit has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
*371 dr(D) Tthe communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
6t(E) Tthe communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under rule 4-7.1; or
f,(F) Tthe lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
Sn-(A) Each page of such written communications shall be plainly marked “advertisement” in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
b»(B) A copy of each such written communication enclosed shall be filed with the Sstanding ^committee on Aadvertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.5. The lawyer also shall retain a copy of each written communication for three 3 years. If written communications identical in content are sent to two 2 or more prospective clients, the lawyer may comply with this requirement by filing a single copy together with a list of the names and addresses of persons to whom the written communication was sent, retaining the same information. If the lawyer periodically sends the identical communication to additional prospective clients, lists of the additional names and addresses shall be filed with the committee no less frequently than monthly,
Ct(C) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
&(D) No reference shall be made in the communication to the communication^ having received any kind of approval from The Florida Bar.
3t(E) Every written communication shall be accompanied by a written statement of the lawyer^ or law firm’s qualifications conforming to the requirements of rule 4-7.3.
fr(F) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size one 1 size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
ffr(G) The first sentence of any written communication concerning a specific matter shall be: “If you have already retained a lawyer for'this matter, please disregard this letter.”
h,(H) Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
⅛(1) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case or matter will be referred to another law firm, any written communication concerning a specific matter shall include a statement so advising the client.
k(J) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication.
kr(K) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing *372 brochure or pamphlet, the nature of the client’s legal problem.
Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the lay person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the thirty 30-day restriction, particularly since lawyer advertising permitted under rule 4-7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting, the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications in violation of rule 4-7.1. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action which that relate to an accident, disaster, death, or injury, but only if mailed at least thirty 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses which that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes should be clearly marked “advertisement.” This will avoid the recipient^ perceiving that he or-she there is a needs to open the envelope because it is from a lawyer or law firm, only to find he or she the recipient is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding his or her the recipient’s particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient’s matter if he the lawyer does not.
This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan *373 for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which that the lawyer or his or her the lawyer’s law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under rule 4-7.2.
RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
(a) Advisory Opinion. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in paragraph subdivision (d) to the Sstanding Gcommittee on Aadvertising at least fifteen 16 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in paragraph subdivision (b) of this rule.
(b) Filing Copy of Advertisement. Subject to the exemptions stated in paragraph subdivision (c) of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the Sstanding Gcommittee on Aadvertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer’s first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in paragraph subdivision (d).
(c) Exemptions from Filing Requirement. The following are Eexempt from the filing requirements of paragraph subdivision (b) of this rule are:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in rule 4-7.2(n)(l)-(8). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a specified charitable, community1 or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution.
(3) A listing or entry in a law list.
(4) A newsletter mailed only to existing clients or other lawyers.
(5) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and which that are mailed only to other lawyers, relatives, close personal friends, and existing clients.
(d) Contents of Filing. A filing with the committee as required by paragraph subdivision (b) or as permitted by paragraph subdivision (a) shall consist of:
(1) Aa copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) Aa transcript, if the advertisement or communication is on videotape or audiotape;
(3) Aa statement listing all media in which the advertisement or communication *374 will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) Aa fee of twenty-five dollars to be set by the board of governors but not exceeding $50, made payable to The Florida Bar. This fee shall be used only for the purposes to offset the cost of evaluation and review of advertisements submitted under these rules and for the related purpose cost of enforcing these rules.
(e) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this sub-chapter 4-7. The committee shall complete its evaluation within fifteenjj days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the fifteenl5-day period, and so advises the lawyer within the fifteefti5-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within fifteenlS days, the advertisement will be deemed approved.
(f) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer’s advertisement or written communication.
(g) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee of- twenty dollarsto be set by the board of governors but not exceeding $50.
Comment
This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee’s opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
RULE 4-7.6 COMMUNICATION OF FIELDS OF PRACTICE
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not *375 state or imply that the lawyer is a specialist except as follows:
(a) Patent Practice. A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation “patent attorney” or a substantially similar designation?.
(b) Certified Lawyers. A lawyer who complies with the Florida Ccertification Pplan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by a national group which that has standards for certification substantially the same as those set out in chapter 6, may inform the public and other lawyers of Ms or her the lawyer’s certified areas of legal practice and may state in communications to the public that the lawyer is a “specialist in (area of certification).”^ — and
(c) Designated Lawyers. A lawyer who complies with the Florida ©designation Pplan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of his or her the lawyer’s designated areas of legal practice.
Comment
This rule permits a lawyer to indicate areas of practice in communications about the lawyer’s services, for example, such as in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or a national group having substantially the same standards may be described himself or herself to the public as a “specialist” or as “specializing.”
RULE 4-7.7 FIRM NAMES AND LETTERHEADS
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letterhead, or other professional designation that violates rule 4-7.1.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of rule 4-7.1. A lawyer in private practice may use the term “legal clinic” or “legal services” in conjunction with the lawyer’s own name if the lawyer’s practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c) Advertising under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by paragraph subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer’s letterhead, business cards, office sign, and fee contracts, and appears with the lawyer’s signature on pleadings and other legal documents.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than ene 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(f) Partnerships. Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.
Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm’s identity¿ or by a trade name such as “Family Legal Clinic.” Although the United States Supreme Court has held that *376 legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as “Springfield Legal Clinic,” an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Paragraph Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are “academy” and “institute.” Paragraph Subdivision (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is “A. Aaron Able.” Although not prohibited per se, the terms “legal clinic” and “legal services” would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Paragraph Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and rule 4-7.1.
With regard to paragraph subdivision (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, “Smith and Jones,” for that title suggests partnership in the practice of law.
RULE 4-7.8 LAWYER REFERRAL SERVICES
(a) When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) Eengages in no communication with the public and in no direct contact- with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) Rreceives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) Rrefers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
(4) Requires the lawyer to waive confidentiality for the purpose of enabling The Florida Bar to inform the service -of- the lawyer’s grievance history- and the status of each complaint against the lawyer in which there has been-a finding of probable cause;
(54) Ccarries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(65) Ffurnishes The Florida Bar, on a quarterly basis, with the names and Florida bar membership numbers of all lawyers participating in the service; and
(76) Nneither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is operated-by or has been expressly approved-by The Floridar-Bar subject to chapter 8 of these rules.
(b) Definition of Lawyer Referral Service. A “lawyer referral service” is:
(1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or
*377 (2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program;
A pro bono referral program, in which the participating attorneys do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.
Comment
Every citizen of the state should have ready access to the legal system. A person’s access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person’s legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
A — person One who avails himoneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer’s ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer’s paying a pre-arranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer’s ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
A-lawyer-whose-eonduct is or has been the subject of disciplinary action by The Florida Bar-should not be able to conceal that-fact from prospective clients through the initial anonymity provided by a lawyer referral — service.—Therefore,—a—lawyer should participate in a lawyer referral-service-only if that service requires him to waive confidentiality — for -the purpose -of permitting the service to obtain from The Florida Bar information about the lawyer’s disciplinary record so-that the service can take-appropriate action.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer *378 at arm’s length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers.
4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION
RULE 4-8.1 BAR ADMISSION AND DISCIPLINARY MATTERS
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) Kknowingly make a false statement of material fact; or
(b) Ffail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by rule 4-1.6.
Comment
The duty imposed by this rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted and in any event may be relevant in a subsequent admission application. The duty imposed by this rule applies to a lawyer’s own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the law-, yer’s own conduct. This rule also requires affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
This rule is subject to the provisions of the fifth amendment of the United States Constitution and the corresponding provisions of the Florida⅛ Constitution. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this rule.
A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship.
RULE 4-8.2 JUDICIAL AND LEGAL OFFICIALS
(a) Impugning Qualifications and Integrity of Judges or Other Officers. A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or member of the venire* or ef-a candidate for election or appointment to judicial or legal office.
(b) Candidates for Judicial Office; Code of Judicial Conduct Applies. A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct.
Comment
Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney* and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, *379 false statements by a lawyer can unfairly undermine public confidence in the administration of justice.
False statements or statements made with reckless disregard for truth or falsity concerning potential jurors, jurors serving in pending cases, or jurors who served in concluded cases undermine the impartiality of future jurors who may fear to execute their duty if their decisions are ridiculed. Lawyers may not make false statements or any statement made with the intent to ridicule or harass jurors.
When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity.
To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized.
RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT
(a) Reporting Misconduct of Other Lawyers. A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority.
(b) Reporting Misconduct of Judges. A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge’s fitness for office shall inform the appropriate authority.
(c) Confidences Preserved. This rule does not require disclosure of information otherwise protected by rule 4-1.6.
Comment
Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
A report about misconduct is not required where it would involve violation of rule 4-1.6. However a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client’s interests.
If a lawyer were obliged to report every violation of the rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions, but proved to be unenforceable. This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this rule. The term “substantial” refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.
The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a) ^violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Ccommit a criminal act that reflects adversely on the lawyer’s honesty, trust-worthiness1 or fitness as a lawyer in other respects;
(c) Eengage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) Eengage in conduct that is prejudicial to the administration of justice;
(e) Sstate or imply an ability to influence improperly a government agency or official; or
*380 (f) Kknowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.
Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaningj or application of the law apply to challenges of legal regulation of the practice of law.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
RULE 4-8.5 JURISDICTION
A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.
Comment
In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice. If their activity in another jurisdiction is substantial and continuous, it may constitute practice of law in that jurisdiction. See rule 4-5.5.
If the Rules of Professional Conduct in the two (2) jurisdictions differ, principles of conflict of laws may apply. Similar problems can arise when a lawyer is licensed to practice in more than one 1 jurisdiction.
Where the lawyer is licensed to practice law in two-(2) jurisdictions which that impose conflicting obligations, applicable rules of choice of law may govern the situation. A related problem arises with respect to practice before a federal tribunal where the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them.
RULE 4-8.6 PROFESSIONAL SERVICE CORPORATIONS
(a) Professional Service Corporations Authorized. Lawyers may practice law in the form of professional service corporations organized under the Florida Statutes, only if when such corporations are organized all shareholders are legally qualified to render legal services in this state, and while such corporation and all shareholders, officers, directors, agents., and employees comply with the provisions of the Professional Service Corporation Act and the Rules Regulating The Florida Bar.
(b) Practice of Law Limited to Members of The Florida Bar. No professional service corporation may engage in the practice of law in the Sstate of Florida or render advice or interpretations of Florida law except through officers, directors, *381 agents^ or employees who are qualified to render legal services in this state.
(c) Qualifications of Directors and Officers. No person shall serve as a director or executive officer of a professional service corporation engaged in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term “executive officer” shall include the president, vice-president or any other officer who performs a policy;making function.
(d) Violation of Statute or Rule. A lawyer who, while acting as a shareholder, officer, director, agent¿ or employee of a professional service corporation engaged in the practice of law in Florida, violates or sanctions the violation of the Professional Service Corporation Act or the Rules Regulating The Florida Bar shall be subject to disciplinary action.
(e) Disqualification of Shareholder; Severance of Financial Interests. Whenever a shareholder of a professional service corporation becomes legally disqualified to render legal services in this state, said shareholder shall sever all employment with and financial interests in such corporation immediately. For purposes of this rule the term “legally disqualified” shall not include suspension from the practice of law for a period of time less than ninety-one-(91) days. Severance of employment and financial interests required by this rule shall not preclude the shareholder from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder was legally qualified to render legal services in this state. This provision shall not prohibit payment to an existing profit sharing or pension plan to the extent permitted in rule 4-5.4(a)(3), or as required by applicable law.
(f) Cessation of Legal Services. Whenever the sole shareholder of a professional service corporation becomes legally disqualified to render legal services in this state, the professional service corporation shall cease the rendition of legal services. No legal services may be rendered for the professional service corporation by any officer, director, agent, or employee of the professional service corporation until the sole shareholder is legally qualified to render legal services in this state.
(g)Removal of Shareholder upon Disqualification. Whenever a shareholder of a professional service corporation becomes legally disqualified to render legal services in this state, the professional service corporation shall take steps to achieve the immediate removal of the shareholder from the professional service corporation.
Comment
In 1961 this Ccourt recognized the authority of the legislature to enact statutory provisions creating corporations, particularly professional service corporations. But this Ccourt also noted that “[ejnabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 Act.” In re The Florida Bar, 133 So.2d 554, at 555 (Fla. 1961).
The same is true today. Hence, this rule is adopted to continue authorization for members of the bar to practice law in the form of a professional service corporation.
Limitation on rendering legal services
No person may render legal services on behalf of a professional service corporation unless that person is otherwise authorized to do so via membership in the bar or through a motion for leave to appear (pro hac vice). Neither the adoption of this rule nor the statutory provisions alter this limitation.
Employment by and financial interests in a professional service corporation
This rule and the statute require termination of employment of a shareholder when the shareholder is “legally disqualified” to render legal services. The purpose of this provision is to prohibit compensation based on fees for legal services rendered at a time when the shareholder cannot personally render the same type of services. Continued employment in capacities other than rendering legal services with the same or similar compensation would allow circum *382 vention of prohibitions of sharing legal fees with one not qualified to render legal services. Other rules prohibit the sharing of legal fees with nonlawyers and this rule continues the application of that type of prohibition. However, nothing in this rule or the statute prohibits payment to the disqualified shareholder for legal services rendered while the shareholder was qualified to render same, even though payment for the legal services is not received until the shareholder is legally disqualified.
Similarly;, this rule and the statute require the severance of “financial interests” of a legally disqualified shareholder. The same reasons apply to severance of financial interests as those which that apply to severance of employment.
Practical application of the statute and this rule to the requirements of the practice of law mandates exclusion of short term, temporary removal of qualifications to render legal services. Hence, any suspension of less than 91 days, including dues delinquency suspensions, is excluded from the definition of the term. These temporary impediments to the practice of law are such that with the passage of time or the completion of ministerial acts, the member of the bar is automatically qualified to render legal services. Severe tax consequences would result from forced severance and subsequent reestablishment (upon reinstatement of qualifications) of all financial interests in these instances.
However, the exclusion of such suspensions from the definition of the term does not authorize the payment to the disqualified shareholder of compensation based on fees for legal services rendered during the time when the shareholder is not personally qualified to render such services. Continuing the employment of a shareholder during the term of a suspension of less than 91 days requires the professional service corporation to take steps to avoid the practice of law by the shareholder, the ability of the shareholder to control the actions of members of the bar qualified to render legal serviceSj and payment of compensation to the shareholder based on legal services rendered while the shareholder is not personally qualified to render same them. Mere characterization of continued compensation, which is the same or similar to that the disqualified shareholder received when qualified to render legal services, is not sufficient to satisfy the requirements of this rule.
Profit sharing or pension plans
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a disqualified shareholder shall not include payments based on legal services rendered while the shareholder was not personally qualified to render legal services.
CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
5-1. GENERALLY
RULE 5-5.1 TRUST ACCOUNTS
(a) Nature of Money or Property Entrusted to Attorney. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney^ fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of disci *383 pline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
(ab) Trust Accounts Required. Any bank or savings and loan association account maintained by a member of The Florida Bar to comply with rule 4-1.15, Rules of Professional Conduct, is and shall be clearly labeled and designated as a trust account. Any safe deposit box used in connection with the practice of law in Florida maintained by a member of The Florida Bar to comply with rule 4-1.15 shall be located in this state unless the client otherwise consents in writing. A member of The Florida Bar shall advise any institution in which such deposit box is located that it may include property of clients.
(be) Trust Accounts as Official Records. A member of The Florida Bar shall preserve or cause to be preserved the records of all bank and savings and loan association accounts or other records pertaining to the funds or property of a client maintained in compliance with rule 4-1.15 for a period of not less than 6 years subsequent to the final conclusion of the representation of a client relative to such funds or property. Such records shall include checkbooks, cancelled checks, check stubs, vouchers, ledgers and journals, closing statements, accountings or other statements of disbursements rendered to clients or other parties with regard to trust funds, or similar equivalent records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client. Such records shall be kept pursuant to these rules as a specific prerequisite to the right to receive, deliver^ and disburse funds or property of a client and to have a public aspect relating to the protection of clients and to fitness of a member of The Florida Bar to practice law. In any instance of an alleged violation by a member of The Florida Bar of this rule or of any of the Rules of Professional Conduct, such records insofar as they may relate in any way to the transaction, occurrence, or client in question shall be produced by the members of The Florida Bar for inspection, audit,- and copying by a designated representative of The Florida Bar upon the direction of this Ccourt, a grievance committee, the board of governors if acting pursuant to rule 3-7.5(b), or a referee. Such records or copies thereof shall be admissible in evidence in any proceeding under this rule; provided notice of such intended use shall be given to any client involved, if practicable, unless such client is already aware of such intended use, and upon good cause shown by such client the admission of the same shall be under such conditions as shall be reasonably calculated thereafter to protect the confidences of such client in the event that the proceedings otherwise become public records. Permissible means of protection shall not prejudice the respondent and may include but are not limited to excision, in camera production, retention in sealed envelopes, or similar devices. Failure to maintain such records or to produce them upon such direction shall constitute ground for disciplinary action under this rule without regard to any other matter. The cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(ed) Trust Accounting. Minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property.
(4e) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used in rule 5-l.l(de), the term:
MA) “Nnominal or short term” describes funds of a client or third person which that, pursuant to rule 5-l.l(de)(7), the lawyer has determined cannot practicably be placed at interest for the benefit of the client or third person^
MB) “Foundation” means The Florida Bar Foundation, Inc.;
*384 e,(C) “IOTA account” means a trust account described in rule 5-l.l(de)(2).
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons which that are placed in trust with any member of The Florida Bar practicing from an office or other business location within the Sstate of Florida shall be deposited into one or more interest-bearing trust accounts for the benefit of the Foundation, except as provided in rule 4-1.15 with respect to funds maintained other than in a bank account, or as provided in rule 5-1.2(a). Only trust funds which that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of rule 5-1.1(d).
(3) Eligible Financial Institutions. An IOTA account shall be established with any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws. The funds in each IOTA account shall be subject to withdrawal upon request, and without delay.
(4) Interest Rates. The rate of interest on any IOTA account shall not be less than the rate paid by the financial institution to non-IOTA account depositors. Higher rates offered by the financial institution to customers whose deposits exceed certain time or quantity minimums may be obtained by a lawyer or law firm for IOTA accounts on some or all of the deposited funds so long as there is no impairment of the right to immediately withdraw or transfer principal.
(5) Remittance Instructions. Lawyers or law firms shall direct the financial institution:
a,(A) Frequency of Remittances..Tto remit interest on the balance in the IOTA account, in accordance with the financial institution’s standard practice for non-IOTA account depositors, less reasonable service charges or fees, if any, in connection with the IOTA account, at least quarterly, to the Foundation,;
MB) Statement to the Foundation. Tto transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyers or law firm’s IOTA trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest earned during the remittance period, the amount of any service charges or fees assessed during the remittance period, and the net amount of interest remitted for the period; and
e,(C) Report to Law Firm. Tto transmit to the depositing lawyer or law firm, for each remittance, a report showing the amount paid to the Foundation, the rate of interest appliedz and the period for which the report is made.
(6) Notice to Foundation. Lawyers or law firms shall advise the Foundation at Post Office Box 1553, Orlando, Florida 32802-9919, of - the establishment of an IOTA account. Such notice shall include: the IOTA account number as assigned by the financial institution; the name of the lawyer or law firm on the IOTA account; the financial institution name; the financial institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the Sstate of Florida, — which that has established an IOTA account.
(7) Determination of Nominal or Short-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
MA) Tthe amount of a client’s or third person’s funds to be held by the lawyer or law firm;
MB) Tthe period of time such funds are expected to be held;
*385 6t(C) Tthe likelihood of delay in the relevant transaction(s) or proceeding(s);
d»(D) Tthe cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
e,(E) Mminimum balance requirements and/or service charges or fees imposed by the financial institution.
The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(8) Small IOTA Accounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds which that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable financial institution service charges or fees.
(9) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of rule 5-l.l(de).
(ef) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if suoh the owner is then entitled to receive the same. Trust funds and property which that remain unidentifiable and funds or property which that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in chapter 717, Florida Statutes.
(fg) Disbursement Aagainst Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit under any of the following circumstances:
(1) Wwhen the deposit is made by certified check or cashier’s cheeky
(2) Wwhen the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender^
(3) Wwhen the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the Sstate of *386 Florida when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time*¡
(4) Wwhen the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the Sstate of Florida or on the escrow or trust account of a real estate broker licensed under chapter 475, Florida Statutes, when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time-¡
(5) Wwhen the deposit is made by a check issued by the United States government, the State of Florida, or any agency or political subdivision of the State of Florida,;
(6) Wwhen the deposit is made by a check or draft issued by an insurance company or title insurance company (not a title agency) authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer¿ upon obtaining knowledge of the failure,^ must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law within the Sstate of Florida except special trust funds received or disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court whie-h that has authority or duty to issue orders pertaining to maintenance of such special trust account.
(b) Minimum Trust Accounting Records. The following are the minimum trust accounting records which that shall be maintained are:
(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts. Such accounts shall be located in the Sstate of Florida unless the client otherwise directs, in writing, or unless the financial institution in which the funds are maintained voluntarily submits to the jurisdiction of the Supreme Court of Florida. Such voluntary-submission to the jurisdiction of the Supreme Court of Florida shall be on the form prescribed by the board of governors of The Florida Bar. The account or accounts shall be in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
a»(A) Tthe date and source of all trust funds received; and
b»(B) Tthe client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively.
*387 (4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
a,(A) Tthe identification of the client or matter for which the funds were received, disbursed, or transferred;
MB) Tthe date on which all trust funds were received, disbursed, or transferred;
fe(C) Tthe check number for all disbursements; and
d,(D) Tthe reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unex-pended balance, and containing:
ar(A) Tthe identification of the client or matter for which trust funds were received, disbursed, or transferred;
MB) Tthe date on which all trust funds were received, disbursed, or transferred;
MO Tthe check number for all disbursements; and
d,(D) Tthe reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c) Minimum Trust Accounting Procedures. The minimum trust accounting procedures which that shall be followed by all attorneys practicing in Florida who receive or disburse trust money or property are as follows:
(1)The lawyer shall cause to be made monthly:
MA) Reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
MB) Aa comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
(2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least 6 years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where he or she the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 650 Apala-chee Parkway, Tallahassee, Florida 32399-2300, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Audits. Any of Tthe following shall be cause for The Florida Bar to order an audit of a trust account:
(1) Ffailure to file the trust account certificate required by rule 5-1.2(c)(5);
(2) return of Aa trust account check fe returned for insufficient funds or for uncollected funds, absent bank error;
(3) filing of Aa petition for creditor relief is filed on behalf of an attorney;
(4) filing of Ffelony charges are filed against an attorney;
(5) adjudication of insanity or incompetence An attorney is-adjudged insane-or mentally- incompetent or is-hospitalized hospitalization of the attorney under tThe Florida Mental Health Act;
(6) filing of Aa claim against the attorney is filed with the Clients’ Security Fund;
*388 (7) Wwhen requested by a grievance committee or the board of governors; or
(8) Uupon court order.
(e) Cost of Audit. Audits conducted in any of the circumstances enumerated in paragraph subdivision (d) above shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.
(f) Failure to Comply With Subpoena.
(1) Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida; by The Florida Bary that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records which that are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time as the member fully complies with the subpoena and/or until further order of the court.
(4)Any member subject to suspension under this rule may petition the court, within 10 days of the filing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the order of suspension. If the court determines it necessary to refer the petition to terminate or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate¿ or modify an order of temporary emergency suspension, as elsewhere provided in these rules.
CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PROGRAMS
6-1. GENERALLY
RULE 6-1.1 COMPOSITION OF BOARD
The board of legal specialization and education shall be composed of thirteen (13) members of The Florida Bar appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Twelve (12) of the members shall hold office for three (3) years and until their successors are appointed. These twelve-(12) members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: four (4) members shall serve until June 30 next following their appointment, four (4) members shall serve until the second June 30 following their appointment, and four (4) members shall serve until the third June 30 following their appointment. One of the twelve (12) members shall be designated by the president as chairman. The thirteenth member shall be the chairman of the Gcon-tinuing Llegal Eeducation Ccommittee of The Florida Bar. Any vacancy shall be filled in the manner provided for original appointments.
*389 RULE 6-1.2 PUBLIC NOTICE
The Florida Bar may cause a public notice to be promulgated where and when it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:
NOTICE
FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING “BOARD CERTIFIED” OR “SPECIALIST” HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE. “FLORIDA BAR DESIGNATED” ATTORNEYS HAVE MET MINIMUM EXPERIENCE AND EDUCATIONAL REQUIREMENTS UNDER THE FLORIDA DESIGNATION PLAN. “FLORIDA BAR MEMBERS” MAY LIST THEIR AREAS OF PRACTICE IN THE YELLOW PAGES WITHOUT MEETING ANY SPECIFIC CRITERIA.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar, Telephone 904/222-5286561-5600, 650 Apa-lachee Parkway, Tallahassee, Florida 32399-2300.
RULE 6-1.3 LIABILITY
The Florida Bar shall assume no liability to any persons whomsoever by reason of the adoption and implementation of the designation or certification plans.
RULE 6-1.4 AMENDMENT
These rules may be amended in accordance with the procedures for amending the rRules ^Regulating The Florida Bar except as provided in rule 6-2,3(b) 1-12.1.
6-2. FLORIDA DESIGNATION PLAN
RULE 6-2.1 ADMINISTRATION
(a)Responsibility of Board; Appeals. The board of legal specialization and education shall have the administrative responsibility arising under this chapter. Any member affected by an adverse decision of the board of legal specialization and education may appeal to the board of governors pursuant to rule 6-2.140.
(b) Responsibilities Delegated to Staff. Responsibilities which that have been delegated to the staff of The Florida Bar are listed in Schedule B.
(c) Direction of Staff and Recommendations by Board. The board of legal specialization and education shall cooperate with and answer inquiries from staff pertaining to the plan and shall investigate and make recommendations to the board of governors concerning all questions relating to the plan, including the-following:
(1) Aapproved education courses;
(2) Aalternative education methods;
(3) Nnumber of hours credit to be allowed for educational efforts;
(4) Eeducational standard for satisfactory completion of approved courses;
(5) Ppossible need for cooperation with colleges and universities;
(6) Aadditional areas of practice to be approved for designation;
(7) Ppossible modification or expansion of the plan;
(8) Aadoption of additional standards pertaining to the plan;
(9) Aamount of the application and renewal fees; and
(10) Ggeneral administration of the plan.
(d) Records of Applications. The Florida Bar shall maintain a list of all members who have filed applications for permission or applications for renewal, showing the date and disposition of each application acted upon.
(e) Notice of Expiration of Designation Authority. At least four-(4) months before the date on which a member’s permission to designate areas of practice expires, The Florida Bar shall give the member notice by regular mail advising the member of the date on which permission expires, the re *390 quired qualifications for renewal of eligibility, and the procedure for renewal.
RULE 6-2.2 AREAS OF PERMITTED DESIGNATION
(a) Requirements for Approval of Designation Areas. A member in good standing of The Florida Bar may not designate an area of practice unless the area has been approved by the board of governors. The board of governors may approve a particular area of practice on its own motion or upon the request of any member if it finds that the area:
(1) Hhas not already been approved under a different description;
(2) iis a generally accepted area of practice; and
(3) Iis described in dignified and ethically appropriate terms.
(b) List of Approved Areas of Practice. The areas of practice which that are approved are listed on Schedule A. Schedule A may be amended by the board of governors in — accordance with procedures for amending chapter 2 as provided in rule 1-12.1.
(c) Request by Member. If a member wishes to designate an area which that has not been approved by the board of governors, he or she the member shall include in his or her the application for permission a request that the area of practice be approved. The board of governors shall consider the request before it takes action on the member’s application for permission.
RULE 6-2.3 ELIGIBILITY FOR PERMISSION TO DESIGNATE AREAS OF PRACTICE
(a) General Criteria for Eligibility. Except as provided in paragraphs subdivisions (b), (c), and (d), a member in good standing of The Florida Bar may be eligible for permission to designate areas of practice if at the time he or she the member files an application: (1) he-or-she the member has been engaged in the practice of law for at least three (3) years and during the three — (3) years preceding the application for permission has had substantial experience in each area of practice listed in the application; and (2) he or she the member has accumulated at least thirty (30) hours of approved continuing legal education in each area sought to be designated.
(b) Waiver of Prior Practice Requirement Based on Equivalent Education or Experience. If the board of legal specialization and education finds that a member who has not engaged in the practice of law in an area for three (3) years preceding the application but has had postgraduate education or concentrated experience in a particular area of practice and the experience is equal to or greater than the experience he or she the member would have gained in that area from three (3) years of practice, and he or she the member has accumulated the minimum amount of approved continuing legal education required under rule 6-⅜3 subdivision (a)(2), the board of legal specialization and education may waive the requirement of rule 6-2,3 subdivision (a)(1) and permit him or her the member to designate that area.
(c) Waiver Based on Extenuating Circumstances. If the board of legal specialization and education finds that a member has had at least three (3) years substantial experience or postgraduate education in an area of practice and the experience or education is not unreasonably remote, but that due to extenuating circumstances the member has not had substantial experience in the area during the three (3) years preceding his or her the member’s application and the member has accumulated the minimum amount of approved continuing legal education required under rule 6-2,3 subdivision (a)(2), the board of legal specialization and education may waive the requirement of rule sl2,3 subdivision (a)(1) and permit him or her the member to designate that area.
(d) Designating General Practice. A member applying for permission to designate “General Practice/’ who has not been a member in good standing of The Florida Bar for the three-(3) years preceding the application but who has accumulated the minimum amount of approved continuing legal education required under rule 6-2.3 *391 subdivision (a)(2)1 may designate “General Practice.”
(e) Limit on Number of Areas of Designation. A member shall not be eligible to designate more than three -(3) areas of practice at any one time.
RULE 6-2.4 APPLICATION FOR DESIGNATION OF AREAS OF PRACTICE
(a) Contents of Application. A member who wishes to designate one 1 or more areas of practice shall file with the board of legal specialization and education an application for permission on a form to be specified by the board of legal specialization and education. The application shall:
(1) Llist the area or areas the member wishes to designate;
(2) Sstate facts sufficient to establish that the member is eligible to designate the areas listed;
(3) Rrequire the applicant to list the continuing legal education the member has accumulated during the previous three (3) years;
(4) Rrequire the applicant to submit certificates of reference from other lawyers who can attest to the applicant’s substantial experience in each area sought to be designated; and
(5) Gcontain a statement that to enhance his-o-r her the member’s proficiency .the member will continue his or her legal education in the areas he or she the member wishes to designate through private study or continuing legal education programs approved by tThe court Florida Bar.
(b) Application Fee. When the application is filed, the member shall pay an application fee in an amount to be established by the board of governors not exceeding $50t06 per area sought to be designated.
RULE 6-2.5 ACTION ON APPLICATIONS TO DESIGNATE AREAS OF PRACTICE
The board of legal specialization and education shall promptly consider and act upon all applications for permission to designate areas of practice. If it finds that an applicant is eligible under rule 6-2.3 to designate ene 1 or more areas of practice, it shall issue a letter of permission authorizing the applicant to designate those areas. If it finds that an applicant is not eligible, it shall notify the applicant of its finding and reasons for it.
RULE 6-2.6 MANNER OF DESIGNATION
(a) Permissible Description of Designation. A member having permission to designate areas of practice may do so by listing the areas in the manner and locations permitted under the Rules of Professional Conduct. Designations shall be made by naming the permitted areas of practice. (For example, a permitted designation might be “John J. Jones, Admiralty and Trial Practice — General.”) The following description is permitted: “Qualified in _under the Florida Designation Plan.”
(b) No Designation for Law Firms. No law firm may designate an area of practice for the firm, but membership in a firm does not impair an individual member’s eligibility to designate areas of practice in accordance with this chapter.
RULE 6-2.7 EFFECT OF DESIGNATION RULE
Nothing in this chapter precludes any member from practicing in any area regardless of whether he-or she the member is designated under this chapter.
RULE 6-2.8 DURATION AND RENEWAL
(a) Duration of Designation. A member’s right to designate ene 1 or more areas of practice shall continue for a term of three (3) years from the date of the letter of permission issued under rule 6-2.5 or paragraph subdivision (d) of this rule.
(b) Eligibility for Renewal. A member shall be eligible to renew his or her the right to designate an area of practice only if during the preceding three 3-year period *392 he or she the member has had substantial experience and he or she has devoted at least thirty-(30) hours to approved continuing legal education in each area for which renewal is sought. For good cause shown, the board of legal specialization and education may waive all or any part of such requirement.
(c) Application for Renewal. A member who wishes to renew his or her the right to designate areas of practice shall file an application for renewal with the board of legal specialization and education at least thirty~(30) days before the permission expires. The application shall be on a form specified by the board of legal specialization and education and shall state sufficient facts to establish that the member is eligible to renew. When the application is filed, the member shall pay a renewal fee in an amount to be established by the board of governors not exceeding $5(MJ6 per area sought to be designated. The thirty 30-day notice period may be waived by the board of legal specialization and education for good cause shown.
(d) Action by Board. The board of legal specialization and education shall promptly consider and act upon all applications for renewal in the same manner as provided in rule 6-2.5.
RULE 6-2.9 CONTINUING LEGAL EDUCATION
(a) Qualification of and Credit for Educational Alternatives. Continuing legal education courses which that are designed to enhance the proficiency of a designated attorney in a particular area of practice shall qualify as approved courses hereunder. The board of legal specialization and education shall determine the number of hours and the designated area(s) entitled to credit for each course. The board of governors may assess a fee to review and approve courses under this plan.
(b) Request for Qualification or Credit. On the application of any interested person, the board of legal specialization and education shall make a determination of the qualification of, and credit to be allowed for, alternative courses or methods of legal education.
(c)List of Approved Educational Alternatives. From time to time the board of legal specialization and education shall publish current lists of approved educational alternatives.
RULE 6-2.10 RIGHT OF REVIEW
Any member adversely affected by an administrative ruling concerning this plan may petition the board of governors for relief. Any denial orf relief by the board of governors can be reviewed by the Ccourt on the member’s petition within thirty (30) days of notice of the board of governors’ action.
SCHEDULE A
LIST OF APPROVED AREAS OF DESIGNATION
Administrative and Governmental Law
Admiralty
Antitrust and Trade Regulation
Appellate Practice
Aviation Law
Bankruptcy
Collections
Corporation and Business Law
Entertainment, Arts, and Sports Law
Environmental Law
General Practice
Immigration and Naturalization
International Law
Labor and Employment Law
Patent, Trademark and Copyright
Securities
SCHEDULE B
MATTERS DELEGATED TO STAFF BY BOARD
The board of legal specialization and education has delegated to staff authority to:
1. Aaction under rule 6-2.5 on applications filed under rule 6-2.5 for permission to designate areas of practice filed by indi *393 vidual members provided the applications do not involve requests for waivers under rule-6-2,3(b) or (c),¡
2. Aaction under rule 6-2,8(&) on applications filed by individual members for renewal under rule 6-2.8(c) filed by individual members^
3. Iissuaace-of letters of permission under rule 6-2.5 and rule 6-2.8(c)r¡
4. Ttimely issuance and publisheation-of all notices required under this chapter^
5. Mmaintainenance of the list of members required by rule 6-2.1(d)T; and
6. Mmaintainenance and publication of the lists of educational courses approved by the board of legal specialization and education.
6-3. FLORIDA CERTIFICATION PLAN
RULE 6-3.1 ADMINISTRATION
The board of legal specialization and education shall have the authority and responsibility to administer the program for regulation of certification including:
(a) Rrecommending to the board of governors areas in which certificates may be granted and providing procedures by which such areas may be determined, refined1 or eliminated;
(b) Rrecommending to the board of governors minimum, reasonable1 and nondiscriminatory standards concerning education, experience, proficiency, and other relevant matters for granting certificates in areas of certification;
(c) Pproviding procedures for the investigation and testing of the qualifications of applicants and certificate holders;
(d) Aawarding certificates to qualified applicants;
(e) Eencouraging law schools, the Ccon-tinuing ©legal ©education Ccommittee of The Florida Bar, voluntary bar associa-tionSj and other continuing legal education entities to develop and maintain a program of continuing legal education to meet the standards described by the plan;
(f) Ccooperating with other agencies of The Florida Bar in establishing and enforcing standards of professional conduct necessary for the recognition and regulation of certification;
(g) Ccooperating with the Sstanding Ccommittee on Specialization of the American Bar Association and with the agencies in other states engaged in the regulation of legal specialization;
(h) ©reporting as required, but at least annually, to the board of governors on the status and conditions of the plan;
(i) ©determining standards, rulesi and regulations to implement these rules in accordance with the minimum standards prescribed by the Supreme Court of Florida; and
(j) ©delegating to The Florida Bar staff any of the administrative responsibilities of the board of legal specialization and education providing said board retains responsibility for staff decisions.
RULE 6-3.2 CERTIFICATION COMMITTEES
For each certification area approved by the Supreme Court óf Florida, a seve»7-member committee, bearing the name of the area, shall be appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Initial committee appointees shall be eminent attorneys in each field, shall be members in good standing of The Florida Bar, shall have been admitted to The Florida Bar no less than ten (10) years, and must meet such other requirements as may in the future be promulgated by the board of legal specialization and education. Initial committee appointees shall be granted-Ger-tificates certified in the applicable area of practice by reason of sueh appointment to that area’s certification committee. The committee members shall hold office for three (3) years and until their successors are appointed. The committee members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: two (2) members shall serve until June 30 next following their appointment, two (2) members shall serve until the *394 second June 30 following their appointment, and three (3) members shall serve until the third June 30 following their appointment. Subsequent appointees must be certified in the area at the time of appointment, must be members in good standing of The Florida Bar, and must meet such other requirements as may be promulgated by the board of legal specialization and education.
RULE 6-3.3 JURISDICTION OF CERTIFICATION COMMITTEES
Each certification committee shall be responsible for:
(a) Pgroposing to the board of legal specialization and education criteria for the issuance or renewal of a certificate, which may include:
(1) Eexperience;
(2) Preferences;
(3) ©continuing legal education;
(4) ©examination, either oral or written or both; and
(5) Wwhether certificates may be issued without examination and on what basis; and
(6) ©other relevant matters,¡
(b) Previewing applications for certificates,¡
(c) Previewing and establishing testing procedures as may be deemed necessary, for certification or recertification,; and
(d) Precommending to the board of legal specialization and education that certificates be issued to those individuals meeting both the minimum standards imposed by this plan and the particular standards for the area for which certification is sought.
RULE 6-3.4 LIMITATIONS ON THE POWERS OF THE BOARD OF GOVERNORS, THE BOARD OF LEGAL SPECIALIZATION AND EDUCATION, AND THE CERTIFICATION COMMITTEES
The-foilo wing -limitations are-established:
(a) Limit on Right to Practice. No standard shall be approved which that shall, in any way, limit the right of a certificate holder to practice law in all areas.
(b) Certification Not Required to Practice. No lawyer shall be required to be certified before he or — she can practicing law in any particular area.
(c) Certification of Individuals Only. All requirements for and all benefits to be derived from certification are individual and may not be fulfilled by or attributed to a law firm of which the certified lawyer may be a member.
(d) Voluntary Nature of Plan. Participation in the plan shall be on a voluntary basis.
(e) Limit on Number of Certified Areas. The limit on the number of areas in which a lawyer may be certified shall be determined by such practical limits as are imposed by the requirements of “substantial involvement” and such other standards as may be established by the board of legal specialization and education.
(f) Rules Regulating The Florida Bar. No rules or standards shall be adopted in contravention of these Rules Regulating The Florida Bar.
RULE 6-3.5 STANDARDS FOR CERTIFICATION
(a) Standards for Certification. The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
(b) Eligibility for Application. A member in good standing of The Florida Bar who is currently engaged in the full-time practice of law and who meets the area’s standards may apply for certification. From the date the application is filed to the date the certificate is issuedj the applicant must continue to practice law full-time and remain a member in good standing of The Florida Bar. The certificate issued by the board of legal specialization and education shall state that the lawyer is a “Board Certified (area of certification) Lawyer.”
*395 (c) Minimum Requirements for Qualifying for Certification with Examination. Minimum requirements for qualifying for certification by examination are as follows:
(1) A minimum of five (5) years in the practice of law on a full-time basis. The “practice of law” means full-time legal work performed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia.
(2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during three (3)of the last five-(5) years preceding the application for certification.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area’s standards7 but in no event less than ten-(10) certification hours per year.
(4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The award of an LL.M. degree from an approved law school in the area for which certification is sought within eight (8) years of application may substitute as the written examination required in this paragraph subdivision if the area’s standards so provide.
(5) Current certification by an approved organization in the area for which certification is sought within five -(5) years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in paragraph subdivision (c)(4). Approval will be by the board of legal specialization and education following a positive or negative recommendation from the certification committee.
(6)Peer review shall be used to solicit information to determine that an applicant for certification has achieved recognition as having a level of competence indicating proficient performance in handling the usual matters in the speciality field. An applicant otherwise qualified for certification may be determined unqualified on the basis of peer review.
Peer review shall be mandatory for all applicants and may not be eliminated by equivalents. Such peer review shall solicit, from persons familiar with the applicant, as much information as is reasonably necessary to accurately assess the applicant’s competence, performance, and reputation. This procedure may include independent inquiry apart from written references.
As part of the peer review process, the board of legal specialization and education and its area committees shall review an applicant’s professional ethics and disciplinary record. Such review shall include both disciplinary complaints and malpractice actions against an applicant. An applicant otherwise qualified may be denied certification on the basis of this record. Certification may also be withheld pending the outcome of the disciplinary complaint or malpractice action.
(d) Minimum Requirements for Qualification without Examination. When certification without examination is available in an area, the minimum requirements for such certification are as follows:
(1) A minimum of twenty (20) years in the practice on a full-time basis.
(2) A satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during f4ve--(5) of the last tes-(10) years, including the year immediately preceding the application for certification. Substantial involvement in the practice of law for the ©se 1 year immediately preceding the application may be waived for good cause shown.
*396 (3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area’s standards, but in no event less than fifteen (15) hours per year.
(4) Satisfactory peer review and professional ethics record in accordance with paragraph subdivision (c)(6).
(5) Certification without examination may be granted only to individuals who apply within two (2) years after the date on which the particular area is approved by the Supreme Court of Florida.
(6) Payment of any fees required by the plan.
RULE 6-3.6 RECERTIFICATION
(a) Duration of Certification. No certificate shall last for a period longer than 5 years.
(b) Minimum Standards for Proficiency. Each area of certification established under this chapter shall contain requirements and safeguards for the continued proficiency of any certificate holder. The following minimum standards shall apply:
(1) A satisfactory showing of substantial involvement during the period of certification in the particular area for which certification was granted.
(2) A satisfactory showing of such continuing legal education in the area for which certification is granted, but in no event less than 10 hours per year.
(3) Satisfactory peer review and professional ethics record in accordance with rule 6-3.5(c)(6).
(4) Any applicant for recertification who is not, at the time of application for recerti-fication;, a member in good standing of The Florida Bar or any other bar or jurisdiction in which the applicant is admitted, as a result of discipline, disbarment, suspension or resignation in lieu thereof, shall be denied recertification. The fact of a pending disciplinary complaint or malpractice action against an applicant for recertification shall not be the sole basis to deny recertifi-cation.
(5)The payment of any fees prescribed by the plan.
(c) Failure to Meet Standards for Re-certification; Lapse of Certificate. Any applicant for recertification who has either failed to meet the standards for recertification or has allowed the certificate to lapse must meet all the requirements for initial certification as set out in the area’s standards.
RULE 6-3.7 REVOCATION OF CERTIFICATION
(a) Grounds for Revocation. A certificate may be revoked by the board of legal specialization and education if the program for certification in that area is terminated or it is determined after hearing on appropriate notice that:
(1) Tthe certificate was issued to a lawyer who was not eligible to receive a certificate or who made any false representation or misstatement of material fact to the certification committee or the board of legal specialization and education*.;
(2) Tthe certificate holder failed to abide by all rules and regulations governing the program promulgated by the board of governors or the board of legal specialization and education as amended from time to time, including any requirement or safeguard for continued proficiency^
(3) Tthe certificate holder failed to pay any fee established by the plan.; or
(4) Tthe certificate holder no longer meets the qualifications established by the plan or the board of legal specialization and education.
(b) Revocation Due to Disciplinary Action. A certificate may be revoked by the board of governors by reason of disciplinary action taken pursuant to the Rules of Discipline or the Rules of-Professional Conduct of Regulating The Florida Bar.
RULE 6-3.8 MANNER OF CERTIFICATION
(a) Listing Area of Certification. A member having received a certificate in an area may list the area on his the member’s letterhead, business cards, and office door, *397 in the yellow pages of the telephone directory, in approved law lists, and by such other means permitted by the Rules of Professional Conduct. The. listing may be made by stating “Board Certified (area of certification) Lawyer” or “Specialist in (area of certification).”
(b)Members of Law Firms. No law firm may list an area of certification for the firm, but membership in the firm does not impair an individual’s eligibility to list areas of certification in accordance with this chapter. Except for the firm listing in the telephone directory, a law firm may show next to the names of any firm members their certification area(s).
RULE 6-3.9 RIGHT OF APPEAL
A lawyer who is refused certificationT or recertification, or whose certificate is revoked by the board of legal specialization and education, or any person who is aggrieved by a ruling or determination of that board shall have the right to appeal the ruling to the board of governors under such rules and regulations as it may prescribe. Exhaustion of this right of appeal shall be a condition precedent to judicial review by the Supreme Court of Florida.
RULE 6-3.10 FEES
The-fees for-the operation of this plan are:
(a) Filing Fee ($200). This fee is for the filing and review of an individual’s certification or recertification application. This fee is not refundable.
(b) Examination/Certification Fee ($150). This fee must be paid before the taking of the examination for certification or before an applicant who otherwise qualifies receives his or her a certificate. This fee is not refundable.
(c) Annual Fee ($-75). This fee is assessed against each plan participant required to file an annua] audit for a particular year. Collection of the fee shall coincide with the distribution of annual audit forms.
(d) Course Approval Fee ($125). This fee is assessed against sponsors who want their seek course approved approval of credit toward continuing legal education hours required under the plan.
(e) Individual Credit Approval ($5). This fee is assessed against applicants or plan participants to cover administrative costs of processing a credit request where a sponsor refuses to cooperate with has not sought course approval under the plan.
RULE 6-3.11 CONFIDENTIALITY
All matters including but not limited to applications, references, tests and test scores, files, reports, investigations, hearings, findings, and recommendations shall be confidential so far as consistent with the effective administration of this plan, fairness to the applicant, and due process of law.
6-4. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED CIVIL TRIAL LAWYER
RULE 6-4.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Civil Trial Lawyer.” The purpose of the standards is to identify those lawyers who practice civil trial law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified civil trial lawyers.
RULE 6-4.2 DEFINITIONS
(a) Civil Trial Law. “Civil trial law” is the practice of law dealing with litigation of civil controversies in all areas of substantive law before state courts, federal courts, administrative agencies, and arbitrators. In addition to actual pretrial and trial process, “civil trial law” includes evaluating, handling, and resolving civil controversies prior to the initiation of suit.
(b) Practice of Law. The “practice of law” for this area is defined as set out at rule 6-3.5(c)(l). Practice of law which that *398 otherwise satisfies these requirements but which that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of civil trial subjects in an accredited law school.
RULE 6-4.3 MINIMUM STANDARDS
(a)Substantial Involvement. To become certified as a civil trial lawyer, a lawyer must demonstrate substantial involvement in civil trial law. Substantial involvement shall include the following:
(1) At least five-(5) years of actual practice of law of which at least thirty (30) percent has been spent in active participation in civil trial law. At least three (3) years of this practice shall be immediately preceding application or, during those three (3) years, the applicant may have served as a judge of a court of general civil jurisdiction adjudicating civil trial matters.
(2) The trial of a minimum of fifteen (15) contested civil cases in courts of general jurisdiction (excluding dissolution of marriage cases) during his or her the lawyer’s practice. Of these fifteen (15) cases¿ several shall have been jury cases, several shall have been conducted by the applicant as lead counsel and several shall have been submitted to the trier of fact. At least five (5) of the fifteen (15) cases, including some jury cases and some cases conducted by the applicant as lead counsel, shall have been tried during the three (3) years immediately preceding application. If the applicant does not meet these criteria, as contained in the immediately preceding sentence, the civil trial certification committee may review the applicant’s trial experience to determine if the applicant has demonstrated special competence as a civil trial lawyer. In all events, in the thr-ee-(3) years immediately preceding application, the applicant must have conducted at least three (3) trials, including at least ese 1 jury trial and ene 1 trial as lead counsel. On good cause shown, for satisfaction in part of the requirement of the fifteen (15) contested civil cases2 the civil trial certification committee may consider involvement in protracted litigation.
(3)Within three (3) years immediately preceding application the applicant shall have substantial, involvement in contested civil matters sufficient to demonstrate special competence as a civil trial lawyer. Substantial involvement includes investigation, evaluation, pleading, discovery, taking of testimony, presentation of evidence^ and argument of jury or nonjury cases. For good cause shown, the civil trial certification committee may waive two (2) of the three (3) year’s substantial involvement for individuals who have served as judges of° courts of general jurisdiction adjudicating civil trial matters. In no event may the year immediately preceding application be waived.
(b) Peer Review. The applicant shall select and submit names and addresses of six (6) lawyers, not associates or partners, as references to attest to the applicant’s involvement in civil trial practice. Such lawyers themselves shall be substantially involved in civil trial law and shall be familiar with the applicant’s practice. No less than one 1 shall be a judge of a court of general jurisdiction in the Sstate of Florida before whom the applicant has appeared as an advocate in the two (2) years immediately preceding the application. In addition, the civil trial certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education. The applicant shall make a satisfactory showing that within the three (3) years immediately preceding application he or she the applicant has accumulated at least fifty-(50) hours of approved continuing legal education in the field of civil trial law. Such education shall be approved by The Florida Bar and may include such activity as:
(1) Tteaching a course in civil trial law;
(2) ^completion of a course in civil trial law;
(3) ^participation as a panelist or speaker in a symposium or similar program in civil trial law;
*399 (4) Aattendance at a lecture series or similar program concerning civil trial law, sponsored by a qualified educational institution or bar group;
(5) Aauthorship of a book or article on civil trial law, published in a professional publication or journal; or
(6) Ssuch other educational experience as the civil trial certification committee shall approve.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants, to demonstrate sufficient knowledge, proficiencyi and experience in civil trial law to justify the representation of special competence to the legal profession and to the public.
RULE 6-4.4 RECERTIFICATION
(a) Standards. Recertification shall be under the following standards:
(al) Continuous and substantial involvement in the practice of law, of which thirty (30) percent has been spent in active participation in civil trial law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-4.3(a)(3).
(b2) The trial of a minimum of three-(3) contested civil cases in courts of general jurisdiction (excluding dissolution of marriage cases) during the period since the last date of certification. Of these three — (3) cases at least ese 1 shall have been a jury case and at least two-(2) shall have been conducted by the applicant as lead counsel. On good cause shown, for satisfaction in part of the requirement of the three (3) contested civil cases, the civil trial certification committee may consider involvement in protracted litigation.
(e3) The applicant shall submit Submission of the names and addresses of three (3) currently board certified civil trial lawyers, and one-(l) judge of a court of general jurisdiction before whom the applicant has appeared as an advocate within the two (2) years preceding application for recertifi-cation. Individuals used as references shall be sufficiently familiar with the applicant to attest to his-or her the applicant’s practice and involvement in civil trial law throughout the period since the last date of certification. Lawyers who currently practice in the applicant’s law firm may not bé used as references. The civil trial certification committee may, at its option, send reference forms to other attorneys and judges or authorize reference forms from other attorneys and judges.
(44) The applicant must demonstrate he or -she has-completed Demonstration of completion of at least fifty - (50) hours of approved continuing legal education since the filing of the last date of application for certification. This requirement shall be satisfied by the applicant’s participation in continuing legal education approved by The Florida Bar pursuant to rule 6-4.3(c)(l) through (6).
(eb) Waiver of Compliance. On special application, for good cause shown, the civil trial certification committee may waive compliance with the substantial involvement criteria provided all other requirements of this rule have been complied with.
6-5. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED TAX LAWYER
RULE 6-5.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Tax Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of taxation and have the special knowledge, skills, and proficiency to be properly identified to the public as certified tax lawyers.
RULE 6-5.2 DEFINITIONS
(a) Tax Law. “Tax law” means legal issues involving federal, statej or local income, estate, gift, ad valorem, excise, or other taxes.
(b) Practice of Law. The “practice of law” for this area is defined as set out at in rule 6-3.5(c)(1). Notwithstanding anything *400 in the definition to the contrary, legal work done primarily for the a purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plans or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law.
RULE 6-5.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of application.
(1) The years of practice of law need not be consecutive.
(2) Notwithstanding the definition of “practice of law” in rule 6-⅛¾⅛)8.5(e)(1), receipt of an LL.M. degree in taxation (or such other related fields approved by the board of legal specialization and education and the tax certification committee) from an approved law school shall be deemed to constitute ©se 1 year of the practice of law for purposes of the five 5-year practice requirement (but not the five5-year bar membership requirement) under this section subdivision. Provided, hHowever, an applicant may not receive credit for more than ene 1 year of practice for any twelve 12-month period under this section subdivision; accordingly, for example, an applicant who, while being engaged in the practice of law, receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of his-or-her having received the LL.M. degree.
(b) Substantial Involvement. Every applicant must demonstrate substantial involvement in the practice of tax law during the three (3) years immediately preceding the date of application. Upon an applicant’s request and the recommendation of the tax certification committee, the board of legal specialization and education may waive the requirement that the three (3) years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Substantial involvement means the applicant has devoted thirty-(30) percent or more of his or her the applicant’s practice to matters in which issues of tax law are significant factors and in which he or she the applicant had substantial and direct participation in those tax issues. An applicant must furnish information concerning the frequency of his or-her the applicant’s work and the nature of the issues involved. For the purposes of this section subdivision the “practice of law” shall be as defined in rule 6-⅛¾⅛)3.5(c)(1), except that it shall also include time devoted to lecturing and/or authoring books or articles on tax law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the tax certification committee but written or oral supplementation may be required.
(c) Peer Review. Every applicant shall submit the names and addresses of five(5) other attorneys who are familiar with Ms or her the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for involvement in the field of tax law in accordance with rule 6-3.5(c)(6). The board of legal specialization and education or the tax certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of legal specialization and education and the tax certification committee may also make such additional inquiries as they deem appropriate.
(d) Education. Every applicant must demonstrate that during the tteee3-year period immediately preceding the date of his or-her application, he or she the applicant has met the continuing legal education requirements in tax law as follows. The required number of hours shall be established by the board of legal specialization *401 and education and shall in no event be less than ninety-(90) hours. Credit for attendance at continuing legal education seminars shall only be given only for programs which that are directly related to tax law. The education requirement may be satisfied by one 1 or more of the following:
(1) Aattendance at continuing legal education seminars meeting the requirements set forth above;
(2) Llecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) Aauthoring articles or books published in professional periodicals or other professional publications;
(4) ¡Reaching courses in “tax law” at an approved law school or other graduate level program presented by a recognized professional education association;
(5) Ccompleting such home study programs as may be approved by the board of legal specialization and education or the tax certification committee, subject to the limitation that no more than fifty-(50) percent of the required number of hours of education may be satisfied through home study programs; or
(6) Ssuch other methods as may be approved by the board of legal specialization and education and the tax certification committee.
The board of legal specialization and education or the tax certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed paragraphs. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, artictej or other activity described in paragraphs subdivisions (2), (3),.and (4) above.
(e) Examination. Every applicant must pass a written examination designed to demonstrate sufficient knowledge, skills, and proficiency in the field of tax law to justify the representation of special competence to the legal profession and the public.
RULE 6-5.4 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a) Substantial Involvement in Tax Law. A satisfactory showing, as determined by the board of legal specialization and education and the tax certification committee, of continuous and substantial involvement in the field of tax law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-5.3(b), except that the board of legal specialization and education and the tax certification committee may accept an affidavit from the applicant attesting to his or — her the applicant’s compliance with the substantial involvement requirement;.
(b) Demonstration of Completion of CLE. Demonstration that he or she the applicant has completed at least one-hundred fifty (150) hours of continuing legal education since the filing of the last date of application for certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified tax lawyers. If the applicant has not attained one hundred fifty (150) hours of continuing legal education, but has attained more than sixty (60) hours during such period, successful passage of the written examination given by the board of legal specialization and education to new applicants shall satisfy the continuing legal education requirements;.
(c) Reference Requirement. Completion of the reference requirements set forth in rule 6-5.3(c);--and.
(d) Examination Requirement. If, after reviewing the material submitted by an applicant for recertification, the board of legal specialization and education and the tax certification committee determine that the applicant may not meet the standards in tax law established under this chapter, the board of legal specialization and education and the tax certification committee may require, as a condition of recertifica *402 tion, that the applicant pass the written examination given by the board of legal specialization and education to new applicants.
6-6. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED MARITAL AND FAMILY LAWYER
RULE 6-6.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Marital and Family Lawyer.” The purpose of the standards is to identify those lawyers who practice marital and family law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified marital and family lawyers.
RULE 6-6.2 DEFINITIONS
(a) Marital and Family Law. “Marital and family law” is the practice of law dealing with legal problems arising from the family relationship of husband and wife and parent and child, including litigation of civil controversies arising from those relationships. In addition to actual pretrial and trial process, “marital and family law” includes evaluating, handling, and resolving such controversies prior to the institution of suit and postjudgment proceedings.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(l). Practice of law which that otherwise satisfies these requirements but which that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of family law subjects in an accredited law school.
RULE 6-6.3 MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as a marital and family lawyer, an applicant must demonstrate substantial involvement in marital and family law. Substantial involvement shall include:
(1) At least five (5) years of actual practice of law of which at least thirty-(30) percent has been spent in active participation in marital and family law. These five (5) years of practice shall be immediately preceding application.
(2) The trial of a minimum of twenty-five (25) contested marital and family law cases in circuit courts during the five (5) years immediately preceding application. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. In each of these twenty-five (25) cases the applicant shall have been responsible for all or a majority of the presentation of evidence and representation of the client. At least ten (10) of the twenty-five-(25) cases must have been submitted to the trier of fact for resolution of one 1 or more contested issues. On good cause shown, for satisfaction in part of the requirement of the twenty-five (25) contested marital and family law cases, the marital and family law certification committee may consider involvement in protracted litigation.
(3) Within three (3) years immediately preceding application the applicant shall have substantial involvement in contested marital and family law cases sufficient to demonstrate special competence as a marital and family lawyer. Substantial involvement includes active participation in client interviewing, counseling^ and investigating, preparation of pleadings, participation in discovery, taking of testimony, presentation of evidence, negotiation of settlement, drafting and preparation of marital settlement agreements, and argument and trial of marital and family law cases. Substantial involvement also includes active participation in the appeal of marital and family law cases.
(b) Peer Review. The applicant shall select and submit names and addresses of six (6) lawyers, not associates or partners, as references to attest to the applicant’s involvement in marital and family law. Such lawyers themselves shall be substantially involved in marital and family law and shall be familiar with the applicant’s practice. No less than two — (2) shall be judges of *403 circuit courts in the Sstate of Florida before whom the applicant has appeared as an advocate in a trial of a marital and family law case in the two-(2) years immediately preceding the application. In addition, the marital and family law certification committee may, at its option, send reference forms to other attorneys and judges, and make such other investigation as necessary.
(c) Education. The applicant shall make a satisfactory showing that;, within the three (3) years immediately preceding application he or — she the applicant has accumulated at least fifty (50) hours of approved continuing legal education in the field of marital and family law. Such education shall be approved by The Florida Bar and may include such activity as:
(1) Tteaching a course in marital and family law;
(2) ^completion of a course in marital and family law;
(3) ^participation as a panelist or speaker in a symposium or similar program in marital and family law;
(4) Aattendance at a lecture series or similar program concerning marital and family law, sponsored by a qualified educational institution or Bbar group;
(5) Aauthorship of a book or article on marital and family law, published in a professional publication or journal; and
(6) Ssuch other educational experience as the marital and family law certification committee shall approve.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants, to demonstrate sufficient knowledge, proficiency, and experience in marital and family law to justify ttie representation of special competence to the legal profession and to the public.
RULE 6-6.4 CIRCUIT JUDGES
An applicant who has served as a circuit judge within the five (5) years immediately preceding application may be eligible for certification if he or she the applicant:
(a) Percentage of Time in Marital and Family Law Cases. Devoted at least ⅛⅛ty-(30) percent of his or her the applicant’s practice or judicial labor to adjudicating marital and family law cases during the five-(5) years immediately preceding application.
(b) Trial Requirement. Either presided over as a judge or handled as an advocate the trial of a minimum of twenty-five (25) contested marital and family law cases in circuit courts during the five (5) years immediately preceding application. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. At least ten (10) of such cases must have been submitted to the trier of fact for resolution of one 1 or more contested issues. If the applicant handled the cases as an advocate, he or- she the applicant must have been responsible for all or a majority of the presentation of evidence and representation of the client.
(c) Substantial Involvement. Meets the requirements of rule 6-6.3(a)(3) during the year immediately preceding application.
(d) Reference Requirement. Submits the references required by rule 6 — 6.3(b).
(e) Continuing Legal Education Requirement. Has accumulated the minimum approved continuing legal education in the field of marital and family law as required by rule 6-6.3(c).
(f) Examination Requirement. Successfully passes the examination required by rule 6-6.3(d).
RULE 6-6.5 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a) Substantial Involvement in Marital and Family Law. Continuous and substantial involvement in the field of marital and family law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rules 6 — 6.3(a)(1) and (3) and 6-6.4(a).
*404 (b) Trial Requirement. Either presided over as a judge or handled as an advocate since certification or the last recertification a minimum of fifteen (15) contested marital and family law cases in circuit courts. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. At least five (5) of such cases must have been submitted to the trier of fact for resolution of ese 1 or more contested issues. If the applicant handled the cases as an advocate, he or she the applicant must have been responsible for all or a majority of the presentation of the evidence and representation of the client. On good cause shown, for satisfaction in part of the fifteen (15) contested marital and family law cases, the marital and family law certification committee may consider involvement in protracted litigation.
(c) Continuing Legal Education Requirement. Completion of at least seventy-five (75) hours of continuing legal education since the last date-of application for certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified marital and family lawyers. If the applicant has not attained seventy-five (75) hours of continuing legal education but has attained more than fifty-(50) hours during such period, successful passage of the examination given to new applicants shall satisfy the continuing legal education requirements.
(d) Reference Requirement. Completion of the reference requirements set forth in rule 6-6.3(b).
6-7. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ESTATE PLANNING AND PROBATE LAWYER
RULE 6-7.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Estate Planning and Probate Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of estate planning and probate and have demonstrated special knowledge, skills, and proficiency to be properly identified to the public as certified estate planning and probate lawyers.
RULE 6-7.2 DEFINITIONS
(a) Estate Planning and Probate. “Estate planning and probate” is the practice of law dealing with all aspects of the analysis and planning for the conservation and disposition of estates, giving due consideration to the applicable tax consequences, both federal and state; the preparation of legal instruments to effectuate estate plans; administering estates, including tax related matters, both federal and state; and probate litigation.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(1). Notwithstanding anything in the definition to the contrary, legal work done primarily for any purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plans or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law. Service as a judge of any court of record shall be deemed to constitute the practice of law. Practice of law which that otherwise satisfies these requirements but which that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of estate planning or probate subjects in an accredited law school.
RULE 6-7.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of application.
*405 Notwithstanding the definition of “practice of law” in rule 6-7?2(b)3.5(c)(l), receipt of an LL.M. degree in taxation or estate planning and probate (or such other related fields approved by the board and estate planning and probate certification committee) from an approved law school shall be deemed to constitute one 1 year of the practice of law for purposes of the five 5-year practice requirement (but not the five 5-year bar membership requirement) under this section, subdivision; Pprovided, however, an applicant may not receive credit for more than ene 1 year of practice for any twelve 12-month period under this section subdivision; accordingly, for example, an applicant who, while being engaged in the practice of law2 receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of having received the LL.M. degree.
(b)Substantial Involvement. Every applicant must demonstrate substantial involvement in the practice of law in estate planning, probate2 or probate:related activities during the 5 years immediately preceding the date of application, including devoting not less than 40 percent of practice to estate planning and probate matters in this state during each of the 2 years immediately preceding application. Service as a judge in the probate division of the circuit court of this state during 6 months or more of a calendar year shall satisfy a year of substantial involvement. Except for the 2 years immediately preceding application, upon an applicant’s request and the recommendation of the estate planning and probate certification committee, the board of legal specialization and education may waive the requirement that the 5 years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Except for the 2 years immediately preceding application, receipt of an LL.M. degree in estate planning and probate (or such other degree containing substantial estate planning and probate content as approved by the board of legal specialization and education) from an approved law school may substitute for ©se 1 year of substantial involvement. An applicant must furnish information concerning the frequency of work and the nature of the issues involved. For the purposes of this section the “practice of law” shall be as defined in rule 6-7-.2(b)3.5(c)(1) except that it shall also include time devoted to lecturing and/or authoring books or articles on estate planning and probate if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the estate planning and probate certification committee, but written or oral supplementation may be required.
(c) Peer Review. Every applicant shall submit the names and addresses of 5 other attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for professional competence and substantial involvement in the field of estate planning and probate law. The board of legal specialization and education and the estate planning and probate certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of legal specialization and education and the estate planning and probate certification committee may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules.
(d) Education. Every applicant must demonstrate that2 during the three 3-year period immediately preceding the date of the application, that the applicant has met the continuing legal education requirements in estate planning and probate as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 90 hours. Credit for attendance at continuing legal education seminars shall be given only for programs which that are directly related to estate planning and probate. The education re *406 quirement may be satisfied by ene 1 or more of the following:
(1) Aattendance at continuing legal education seminars meeting the requirements set forth above;
(2) Llecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) Aauthoring articles or books published in professional periodicals or other professional publications;
(4) ^teaching courses in “estate planning and probate” at an approved law school or other graduate level program presented by a recognized professional education association;
(5) Ccompleting such home study programs as may be approved by the board of legal specialization and education and the estate planning and probate certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; and
(6) Ssuch other methods as may be approved by the board of legal specialization and education and the estate planning and probate certification committee.
The board of legal specialization and education and the estate planning and probate certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed paragraphs subdivisions. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article, or other activity described in paragraphs subdivisions (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination which that will be practical and comprehensive and designed to demonstrate special knowledge, skills, and proficiency in estate planning and probate law to justify the representation of special competence to the legal profession and the public.
RULE 6-7.4 RECERTIFICATION
(a) Eligibility. Recertification must be obtained every 5 years. To be eligible for recertification, an applicant must meet the following requirements:
(al) A satisfactory showing, as determined by the board of legal specialization and education and the estate planning and probate certification committee, of continuous and substantial involvement in estate planning and probate law throughout the period since the last date of certification. The demonstration of substantial involvement of more than 40 percent during each year after certification or prior recertification shall be made in accordance with the standards set forth in rule 6-7.3(b).
(b2) The — applicant—must—demonstrate «Completion of at least 125 hours of approved continuing legal education since the filing of the last application for certification. This requirement shall be satisfied by the applicant’s participation in continuing legal education approved by The Florida Bar pursuant to rule 6-7.3(d)(l) through (6).
(e3) An-applicant for recertification-shall submit Submission of the names and addresses of 3 individuals who are active in estate planning and probatez including but not limited to lawyers, trust officers, certified public accountants, and judges who are familiar with the applicant’s practice, excluding persons who are currently employed by or practice in the applicant’s law firm, who can attest to the applicant’s reputation for professional competence and substantial involvement in the field of estate planning and probate law during the period since the last date of certification. The board of legal specialization and education or the estate planning and probate certification committee may solicit references from persons other than those whose names are submitted by the applicant in such cases as they deem appropriate. The board of legal specialization and education or the estate planning and probate certification committee may also make such additional inquiries as it deems appropriate.
(db) Denial of Recertification. The board of legal specialization and education *407 may deny recertification based upon any information received from the peer review or from any individual referenced in paragraph (c) subdivision (a)(3), above.
(ec) Examination Requirement. If, after reviewing the material submitted by an applicant for recertification and the peer review, the estate planning and probate certification committee determines the applicant may not meet the standards for estate planning and probate certification established under this chapter, the estate planning and probate certification committee may require, as a condition of recertifi-cation, that the applicant pass the examination given by the estate planning and probate certification committee to new applicants.
6-8. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED CRIMINAL LAWYER
RULE 6-8.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as either a “Board Certified Criminal Trial Lawyer” or a “Board Certified Criminal Appellate Lawyer.” An applicant may qualify for certification under both categories provided the applicant meets the standards for each category. The purpose of the standards is to identify those lawyers who practice criminal law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified criminal trial or appellate lawyers.
RULE 6-8.2 DEFINITIONS AND COMMITTEE
(a) Criminal Law. “Criminal law” is the practice of law dealing with the defense and prosecution of misdemeanor and felony crimes in state and federal trial and appellate courts.
(b) Practice of Law. The “practice of law” for this area is defined as set out at in rule 6-3.5(e)(l).
(c) Criminal Law Certification Committee. The criminal law certification committee shall consist of one 1 member with experience in the field of criminal appellate law and sis-(6) members with experience in the field of criminal trial law.
RULE 6-8.3 CRIMINAL TRIAL; MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as a criminal trial lawyer, an applicant must demonstrate substantial involvement in criminal trial law. Substantial involvement shall include the following:
(1) At least five (5) years of the actual practice of law of which at least thirty~(30) percent has been spent in active participation in criminal trial law. At least three (3) years of this practice shall be immediately preceding application or, during those three — (3) years,, the applicant may have served as a judge.
(2) The trial of a minimum of twenty-five (25) criminal cases. Of these twenty-five (25) cases, at least twenty (20) shall have been jury trials and at least fifteen-(15) shall have involved felony charges. On good cause shown, for satisfaction in part of the twenty-five (25) criminal trials, the criminal law certification committee may consider involvement in protracted litigation.
(3) Within the three (3) years immediately preceding application, the applicant’s substantial involvement must be sufficient to demonstrate special competence as a criminal trial lawyer. Substantial involvement includes investigation, evaluation, pleading, discovery, taking of testimony, presentation of evidence, and argument of jury or nonjury cases. For good cause shown, the criminal law certification committee may waive two (2) of the three-(3) years of substantial involvement for individuals who have served as judges. In no event may the year immediately preceding application be waived.
(b) Peer Review.
(1) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references to *408 attest to the applicant’s substantial involvement and competence in criminal trial practice. Such lawyers shall be substantially involved in criminal trial law and familiar with the applicant’s practice.
(2) The applicant shall submit the names and addresses of at least two-(2) judges before whom he or she the applicant has appeared on criminal trial matters within the last two (2) years, or before whom he or- she the applicant has tried a criminal trial to jury verdict, to attest to the applicant’s substantial involvement and competence in criminal trial practice.
(3) The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education.
(1) The applicant shall make a satisfactory showing that within the three (3) years immediately preceding application he or she the applicant has accumulated at least forty-five (45) hours of approved continuing legal education in the field of criminal law.
(2) Applicants seeking certification as both criminal trial and criminal appellate lawyers must, during the thr-ee (3) years immediately preceding application, complete forty-five (45) hours of approved continuing legal education as aforesaid for each category, for a total of ninety (90) hours.
(d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency^ and experience in criminal law, application of constitutional principles, and rules of criminal procedure to justify the representation of special competence to the legal profession and the public.
RULE 6-8.4 CRIMINAL TRIAL RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. The applicant shall demonstrate continuous and substantial involvement in the practice of law, of which at least thirty-(30) percent must have been spent in active participation in criminal trial law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-8.3(a)(3).
(b) Criminal Trial Requirement. The applicant shall have completed the trial of a minimum of five (5) criminal cases. Of these five-(5) cases, at least four-44) shall have been jury trials and at least three (3) shall have involved felony charges. On good cause shown, for satisfaction in part of the five -(5) criminal trials, the criminal law certification committee may consider involvement in protracted litigation.
(c) Continuing Legal Education Requirement. The applicant shall make a satisfactory showing that he or-she has accumulated show accumulation of at least fifty-(50) hours of approved continuing legal education during the-period since the filing of the last application for original certification. An Aapplicants seeking re-certification as both a criminal trial lawyers and criminal appellate lawyers must complete at least fifty (50) hours of approved continuing legal education in each of the categories, for a total of one hundred (100) hours.
(d) References Required from Lawyers. The applicant shall submit the names and addresses of at least four (d) lawyers, not associates or partners, as references, to attest to the applicant’s substantial involvement and competence in criminal trial practice. Such lawyers shall be substantially involved in criminal trial law and familiar with the applicant’s practice.
(e) References Required from Judges. The applicant shall submit the names and addresses of at least two (2) judges before whom he or she the applicant has appeared on criminal trial matters within the last two (2) years, or before whom he or she the applicant has tried a criminal trial to jury verdict, to attest to the applicant’s substantial involvement and competence in criminal trial practice.
(f) Additional References. The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
*409 RULE 6-8.5 CRIMINAL APPELLATE; MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as a criminal appellate lawyer, an applicant must demonstrate substantial involvement in criminal appellate law. Substantial involvement shall include:
(1) At least five (5) years of the actual practice of law of which at least thir-ty-(30) percent has been spent in active participation in criminal appellate law. At least three -(3) years of this practice shall be immediately preceding application or, during those three (3) years, the applicant may have served as a judge. The five (5) years of criminal appellate practice shall include brief writing, motion practice, oral arguments, and extraordinary writs sufficient to demonstrate special competence as a criminal appellate lawyer.
(2) The representation of at least twenty-five (25) appellate actions. On good cause shown, for satisfaction in part of the twenty-five-(25) appellate actions, the criminal law certification committee may consider involvement in protracted litigation.
(3) Within the three (3) years immediately preceding application, the applicant’s substantial involvement must be sufficient to demonstrate special competence as a criminal appellate lawyer. Substantial involvement includes brief writing, motion practice, oral arguments^ and extraordinary writs. For good cause shown, the criminal law certification committee may waive two (2) of the three-(3) years’ substantial involvement for individuals who have served as judges. In no event may the year immediately preceding application be waived.
(b) Peer Review.
(1) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references to attest to the applicant's substantial involvement and competence in criminal appellate practice. Such lawyers shall be substantially involved in criminal appellate law and familiar with the applicant’s practice.
(2) The applicant shall submit the names and addresses of at least two (2) judges before whom he or- she the applicant has appeared on criminal appellate matters within the last two-(2) years, to attest to the applicant’s substantial involvement and competence in criminal appellate practice.
(3) The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education.
(1) The applicant shall make satisfactory showing that within the three — (3) years immediately preceding application he or- she the applicant has accumulated at least forty-five- (45) hours of approved continuing legal education in the field of criminal law.
(2) An Aapplicante seeking certification as both a criminal trial lawyer and a criminal appellate lawyers must, during the three-(3) years immediately preceding application, complete forty-five (45) hours of approved continuing legal education as aforesaid for each category, for a total of ninety- (90) hours.
(d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency., and experience in criminal law, application of constitutional principles, and rules of criminal and appellate procedure to justify the representation of special competence to the legal profession and the public.
RULE 6-8.6 CRIMINAL APPELLATE RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. The applicant shall demonstrate continuous and substantial involvement in the practice of law, of which at least thirfcy-(30) percent must have been spent in active participation in criminal appellate law throughout the period since the filing of the last date of application for certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-8.5(a)(3).
(b) Appellate Action Requirement. The An applicant shall have completed representation of at least ten (10) appellate actions. On good cause shown, for satis *410 faction in part of the teH-(10) appellate actions, the criminal law certification committee may consider involvement in protracted litigation.
(c) Continuing Legal Education Requirement. The applicant shall make a satisfactory showing that he or-she has accumulated show accumulation of at least ■fifty (50) hours of approved continuing legal education during -the- period since the filing of the last application for original certification. An Aapplicants seeking re-certification as both a criminal trial lawyers and criminal appellate lawyers must complete at least fifty-(50) hours of approved continuing legal education in each of the categories, for a total of one hundred (100) hours.
(d) References Required from Lawyers. The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references, to attest to the applicant’s substantial involvement and competence in criminal appellate practice. Such lawyers shall be substantially involved in criminal appellate law and familiar with the applicant’s practice.
(e) References Required from Judges. The applicant shall submit the names and addresses of at least two-(2) judges before whom he-or-she the applicant has appeared on criminal appellate matters within the last two-(2) years, to attest to the applicant’s substantial involvement and competence in criminal appellate practice.
(f) Additional References. The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
6-9. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED REAL ESTATE LAWYER
RULE 6-9.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Real Estate Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of real estate and have the special knowledge, skills, and proficiency to be properly identified to the public as certified real estate lawyers.
RULE 6-9.2 DEFINITIONS
(a) Real Estate. “Real estate” is the practice of law dealing with matters relating to real property transactions including, but not limited to¿ real estate conveyances, title searches, property transfers, leases, condominiums and cooperatives, interval ownership, mortgages, zoning and land use planning, real estate development and financing, real estate litigation, and determination of property rights.
(b) Practice of Law. The “practice of law” for this area is defined as set out at in rule 6-3.5(c)(1). Practice of law which that otherwise satisfies these requirements but which that is on a part-time basis will satisfy the requirements if the balance of the applicant’s activity is spent as a teacher of real estate subjects in an accredited law school.
RULE 6-9.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of filing an application. The years of law practice need not be consecutive.
(b) Substantial Involvement. Every applicant must demonstrate substantial involvement sufficient to show special knowledge, skills,, and proficiency in the practice of real estate law during the three-(3) years immediately preceding the date of application. Substantial involvement is defined as including devoting at least forty (40) percent of one’s practice to matters in which issues of real estate law are significant factors and in which the applicant had substantial and direct participation in those real estate issues. Upon an applicant’s re *411 quest and the recommendation of the real estate certification committee, the board of legal specialization and education may waive the requirement that the three (3) years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. An applicant must furnish information concerning the frequency of his or — her the applicant’s work and the nature of the issues involved. For the purposes of this section subdivision, the “practice of law” shall be as defined in rules 6-3.5(0)(1), and-6-9.2(b) except that it shall also include time devoted to lecturing and/or authoring books or articles on fields of real estate law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the real estate certification committee, but written or oral supplementation may be required.
(c) Peer Review. Every applicant shall submit the names and addresses of five (5) attorneys or judges who are familiar with his or her the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for involvement in the field of real estate law. The board of legal specialization and education and the real estate certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of legal specialization and education and the real estate certification committee may also make such additional inquiries as they deem appropriate.
(d) Education. Every applicant must demonstrate that during the three 3-period immediately preceding the date of filing an application, he or-she the applicant has accumulated accredited continuing legal education in real property law of not less than forty-five (45) hours.
(e) Examination. The applicant must pass a written examination which will be that is practical, objective, and designed to demonstrate special knowledge, skills, and proficiency in real estate law to justify the representation of special competence to the legal profession and the public.
RULE 6-9.4 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a) Substantial Involvement. The applicant must make Aa satisfactory showing, as determined by the board of legal specialization and education and the real estate certification committee, of continuous and substantial involvement in real estate law throughout the period since the last date of certification. The demonstration of substantial involvement of at least forty (40) percent during each year after certification prior to recertification shall be made in accordance with the standards set forth in rule 6-9.3(b).
(b) Continuing Legal Education Requirement. The applicant must show Ccompletion of at least seventy-five (75) hours of accredited continuing legal education in real estate law since the filing of the last date of application for certification.
(c) Reference Requirement. An applicant for recertification shall submit the names and addresses of five (5) attorneys or judges who are familiar with his or her the applicant’s practice, not including lawyers who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for ability of practice and involvement in the field of real estate law. The board of legal specialization and education and the real estate certification committee may also make such additional inquiries as they deem appropriate.
6-10. CONTINUING LEGAL EDUCATION REQUIREMENT RULE
RULE 6-10.1 CONTINUING LEGAL EDUCATION REQUIREMENT
(a) Preamble. It is of primary importance to the public and to the members of The Florida Bar that attorneys continue their legal education throughout the period *412 of their active practice of law. To accomplish that objective, each member of The Florida Bar (hereinafter referred to as “member”) shall meet certain minimum requirements for continuing legal education.
(b) Effective Date, Continuing legal education requirements established by this rule-shall become effective on January 1,-4988,
(eb) Reporting Requirement. Each member except those exempt under rule 6-10.3(c)(4) and (5) shall report compliance with continuing legal education requirements in the manner set forth in the policies adopted for administration of this plan.
(dc) Fees. The board of governors of The Florida Bar may require a reasonable fee to be paid to The Florida Bar in connection with each member’s report concerning compliance with continuing legal education requirements.
(ed) Rules. The board of legal specialization and education of The Florida Bar shall adopt policies necessary to implement continuing legal education requirements subject to the approval of the board of governors.
RULE 6-10.2 ADMINISTRATION
(a) Board of Legal Specialization and Education. The board of legal specialization and education shall administer the continuing legal education requirements as herein provided. Any member affected by an adverse decision of the board of legal specialization and education may appeal as provided in rule 6-10.5.
(b) Delegation of Authority. The board of legal specialization and education may delegate to the staff of The Florida Bar any responsibility set forth herein, except that of granting a waiver or exemption from continuing legal education requirements.
(c) Scope of Board of Legal Specialization and Education Activities. The board of legal specialization and education shall cooperate with and answer inquiries from staff pertaining to continuing legal education requirements and make recommendations to the board of governors concerning continuing legal education requirements, including but not limited to:
(1) Aapproved education courses;
(2) Aapproved alternative education methods;
(3) Nnumber of hours’ credit to be allowed for various education efforts;
(4) Established educational standards for satisfaction and completion of approved courses;
(5) Aadditional areas of education and/or practice approved for credit under continuing legal education requirements;
(6) Mmodification or expansion of continuing legal education requirements;
(7) Aadoption of additional standards or regulations pertaining to continuing legal education requirements;
(8) Aamount of reporting or delinquency fees; and
(9) ©general administration of continuing legal education requirements.
(d)Maintenance of Records. The Florida Bar shall maintain a record of each member's compliance or — noncompliance with continuing legal education requirements.
RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS
(a) Applicability. Every member except those exempt under rule 6-10.3(c)(4) and (5) shall comply and report compliance with the continuing legal education requirement.
(b) Minimum Hourly Continuing Legal Education Requirements. Each member shall complete a minimum of 30 credit hours of approved continuing legal education activity every 3 years. Two of the hours must be in the area of legal ethics.
(c) Exemptions.
(1) Active military service.
(2) Undue hardship.
(3) Nonresident members not delivering legal services or advice on matters or issues governed by Florida law.
*413 (4) Members of the full-time federal judiciary who are prohibited from engaging in the private practice of law.
(5) Justices of the Supreme Court of Florida and judges of the district courts of appeal, circuit courts, and county courts2 and such other judicial officers and employees as may be designated by the Supreme Court of Florida.
(6) Inactive members of The Florida Bar.
(d) Course Approval. Course approval shall be set forth in policies adopted pursuant to this rule. Special policies shall be adopted for courses sponsored by governmental agencies for employee attorneys which that shall exempt such courses from any course approval fee and may exempt such courses from other requirements as determined by the board of legal specialization and education.
(e) Accreditation of Hours. Accreditation shall be as set forth in the policies adopted pursuant to this rule. If a course is presented or sponsored by or has received credit approval from an organized state bar (whether integrated or voluntary), such course shall be deemed an approved course for purposes of this rule.
(f) Full-time Government Employees. Credit hours shall be given full-time government employees for courses presented by governmental agencies. Application for credit approval may be submitted by the full-time government attorney before or after attendance, without charge.
(g) Skills Training Preadmission. The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity. If approved, credit earned through attendance at such course, within 8 months prior to admission to The Florida Bar, shall be applicable under rule 6-10.3(b).
RULE 6-10.4 REPORTING REQUIREMENTS
(a) Reports Required. Each member except those exempt under rule 6 — 10.3(c)(4) and (5) shall file a report showing compliance or noncompliance with the continuing legal education requirement. Such report shall be in the form prescribed by the board of legal specialization and education.
(b) Time For Filing. The report shall be filed with The Florida Bar no later than the last day of such member’s applicable reporting period as set forth in the rules and regulations.
RULE 6-10.5 DELINQUENCY AND APPEAL
(a) Delinquency. If a member fails to complete and report the minimum required continuing legal education hours by the end of the applicable reporting period, the member shall be deemed delinquent in accordance with rule 1-3.6Z of the Rules Regulating The Florida Bar.
(b) Appeal to the Board of Governors. A member deemed delinquent may appeal to the board of governors of The Florida Bar. Appeals to the board of governors shall be governed by the policies promulgated under these rules.
(c) Appeal to the Supreme Court of Florida. A decision of the board of governors may be appealed by the affected member to the Supreme Court of Florida. Appeals to the court shall be governed by the policies promulgated under these rules.
(d) Exhaustion of Remedies. A member must exhaust each of the remedies provided under these rules in the order enumerated before proceeding to the next remedy.
(e) Tolling Time for Compliance. An appeal shall toll the time a member has for showing compliance with continuing legal education requirements.
RULE 6-10.6 REINSTATEMENT
Any member deemed delinquent for failure to meet the continuing legal education requirement may be reinstated by the executive director upon a showing that the noncompliance has been corrected and upon payment to The Florida Bar of a uniform reinstatement fee, as established by the board of governors.
*414 RULE 6-10.7 CONFIDENTIALITY
Unless directed otherwise by the Supreme Court of Florida, the files, records^ and proceedings of the board of legal specialization and education, as they relate to or arise out of any failure of a member to satisfy the continuing legal education requirements, shall be deemed confidential and shall not be disclosed, except in the furtherance of the duties of the board of legal specialization and education or upon request of the member, in writing, or as they may be introduced in the evidence or otherwise produced in proceedings under these rules. Nothing herein shall be construed to prohibit The Florida Bar from advising that a member has been suspended from the active practice of law for failure to meet continuing legal education requirements. ■
RULE 6-10.8 DISCIPLINARY ACTION
The board of legal specialization and education may refer misrepresentation of a material fact concerning compliance with or exemption from continuing legal education requirements for disciplinary proceedings under chapter 3 or chapter 4 of the Rules Regulating The Florida Bar.
6-11. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED WORKERS’ COMPENSATION LAWYER
RULE 6-11.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Workers’ Compensation Lawyer.” The purpose of the standards is to identify those lawyers who practice workers’ compensation law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified workers’ compensation lawyers.
RULE 6-11.2 DEFINITIONS
(a) Workers’ Compensation. “Workers’ compensation” is the practice of law involving the analysis and litigation of problems or controversies arising out of the Florida Workers’ Compensation Law (chapter 440, Florida Statutes).
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(1). Practice of law which that otherwise satisfies these requirementsT but which that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of workers’ compensation law subjects in an accredited law school.
RULE 6-11.3 MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as a workers’ compensation lawyer, a lawyer must demonstrate substantial involvement in workers’ compensation law. Substantial involvement shall include the following:
(1) At least five-(5) years of the actual practice of law of which at least thirty (30) percent has been spent in active participation in workers’ compensation law. At least three (3) years of this practice shall be immediately preceding application or, during those three (3) years, the applicant may have served as a Deputy-Commissioner judge of compensation claims adjudicating workers’ compensation matters.
(2) The trial of a minimum of thirty (30) contested workers’ compensation cases. All such cases must have involved substantial legal or factual issues. In each of these thirty (30) cases the applicant shall have been responsible for all or a majority of the presentation of evidence and representation of the client.
(3) Within the three-(3) years immediately preceding application, the applicant shall have substantial involvement in contested workers’ compensation cases sufficient to demonstrate special competence as a workers’ compensation lawyer. Substantial involvement includes investigation, evaluation, pleadings, discovery, taking of testimony, presentation of evidence and argument, and trial of workers’ compensation *415 cases. Substantial involvement also includes active participation in the appeal of workers’ compensation cases. For good cause shown, the workers’ compensation certification committee may waive up to two 2 of the three 3 years substantial involvement for individuals who have served as Deputy-Commissioners judges of compensation claims adjudicating workers’ compensation matters.
(b) References. The applicant shall select and submit names and addresses of five (5) lawyers, not associates or partners, as references to attest to the applicant’s involvement in workers’ compensation practice. Such lawyers themselves shall be involved in workers’ compensation law and shall be familiar with the applicant’s practice. Except for those who qualify under rule 6-11.4, no less than one 1 shall be a Deputy Commissioner judge of compensation claims before whom the applicant has appeared as an advocate in the trial of a workers’ compensation case in the two (2) years immediately preceding the application. In addition, the workers’ compensation certification committee may, at its option, send reference forms to other attorneys and Deputy Commissioners judges of compensation claims.
(c) Education. The applicant shall make a satisfactory showing that, within the three (3) years immediately preceding application he or she the applicant has accumulated at least forty five (45) hours of approved continuing legal education in the field of workers’ compensation law.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants to demonstrate sufficient knowledge, proficiency, and experience in workers’ compensation law to justify the representation of special competence to the legal profession and to the public.
RULE 6-11.4 DEPUTY COMMISSIONERS JUDGES OF COMPENSATION CLAIMS
An applicant who has served as a Deputy Commissioner judge of compensation claims in at least four (4) of the five (5) years immediately preceding application shall be deemed to have met the requirements of rule 6-11.3(a).
RULE 6-11.5 RECERTIFICATION
To be eligible for recertification, an applicant must meet the following requirements:
(a) Substantial Involvement. The applicant shall demonstrate Ccontinuous and substantial involvement in the practice of law, of which thirty (30) percent has been spent in active participation in workers' compensation law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-11.3(a)(3).
(b) Trial Requirement. The applicant must have completed trial of a minimum of twenty-five (25) contested workers’ compensation cases, or the substantial equivalent, during the period since the last date of certification. All such cases must have involved substantial legal or factual issues.
(c) Reference Requirement. The applicant shall submit references as Completion of the reference requirements set forth in rule 6-11.3(b). The references submitted must be able to attest to the applicant’s practice and involvement in workers’ compensation practice throughout the period since the last date of certification.
(d) Continuing Legal Education Requirement. The applicant shall report Ccompletion of at least seventy-five (75) hours of approved continuing legal education in workers’ compensation law since the filing of the last date of application for certification.
6-12. BASIC SKILLS COURSE REQUIREMENT RULE
RULE 6-12.1 BASIC SKILLS COURSE REQUIREMENT
(a) Preamble. It is of primary importance to the public and to the members of The Florida Bar that attorneys begin their legal careers with a thorough and practical understanding of the law. To accomplish that objective, each member of The Florida *416 Bar (hereinafter referred to as “member”) is required to complete comply with the basic skills course requirement (hereafter BSCR).
(b) Basic Skills Course Requirement. The DSCR shall be completed either 8 months prior to or 12 months following admission to The Florida Bar or expiration of exempt status. Each member shall receive continuing legal education credit for completion of the BSCR which shall be applicable under rule 6-10.3(b), whether taken before or after admission to The Florida Bar.
(be) Applicability. Every member admitted to The Florida Bar after October 1, 1988, except those exempt under rule 6-12.1(d) the date established by the Supreme Court of--Florida shall comply repor-t-con-cerning compliance with the BSCR. and, subject-only to the exemptions contained therein, every such member shall comply with the requirements of BSCR.
(ed) Exemptions. A member of The Florida Bar is exempt from the BSCR if:
(1) the member is on Aactive military service or full time government^employment,;
(2) compliance would create an Uundue hardship,;
(3) the member is a Nnonresident members whose primary office is outside the state of Florida*;
(4) the member has been in prior private practice (non-governmental) in a foreign jurisdiction on a full-time and continuous basis for the 5 years immediately preceding the commencement of the practice of law in Florida, subject to the rules of the entity regulating the foreign practice; has completed 30 hours of continuing legal education during the five-year period; and, provided further, that the prior practice has reasonably prepared the member for the anticipated type of practice in Florida; or
(5) the member is a full-time governmental employee.
(d) Effective - Date. — The basic skills course requirements (hereinafter referred to as-BSCR) established by this rule shall become-effective on October 1, -1-988*
(e) Reporting requirement. — Each member shall report compliance with-BSCR in the manner set for-th in the policies adopted for administration of these rules.
((e) Fees. The board of governors of The Florida Bar may require a reasonable fee to be paid to The Florida Bar in connection with each member’s’ report concerning BSCR compliance.
(gf) Policies. The board of legal specialization and education of The Florida Bar shall adopt policies necessary to implement BSCR, subject to the approval of the board of governors.
RULE 6-12.2 ADMINISTRATION
(a) Responsibility. The board of legal specialization and education shall oversee compliance with the BSCR as herein provided. The young lawyers division (hereafter YLD) of The Florida Bar shall be responsible for the planning, contentz and presentation of the BSCR seminars.
(b) Delegation of Authority. The board of legal specialization and education may delegate to the staff of The Florida Bar any responsibility set forth herein, except that of granting a waiver or exemption from BSCR.
(c) Maintenance of Records. The Florida Bar shall maintain a record of each member’s compliance or — noncompliance with BSCR.
RULE 6-12.3 BASIC SKILLS COURSE STANDARDS
(a) Basic Skills — Course Requirements. Each member as-described in paragraph (a) shall-complete the basic skills course either eight (8) months prior to or twelve (12) months following-his or her admission to The -F-lor-ida Bar or expiration of exempt status* — That member shall receive continuing legal education credit which shall -be applicable under rule 6-10,3(b) whether taken.-before or after admission to-The Florida Bar, — (b) The YLD shall establish *417 minimum quality standards for the BSCR which that shall include instructions on discipline, ethics, and responsibility to the public.
(c) A basic skills or entry level training program developed and presented by-⅛ governmental entity may be eligible to receive CLER credit subject to the approval of the board of legal specialization and education, If approved, credit earned through attend-anee — at such course, — within eight (8) months prior to admission-to The Florida Bar, shall be applicable under rule 6-10,-3(b)
RULE 6-12.4 REPORTING-REQUIREMENTS EXTENSION AND COMPLIANCE
(a) Reports Required. — Each member shall file a report showing-compliance or noncompliance with — BSCR;—Such report shall- be in the form prescribed by the board of legal specialization and education,Extended Time for Compliance. If a member fails to complete the required basic skills course by the end of the applicable reporting period, the member may request an extension of 180 days or the member shall establish eligibility for an exemption under rule 6-12.1(d). Any request for extension shall be deemed approved unless, within 30 days after receipt, the board of legal specialization and education notifies the member that the request has not been approved.
(b) Time -for Filing. The-rcport shall be filed with The Florida Bar no later than the expiration of-the twelve month period following that-member’s admission.to- The Florida Bar or the end of-exempt status, Compliance. Completion of the BSCR, after an approved extension, shall be reported by the member to the board of legal specialization and education no later than 15 days following the expiration of the extension.
RULE 6-12.5 NONCOMPLIANCE AND SANCTIONS
(a) Extended Time for Compliance. — If a member fails to-complete-the minimum required basic skills course by the end of the applicable reporting-period, the report of noncompliance shall-be accompanied-by a specific plan for completing the necessary hours within one-hundred eighty (180) days of the reporting date or-the member shall establish eligibility for an exemption under rule 6-12.3(d).
Any-specific-plan-shall be deemed approved by the board of-legal specialization and education unless, within thirty (30) days after receipt of the report, the board of legal- specialization -and education notifies the member that the plan has not been approved.
Completion of a specific plan shall be reported- by the- member to.fee- board-of legal specialization and-education no -later than fifteen (15) days following-the expirar tion of the applicable time for-the plan, Failure of the member to complete the plan within-the specified time or to report within the time- set forth for-reporting-such-completion shall invoke the-sanctions set-forth below,
(ha) Notice of Noncompliance. If a member fails to comply with these rules this chapter in any respect, the board of legal specialization and education shall promptly send a notice of noncompliance to such member. The notice shall specify the nature of the noncompliance and state that, if the member is unable to show evidence of compliance, and fails to request an extension or exemption, or requests an extension and the extension expires, a specific plan is--not submitted- or if a hearing to establish an-exemption or show reasonable cause for noncompliance is not requested, the member's-name shall be filed with the Supreme Court of Florida shall be deemed delinquent in accordance with rule 1-3.6, Rules Regulating The Florida Bar. The Florida Bar shall recommend that all members on-such-list be -tr-eated-in-the-same manner as members delinquent-in the-payment of- dues-. — Nothing- contained in this paragraph shall-be construed to-extend-fehe periods of time-for completing-a specific plan as-set for-th in paragraph (a) of this rule.
*418 (eh) Hearing on Notice of Noncompliance. If a hearing is requested, such request and hearing shall be governed by section 12.06-of the policies adopted pursuant to this rule. The party requesting the hearing may be represented by counsel. Witnesses shall-be sworn-,-and, if requested by the-affected member, a complete elee-tronic record or transcript of the proceedings and testimony shall-be made, at the expense of the affected member. If it is determined that compliance has been established accomplished, the matter shall be dismissed and the board of legal specialization and education’s records shall reflect such compliance so indicate.
(d) Procedures — Upon—Noncompliance After Hearing. If it is determined after hearing that compliance has not been accomplished established, the board of legal specialization and education shall; — (1)—I-f reasonable cause for noncompliance has been determined, for reasonable cause, allow the member an extension of 180 days in which to comply requesting a hearing fifteen (15) days to file a specific plan for correcting the-noncompliance. Such specific plan shall require compliance within one hundred eighty- (180) days -following the filing-of- the specific plan. — Unless the board of legal-specialization and education rejects the specific plan-within thirty (30) days after its filing) the specific-plan shall be deemed accepted. Evidence of completion of the plan BSCR shall be reported to the board of legal specialization and education not later than fifteen -(15) days following the expiration of the time period for such specific plan extension. If the member fails to file an acceptable specific plan or fails to complete the plan within the time provided or fails to file evidence-of completion of the -plan BCSR within the time provided, the board of legal specialization and education shall proceed as though there was no reasonable cause for noncompliance}. (2) Upon a finding by the board of legal specialization and education of no reasonable cause for noncompliance, the member shall be deemed delinquent in accordance with rule 1-3.6, Rules Regulating The Florida Bar. file a record of the matter, including a copy of the findings-and determination and recommendation of the board of legal-specialization and education with the Supreme Court of Florida. Notice of the findings of-the board of legal specialization and education shall be served on the affected member of the Bar; and
(3) Upon filing of a notice of confirmation of noncompliance- or of the-reeord of a board of legal specialization and education hearing determining noncompliance, the Supreme Court of — Florida shall enter an order as it deems appropriate, which-may include suspensiom
(ec) Appeal to the Board of Governors. A decision of the board of legal specialization and education may be appealed to the board of governors of The Florida Bar. Appeals to the board of governors shall be governed by the policies promulgated under these rules.
(#d) Appeal to the Supreme Court of Florida. A decision of the board of governors may be appealed by the affected member to the Supreme Court of Florida. Appeals to the Ccourt shall be governed by the policies promulgated under these rules.
(ge) Exhaustion of Remedies. A member must exhaust each of the remedies provided under these rules in the order enumerated before proceeding to the next remedy.
(hf) Tolling Time for Compliance. An appeal shall toll the time a member has for showing compliance with BSCR.
RULE 6-12.6 REINSTATEMENT
Any member suspended from the practice-of law deemed delinquent for failure to meet BSCR may be reinstated by the Court executive director or board of governors upon a showing that the noncompliance has been corrected and upon payment to the board of legal specialization and education of a uniform reinstatement fee, as established by the board of governors.
RULE 6-12.7 CONFIDENTIALITY
Unless directed otherwise by the Supreme Court of Florida the files, records, and proceedings of the board of legal spe *419 cialization and education, as- they relate to or arise out of any failure of a member to satisfy the requirements of BSCR) shall be deemed confidential and shall not be disclosed) except in the furtherance of the duties of the board of legal specialization and education or upon request of the-mem-berr-in writing, or as they -may be-introduced in the evidence or-otherwise produced in proceedings under these rules.
Nothing herein shall be construed-to prohibit-The Florida Bar from disclosing that a member has been suspended from the active practice of law for failure to satisfy BSCR,
The files and records maintained and any hearings conducted pursuant to this rule shall be confidential until such time as delinquency or compliance with the BSCR is established, whichever shall occur first. If a member is deemed delinquent pursuant to this rule, that fact shall be public information.
RULE 6-12.8 DISCIPLINARY ACTION
The board of legal specialization and education may refer a member who makes a misrepresentation of a material fact concerning compliance with or exemption from BSCR for disciplinary proceedings under chapters 3 and 4, Rules Regulating The Florida Bar.
CHAPTER 7. CLIENTS’ SECURITY FUND RULES
7-1. IN-GENERAL GENERALLY
RULE 7-1.1 GENERALLY
The board of governors may provide monetary relief to persons who suffer reimbursable losses as a result of misappropriation, embezzlement or other wrongful taking or conversion by a member of The Florida Bar of money or other property that comes into the possession or control of the member of The Florida Bar.
RULE 7-1.2 FUND ESTABLISHED
Pursuant to the authority granted by rule 1-8.4 of these Rules Regulating The Florida Bar, the board of governors hereby establishes a separate fund designated “Clients’ Security Fund of The Florida Bar.”
RULE 7-1.3 ADMINISTRATION
The fund shall be administered in accordance with regulations adopted by the board of governors following procedures as set forth in rule 1-11.
RULE 7-1.4 DEFINITIONS
For this rule the following terms shall have the following meanings:
(a) Applicant. “Applicant” means a person or persons or any legal entity that has filed an application with The Florida Bar for a grant of monetary relief from the fund based on a claim that he, she or it the person or entity has suffered a reimbursable loss.
(b) The Bar. “The bar” means The Florida Bar.
(c) The Board. “The board” means the board of governors of The Florida Bar.
(d) The Committee. The “committee” means the “Clients’ Security Fund Committee,” a standing committee of the bar.
(e) The Fund. “The fund” means the Clients’ Security Fund of The Florida Bar.
(f) Reimbursable Loss. "Reimbursable loss” means a loss suffered by an applicant by reason of misappropriation, embezzlement or other wrongful taking or conversion of money or other property by a member of The Florida Bar when acting: (1) acting as a lawyer; or (2) acting in a fiduciary capacity customary to the practice of law, i.e., a personal representative, trustee of an express trust, or guardian; or (3) acting as an escrow holder or other fiduciary having been designated as such by a client in the matter in which the loss arose or having been so appointed or selected as the result of an attorney and client relationship; provided, however, that such a relationship was not for a wrongful purpose and the applicant was not guilty of any bad faith in putting the money or other property in possession or control of the attorney.
*420 7-2. COMMITTEE
RULE 7-2.1 COMMITTEE’S DUTIES
(a) Duties Assigned by Board. The committee shall have such duties in the administration of the fund as shall from time to time be prescribed by the board.
(b) Adoption of Regulations. The committee may adopt additional regulations for the efficient administration of the fund as approved by the board.
RULE 7-2.2 INVESTIGATIONS
(a) Investigation Required. The committee shall investigate every application for relief which that appears to meet the requirements of this chapter.
(b) Payment of Meritorious Claims. The board may approve for payment from the fund such claims as are found, after investigation, to be meritorious and in accordance with the Clients’ Security Fund Rules.
(c) Form for Applications. Applications for monetary relief shall be submitted on forms prescribed by the board.
RULE 7-2.3 PAYMENTS
(a) Payment is Discretionary. If, in the judgment of the board, a reimbursable loss has been sustained by an applicant and the circumstances warrant relief, then, after taking into consideration the resources of the fund and the priority to be assigned to such application in the discretion of the board, the board may, in the exercise of its discretion, as a matter of grace and not of right, grant monetary relief.
(b) Determination of Amount and Manner of Payment. Such monetary relief shall be in such an amount as the board may determine and shall be payable in such a manner and upon such conditions and terms as the board shall prescribe.
(c) No Right to Payment. No applicant shall have any right, legal or equitable, contractual or statutory, to a grant of monetary relief from the fund.
(d) Barred Losses. The board shall not grant any application for monetary relief unless it shall be based upon a loss sustained after December 31, 1966.
RULE 7.2-4 PREREQUISITES TO PAYMENT
(a) Members in Good Standing. Payments from the fund will not ordinarily be made while the lawyer guilty of the misappropriation remains a member in good standing of The Florida Bar.
(b) Complaints Required. The filing of a grievance complaint with The Florida Bar against the attorney claimed against may be required as a prerequisite to the consideration of a ^clients’ ¡^security Ffund claim.
RULE 7-2.5 ASSIGNMENT IN FAVOR OF BAR
(a) Assignment as Prerequisite for Payment. As a condition precedent to the grant of monetary relief, the applicant shall make an assignment in favor of the bar of the subrogation rights or of the judgment or decree (or the unsatisfied portion thereof) obtained by the applicant against the offending member or members of the bar, and the bar shall be entitled to be reimbursed to the extent of the amount of the relief granted with respect to such claim from the first moneys recovered by reason of such subrogation or assignment.
(b) Priority of Reimbursement to Bar. Ordinarily, as a matter of policy, however, in cases where the relief granted shall have been for less than the full amount which that would have been allowable except for considerations of allocating available resources of the fund or other reasons related to the administration of the fund, the bar shall not be reimbursed for the amount of the relief granted with respect to such claim until and unless the last moneys shall be recovered by reason of such subrogation or assignment.
(c) Reassignment of Claim to Applicant. The bar shall have the right but shall be under no obligation to any applicant to seek recovery from the offending lawyer or lawyers of all or any portion of such applicant’s claim; and if the bar elects not to pursue recovery, an applicant shall *421 be entitled to receive from the bar, as the owner of the claimT or judgment or decree, a reassignment thereof sufficient to permit his the applicant’s collection thereof in his the applicant’s own name, provided that such reassignment shall reserve in favor of the bar a lien upon the proceeds of any recovery to the extent of the relief paid to the applicant from the fund. In the event of such reassignment, the claimant applicant shall keep the bar fully informed of all his tiie applicant’s efforts to obtain recovery.
(d) Recoveries. Recoveries or repayments to the bar on account of payments from the fund will be restored to the fund.
7-3. FUNDS
RULE 7-3.1 FUNDING
The board of governors shall provide for the funds necessary for such relief.
RULE 7-3.2 DUES ALLOCATION
The board shall allocate from the annual dues of the members of The Florida Bar not more than $15 per member per annum for this purpose.
RULE 7-3.3 GIFTS
The board is authorized to accept for the fund any contribution or gift offered to it for use in furtherance of the purposes of the fund.
7-4. AMENDMENTS
RULE 7-4.1 GENERALLY
The Cclients’ Ssecurity Ffund Rrules may be amended in accordance with rule 1-12.1.
CHAPTER 8. LAWYER REFERRAL RULE
8-1. GENERALLY
RULE 8-1.1 STATEMENT OF POLICY AND PURPOSES
Every citizen of the state should have access to the legal system. A person’s access to the legal system is enhanced by the assistance of a qualified lawyer. Citizens often encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. To this end bona fide not-for-profit state and local bar associations are uniquely qualified to provide lawyer referral services under supervision by The Florida Bar for the benefit of the public. It is the policy of The Florida Bar to support the establishment of local lawyer referral services and to encourage those services to: (a) make legal services readily available to the general public through a referral method which that considers the client’s financial circumstances, spoken language, geographical convenience, and the type and complexity of the client’s legal problem; (b) provide information about lawyers and the availability of legal services that will aid in the selection of a lawyers; (c) inform the public when and where to seek legal services and provide an initial determination of whether those services are necessary or advisable; and (d) provide referral to consumer, government, and other agencies when the individual’s best interests so dictate.
8-2. REQUIREMENTS
RULE 8-2.1 REQUIREMENTS FOR ESTABLISHING A LAWYER REFERRAL SERVICE SPONSORED BY A LOCAL BAR ASSOCIATION
The board of governors of The Florida Bar may adopt such regulations as it deems desirable governing the establishment, operation and termination of lawyer referral services operated by a local bar association.
No local bar association shall operate a lawyer referral service except upon application to and approval by the board of governors of The Florida Bar. No lawyer referral service shall be approved by The Florida Bar unless such lawyer referral service is offered primarily for the benefit of the public and unless such lawyer referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), *422 or 501(c)(6) of the Internal Revenue Code of 195486-
RULE 8-2.2 CONTENTS OF APPLICATION
An application by a local bar association to the board of governors of The Florida Bar for authority to operate a lawyer referral service shall be in writing and shall be filed with the executive director. Such application shall contain the following:
(a) Statement of Benefits. A statement of the benefits to the public to be achieved by the implementation of the lawyer referral service.
(b) Proof of Nonprofit Status. Proof that the referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 195486.
(c) Submission and Content of Bylaws. The proposed bylaws or rules and regulations which that will govern the lawyer referral service. The proposed bylaws shall include the following regulations:
(1) All members of the proposed referral service shall provide proof of professional liability insurance in the minimum amount of $100,000 unless the proposed lawyer referral service itself carries professional liability insurance in an amount not less than $100,000 per claim or occurrence.
(2) The proposed lawyer referral service shall accept membership applications only from attorneys who maintain an office in the geographic area served by the proposed lawyer referral service.
(3) The proposed lawyer referral service shall require a waiver of confidentiality for each member limited to£ and for the sole purpose of¿ enabling The Florida Bar to inform the service of the lawyer’s grievance history and the status of each complaint against the lawyer in which there has been a finding of probable cause.
(4) The proposed lawyer referral service shall agree to maintain an alphabetical member list, updated quarterly, with The Florida Bar. In turn, The Florida Bar shall notify the service of any unresolved finding of probable cause against a member. When probable cause has been found at the local grievance committee level, and the lawyer referral service has been notified, such service shall be required to hold referral to the member in question until the matter is resolved. If the member is in good standing with The Florida Bar after the resolution of the matter, then he -or-she the member may be returned to the service.
(d) Estimated Number of Panel Members. The estimated number of lawyers who will participate in the service.
(e) Number of Local Lawyers. The number of lawyers in the area.
(f) Statement of Need. A statement of the condition that evidences a need for such service in the area.
(g) Geographic Operational Area. The geographic area in which the proposed referral service will operate.
(h) Statement of Operation. A statement of how the lawyer referral service will be conducted.
(i) Statement of Fees. A statement of fees to be charged by the lawyer referral service, including, but not limited to, fees charged by the referral service to members of the public using such service and fees charged by the referral service or remitted to the referral service by member attorneys.
(j) Statement of No Discrimination. A statement that such lawyer referral service will be open for referral to the members of the public without regard to race, sex, national origin, or economic status.
(k) Statement of No Discrimination in Local Bar Membership. A statement that the local bar association is representative of the profession in the area of the service and is open to all members of the profession on an equal basis.
RULE 8-2.3 APPROVAL OF APPLICATION
The board of governors may approve or disapprove the application to operate a lawyer referral service or it may call for addi *423 tional information upon which to base its decision. No lawyer referral service shall be commenced by or on behalf of a local bar association until approval thereof has been communicated in writing from the board of governors of The Florida Bar.
8-3. SUPERVISION
RULE 8-3.1 SUPERVISION AND REPORTING REQUIREMENTS
Any lawyer referral service approved by The Florida Bar and operated by a local bar association shall submit three (3) quarterly reports and an annual report to The Florida Bar. which The reports may be on forms approved by The Florida Bar. — Such-reports shall contain information concerning the ■ operation of the lawyer referral service, including but not-limited to the follow-⅜
(a) Aa statement of the sources of income by category and amount;
(b) Aa statement of expenditures by category and amount;
(c) Tthe number of attorneys who were members of the lawyer referral service for the reporting period and special panels, if any;
(d) Tthe number of inquiries received by the referral service from members of the public during the reporting period;
(e) Tthe number of referrals for legal services made by the service during the reporting period;
(f) Tthe number of referrals for nonlegal services made by the service during the reporting period;
(g) Aa statement of the operation of the lawyer referral service, including the number of personnel employed and the means by which referrals are made by the service; and
(h) Aa statement of changes, if any, to the bylaws and regulations governing the lawyer referral service.
The annual report shall also contain a proposed budget for the next year and a statement of any material changes in the operation of the lawyer referral service since the filing of the initial application under rule 8-2.2 above.
The Florida Bar shall actively supervise the operation and conduct of all lawyer referral services established under this chapter and may require such other information as it deems necessary to determine the benefits of such service to the public and the achievement of the policies stated herein. The Florida Bar shall not make any charge to the local bar association or its lawyer referral service for such supervision.
8-4. REVOCATION
RULE 8-4.1 REVOCATION
Upon good cause shown, the board of governors may revoke the authority of any bar association to operate a lawyer referral service.
CHAPTER 9. GROUP AND PREPAID LEGAL SERVICES RULES
9-1. GENERALLY
RULE 9-1.1 AUTHORITY
Pursuant to the authority granted by rule bylaw 2-3.2(c) the board of governors establishes the following rules.
RULE 9-1.2 DEFINITIONS
(a) “Group Legal Services.” Group legal services are A plans, programs, or insurance intended to cover two (2) or more persons, which assists a participant in obtaining a lawyer and pursuant to under which legal fees for services rendered to the participant a member of The Florida Bar-is are paid by the plan, the sponsor, and/or the participant, in whole or in party legal fees for-services rendered to the-participant.
(b) “Prepaid Legal Services.” Prepaid legal services are A legal service plans that contains the assumption of a contractual obligation to provide specified legal services, or to reimburse for specified legal expense in consideration of a specified payment in advance for an interval of time, *424 regardless of whether the payment is made by the beneficiary individually or by a third person, whether or-not the legal services are provided by a lawyer or lawyers contractually obligated, prior to the need for the services, to provide them under the contract.
(c) “Participant.” A participant is a person eligible to receive legal services under a legal services planT or program^ or under legal services insurance.
(d) “Sponsor.” A sponsor is Aany individual, union, association, corporation or entity that operates a legal services plan.
(e) “Committee.” The committee is the Pgrepaid legal services committee of The Florida Bar.
RULE 9-1.3 APPROVAL BY BOARD OF GOVERNORS
Legal services plans that are sponsored by a church, cooperative, educational institution, credit union, or “employees” organization or any other entity that contracts directly with a lawyer or lawyers or with a law firm for the provision of legal services to its members and the administration and marketing of such legal services is wholly conducted by the organization or any other plan that is not subject to the jurisdiction of the Bdepartment of linsurance must be approved by the board of governors of The Florida Bar prior to the commencement of operations.
RULE 9-1.4 TIME
The approval of The Florida Bar shall be for a period of ese 1 year, with annual renewals.
9-2. REQUIREMENTS
RULE 9-2.1 REQUIREMENTS OF ATTORNEYS
A lawyer providing services in connection with a plan of group or prepaid legal services shall:
(a)Ccomply with the requirements of the Rules of Professional Conduct and the requirements of this chapter;
(b) Ccarry professional liability insurance in an amount not less than $100,000; and
(c) Wwaive confidentiality in grievance matters in favor of the board, the prepaid legal services committee;, and the plan sponsor.
RULE 9-2.2 LEGAL SERVICES PLAN
(a) Requirements For Application. A legal services plan submitted pursuant to the rule regulating group and prepaid legal services shall be submitted in accordance with requirements and procedures set forth by the committee.
(b) Contents of Application. The documents to be submitted shall include:
(1) Aan application for approval of the plan;
(2) Tthe legal services plan description;
(3) Tthe attorney agreement;
(4) Aan estimated budget;
(5) Aany agreements under which money is to be paid to any person, firn^ or organization from money paid by the plan participants or sponsor; and
(6) Aany other documents specified by the committee.
RULE 9-2.3 APPLICATION
(a) Form and Content of Application. The application shall be in a form designated by the committee and shall include assurances that the managing attorney shall:
(1) Eexercise every effort to determine that the plan is operated in an ethical manner and that no activities, acts1 or practices take place that would constitute a breach of the Rules of Professional Conduct as promulgated by the Supreme Court of Florida;
(2) Ttake appropriate steps to assure that there are a sufficient number of attorneys to adequately represent the plan participants;
(3) Ssubmit any material changes in the plan to The Florida Bar for approval;
*425 (4) Nnotify The Florida Bar immediately should the plan terminate or the plan’s attorneys change;
(5) Ssubmit an annual report to The Florida Bar each January fifteenth 15 of each year;
(6) Ssubmit a request for renewal each year thirty (30) days prior to expiration of the plan’s renewal date;
(7) Wwaive confidentiality of grievance proceedings in favor of the prepaid legal services committee, the board of governors, and the group/plan sponsor;
(8) Pprovide proof of professional liability insurance at no less than $100,000; and
(9) ©obtain waivers of confidentiality of grievance proceedings in favor of the prepaid legal services committee, the board of governors, and the group/plan sponsor and proof of professional liability insurance at no less than $100,000 from each attorney providing legal services in accordance with the plan.
(b) Description of Legal Services Plan. The legal services plan description shall include:
(1) Aa description of who is eligible to participate in the plan;
(2) Aa description of the legal services to be provided;
(3) Tthe costs of the legal services under the plan;
(4) Eexcluded legal services;
(5) Aa statement of any geographical limitations on services;
(6) Tthe method of review and resolution of disputes and grievances arising under the plan or attorney agreement;
(7) Aa plan termination procedure including method of termination by group/plan sponsor, attorneys, and plan participant;
(8) Aan affirmative statement that the plan participant is the client and the group/ plan sponsor will have no influence over the attorney-client relationship;
(9) Aan affirmative statement informing plan participants that they are free to use a nonplan panel attorney (at their own expense or with reimbursement by the group/plan sponsor as the case may be);
(10) Aa statement informing plan participants that they may file a complaint with Staff Counsel, The Florida Bar, 650 Apala-chee Parkway, Tallahassee, Florida 32301-8226 32399-2300;
(11) Srecommended acknowledgments;
(12) Aa disclaimer announcement: “The Florida Bar does not guarantee in any way the success of the plan and gives no assurances of the quantity or quality of legal services to be provided. Total responsibility for the delivery of services rests with the plan’s sponsor and the attorneys in their individual attorney-client relationship”; and
(13) Ssuch other requirements that the committee determines to be necessary.
RULE 9-2.4 ATTORNEY AGREEMENT
(a) Contents of Agreement. The attorney agreement shall include:
(1) Tthe method of payment to plan panel attorneys;
(2) Aan affirmative statement that the attorney will complete work undertaken to the extent of benefits provided under the plan even if the plan is terminated;
(3) Aassurance that records of plan participants will be maintained separate from records of other clients; and
(4) Aassurance that records will be maintained on time expended/types of services provided, services provided that exceed the benefits under the plan or are not covered by the plan.
(b) Proof of Liability Coverage. Each plan attorney shall present proof of professional liability coverage annually in a manner specified by the committee.
9-3. LIMITATION ON PRACTICE
RULE 9-3.1 GENERALLY
Nothing in this chapter shall be construed as authorizing any limitation on the method of legal practice not otherwise required of all lawyers.
*426 9-4. AMENDMENTS
RULE 9-4.1 GENERALLY
Rules governing group and prepaid legal services may be amended in accordance with rule 1-12.1.
CHAPTER 10. RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW
10-1. JURISDICTION PREAMBLE
. RULE 10-1.1 GENERALLY JURISDICTION
4a> Pursuant to the provisions of article V, section 15, of the Florida Constitution, the Supreme Court of Florida has inherent jurisdiction to prohibit the unlicensed practice of law. All references-to “the-Gourt” shall mean the-Suprema Court of Florida,
(b) Definition of UPL. — The unlicensed practice of law, as prohibited by-statute, court rule, and case law.of the State of Florida. — For purposes of this chapter, it shall not constitute the unlicensed-practice of law for nonlawyers to engage in limited oral communications to assist a-person in the completion of a legal form approved by the Supreme Court of Florida, — Oral communications by nonlawyers- are restricted to those communications reasonably-necessary to-elicit factual information to complete the form and inform-the per-soa how to file the form.
The following language-shall appear on any form completed pursuant to this- rule;
This form was completed with the assistance of:
Name
Address
Telephone Number
Before a nonlawyer assists a-person in the completion of-a form in the manner set forth-in-this rule, -the nonlawyer-shall provide the-person-with a copy-of a disclosure. A copy of the-di&closure, signed by- both the nonlawyer and the person, shall be given to-the person to retain and-the non-lawyer -shall keep a copy-in the-person’s file, — The disclosure does not act-as or-constitute- a waiver, disclaimer, or limitar tion of liability, — The disclosure shall-contain the following provisions:
(Name)-told me-that-he/she is not a lawyer and may not give legal adviee or represent-me in-eourt.
(Name)-told me that he/she may only help me fill out-a form approved by the Supreme Court of Florida-. — (Name)-may only help me by asking me questions to fill in the form, — (Name) may-also tell-me-how-to file the form,
(Name)-told me that he/she is not an attorney-and cannot tell me-what my-rights or remedies are or how to testify in-eourt
T can read English
T cannot read English hut this notice was read to-me by-(Name) in (Language),
RULE 10-1.2 DUTY OF THE FLORIDA BAR
4«) The Florida Bar, as an official arm of the Ccourt, is charged with the duty of considering, investigating, and seeking the prohibition of matters pertaining to the unlicensed practice of law and the prosecution of alleged offenders. The Ccourt shall establish a standing committee on the unlicensed practice of law and at least one 1 circuit committee on unlicensed practice of law in each judicial circuit.
(d) The-standing-committee shall be appointed by the Court on advice of the board of governors of The Florida Bar and shall consist of at least fifteen (15)- members, not less than-five (5)-of-whom- shall be nonlaw-yens, — It-shall be the duty of the standing committee- to receive and evaluate circuit committee reports — and make its findings and recommendations to the board of governors, — The board-of governors shall act upon said reports, findings-and recommendations--and determine whether or not litigation should be instituted in the court against any alleged offender, — The board of governors may approve civil injunctive proceedings, referr-al to the appropriate state attorney for-indirect criminal con *427 tempt prosecution, or such other action as may be appropriate.
(e) All appointments to the standing committee shall be for a term of three (3) years, — No member shall be appointed to more than two (2) consecutive full-terms.The members of the standing committee shall not be subject to- removal by the Court during their terms of office, except for cause. — Cause shall-include unexcused failures to attend scheduled meetings) the number- of which shall be set forth-by the standing committee in an attendance-policy-.-
10-2. CIRCUIT-COMMITTEES DEFINITIONS
RULE 10-2.1 GENERALLY
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Each circuit committee shalb-be appointed by the Court on advice of the board of governors and-shall-consist of not fewer than-three (3) members, -at least-one of whom shall be a-nonlawyer. A majority of a circuit committee shall constitute a quorum. The terms of the members of-circuit committees shall begin on the first day of July and shall end on the next succeeding thirtieth day of June or at such time as their successors-are appointed -and- qualified, — The expiration of the term of any member shall not disqualify such member from concluding-any investigations pending before-him or — her.—Any member of a circuit-committee may be removed from office by the -board-of governors. Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the State of Florida. For purposes of this chapter, it shall not constitute the unlicensed practice of law for nonlawyers to engage in limited oral communications to assist a person in the completion of a legal form approved by the Supreme Court of Florida. Oral communications by nonlaw-yers are restricted to those communications reasonably necessary to elicit factual information to complete the form and inform the person how to file the form.
The following language shall appear on any form completed pursuant to this rule:
This form was completed with the assistance of:
Name
Address
Telephone Number
Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the non-lawyer shall keep a copy in the person’s file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall contain the following provisions:
(Name) told me that he/she is not a lawyer and may not give legal advice or represent me in court.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. (Name) may only help me by asking me questions to fill in the form. (Name) may also tell me how to file the form.
(Name) told me that he/she is not an attorney and cannot tell me what my rights or remedies are or how to testify in court.
_I can read English
_ I cannot read English but this notice was read to me by (Name) in (Language).
(b) For each — circuit committee there shall be a chairman designated — by- the board of■governors and a vice chairman and secretary designated by the chairman of each circuit committee. — The chairman shall be a member of The Florida^- Bar-r Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, attorneys admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred attor *428 neys, and suspended attorneys during the period of suspension.
(c) It shall-be the duty of each-circuit committee to investigator with dispatch, all reports of-unlicensed practice of law and to make prompt-written report of its investigation-and findings to the standing committee. This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(d) Bar Counsel. Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any unlicensed practice of law staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(e) Respondent. A respondent is a non-lawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.
(f) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(g) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(h) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(i) UPL Staff Counsel. UPL staff counsel is an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director. When used in this rule, the term may include assistant UPL staff counsel.
Ci) UPL. UPL is the unlicensed practice of law.
(k) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.
10-3. STANDING COMMITTEE
RULE 10-3.1 GENERALLY
The standing committee shall be appointed by the court on advice of the board of governors of The Florida Bar and shall consist of at least 15 members, not less than 5 of whom shall be nonlawyers. The board of governors is delegated the authority to appoint a chairman and vice-chairman of the standing committee, both of whom shall be members of The Florida Bar. A majority of the members of the standing committee shall constitute a quorum.
AH appointments to the standing committee shall be for a term of 3 years. No member shall be appointed to more than 2 consecutive full terms. The members of the standing committee shall not be subject to removal by the court during their terms of office except for cause. Cause shall include unexcused failures to attend scheduled meetings, the number of which shall be set forth by the standing committee in an attendance policy.
RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
It shall be the duty of the standing committee to receive and evaluate circuit committee reports and make its findings and recommendations to the board of governors. The board of governors shall act upon these reports, findings, and recommendations and determine whether litigation should be instituted in the court against any alleged offender. The board of governors may approve civil injunctive proceedings, referral to the appropriate state attorney for indirect criminal contempt prosecution, or such other action as may be appropriate. In addition, Tthe duties of the standing committee shall include, but not be limited to, the following:
(a) Tthe consideration and investigation of activities which that may, or do, constitute the unlicensed practice of law;
(b) Tthe supervision of the several circuit committees, which shall include, but not be limited to:
(1) ^prescribing rules of procedure for circuit committees;
(2) Aassigning reports of unlicensed practice of law for investigation;
(3) ^reassigning or withdrawing matters previously assigned and exercising final au *429 thority to close cases not deemed by the standing committee to then warrant litigar tien further action by The Florida Bar for unlicensed practice of law and to close cases proposed to be resolved by cease and desist affidavit;
(4) Jjoining with a circuit committee in a particular investigation;
(5) Aassigning staff investigators, UPL staff counsel and voluntary bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and
(6) Ssuspending circuit committee members and ehairsmen for cause and appointing a temporary circuit committee chairman where there has been a suspension, resignation or removal, pending the appointment of a permanent chairman by the board of governors^
(c) Tthe reporting of recommendations to the board of governors that litigation should be instituted in order to prevent the unlicensed practice of law;
(d) Tthe initiation and supervision of litigation authorized by the board of governor including the delegation of responsibility to UPL staff counsel, assistant UPL staff counsel or bar counsel to prosecute such litigation;
(e) Tthe giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and
(f) Ffurnishing any and all information, confidential recordSj and files regarding pending or closed investigations of unlicensed practice of law to any state or federal law enforcement or regulatory agency, United States Attorney, state attorney, the Florida Board of Bar Examiners and equivalent entities in other .jurisdictions, and Florida Bbar grievance committees and equivalent entities in other jurisdictions where there is or may be a violation of state or federal law or the Rules of Professional Conduct of The Florida Bar.
RULE 10-3.3 APPOINTMENT OF STAFF COUNSEL AND BAR COUNSEL
The board of governors shall employ 1 or more assistant staff counsel and other necessary employees, including investigators, to assist the standing committee to carry out its responsibilities as prescribed elsewhere in these rules. Upon approving a recommendation for litigation under these rules, the board of governors shall appoint bar counsel to prosecute the cause before the referee.
10-4. INVESTIGATIONS CIRCUIT COMMITTEES
RULE 10-4.1 POWERS,-DUTIES GENERALLY
(a) Upon receiving a written application of the chairman of the standing committee or of a -circuit committee alleging facts indicating-that a-person or entity is or may be practicing law without a license and that the issuance of a subpoena-is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is4ocated or the clerk of the Supreme Court of Florida shall issue-subpoenas in the name, respectively) of the chief judge of the -circuit or- the chief justice for the attendance of any person and production of books and records before designated counsel or the investigating circuit committee or any-member thereof designated in-such application at the time-and place within its circuit designated by the investigating circuit committee, — Such subpoenas shall be-returnable to the circuit court of the residence or place of business of the person subpoenaed. — A like subpoena shall issue upon application by any person or entity under investigatiom Appointment. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. A majority of the members of a circuit committee shall constitute a quorum. The terms of the members of circuit committees shall begin on July 1 and shall end on the next succeeding June 30 or at such time as their *430 successors are appointed and qualified. The expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Failure to comply with any subpoena shall constitute a contempt of court and may be-punished by the Supreme Court of Florida or by the circuit court of the circuit to -which the subpoena is returnable or where the contemnor may be found. — The circuit-court to which the subpoena is returnable shall have power to enter such orders-as may be necessary for the enforcement of the subpoena, Committee Chair. For each circuit committee there shall be a chair designated by the board of governors and a vice-chair and secretary designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Each circuit-Gommittee and-member thereof- conducting -investigations- is empowered to take and-have transcribed the testimony and evidence of- witnesses who may-be- sworn by any person authorized by law to administer-oaths. Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its investigation and findings to UPL staff counsel and the standing committee.
(d) The board of governors shall- employ one or more assistant staff counsel and other-necessary employees including investigators to assist the standing committee to carry out its responsibilities as prescribed herein-
10-5. CI¥IL-INJUNCTIONS COMPLAINT PROCESSING AND INITIAL INVESTIGATORY PROCEDURES
RULE 10-5.1 PROCEEDINGS GENERALLY COMPLAINT PROCESSING
(a) Complaints-shall be by petition filed in the Supreme Court of Florida-by The Florida Bar in its- name, Complaints. All complaints alleging unlicensed practice of law, except those initiated by The Florida Bar, shall be in writing and signed by the complainant. The complaint shall contain a statement providing that:
Under penalties of perjury, I declare that I have read the foregoing document and that to the best of my knowledge and belief the facts stated in it are true.
(b) Each such petition shall-be processed in-the-Supreme-Court of Florida in accordance with the following procedure;
(1) The petition shall not be framed -in technical language, but shall with reasonable clarity set forth the facts constituting the unlicensed-practice of law. — A prayer for-relief may be included in-the petition but- shall not be required,
(2) The Court, upon consideration of any petition so filed,- may issue its order to show cause directed to the-respondent commanding- said respondent to show cause, if there be any, why the respondent should not be-enjoined -from the -unlicensed practice of law alleged, and further requiring tho respondent to file with the Court within twenty (20) days after service on him of the petition and order to show cause a written answer admitting or denying-each of-the matters set forth-in the petition. The legal sufficiency of the petition may, at the option of the respondent be raised by motion to-dismiss filed prior to or at the time of the filing of the answer. — The filing of a motion to dismiss prior to the filing of an answer shall-postpone the time for the-filing- of an answer until ten (10) days after disposition of said motion. — The order and petition shall-be-served upon the respondent in the manner provided for service of process by rulehL070(b), Florida Rules of Civil Procedure. — Service of all other pleadings shall be governed by the provisions-of rule 1.080, -Florida Rules of Civil Procedure.
(3) Any party-may request oral argument upon any -question of law raised by the initial pleadings. The Court may, in its discretion, set-the matter for oral argument upon the-next convenient motion day or at such time-as it deems appropriate.
*431 (4) If no response-or defense is filed within the time per-m-itted, the allegations of the petition shall-be taken as true for purposes of that action. — The Court will then, upon its motion or upon motion of any party, decide the-case upon-its merits, granting such relief-and issuing-such order as might be appropriate, or it may-refer-the petition for further proceedings according to rule 10-5.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact? any party, upon motion, may request summary judgment -and the Court may rule thereon as a matter of law.
(6) The Court may, upon its motion or upon motion of any-party, enter- a judgment on the pleadings- or refer questions of fact to--a referee for determination. — The referee shall be a circuit judge of-the State of Florida. Review by UPL Staff Counsel. UPL staff counsel shall review the complaint and determine whether the alleged conduct, if proven, would constitute a violation of the prohibition against engaging in the unlicensed practice of law. UPL staff counsel may conduct a preliminary, informal investigation to aid in this determination and, if necessary, may employ a Florida bar staff investigator to aid in the preliminary investigation. If UPL staff counsel determines that the facts, if proven, would not constitute a violation, UPL staff counsel may decline to pursue the complaint. A decision by UPL staff counsel not to pursue a complaint shall not preclude further action or review under the Rules Regulating The Florida Bar. The complainant shall be notified of a decision not to pursue a complaint and shall be given the reasons therefor.
(c) Proceedings before the referee shall be in accordance with the following;
(1) The proceedings shall be-held in-the county where the respondent resides or where-the alleged-offense was cemmittedT whichever — shall -be — designated—by—the Court,
(2) Upon assignment of a cause for trial, the-board of governors shall appoint bar counsel-to prosecute the cause before the referee,
(3) Witness subpoenas shall run in the name of-the Court and shall bo-issued by the referee-upon request-of a party, — Faib ure or refusal to comply with any subpoena shall be- contempt of Court and — may be punished by-the Court -or by any circuit court where the action is pending-or — where the contemnor may be — found) as.if- said refusal were a contempt of that court.
(4) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, — not inconsistent with these rules, shall apply in- injunctive-proceedings-before the referee, — The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee, — The Florida Bar may in-every case amend its petition one time as of right, within sixty-(60) days-after the filing of the order of reference to a referee,
(5) Review-of interlocutory rulings of the referee may be had by petition to the-Court filed within thirty (30) days after entry of the ruling complained-of, — A supporting brief and a-transcript containing-conformed copies of pertinent portions of the-reeord in the form of-an appendix-shall be-filed- with the Court-b-y a party-seeking such review, Any opposing party may file his responsive brief and appendix containing any-additional portions of the record-deemed pertinent to the issues raised-within ten (10) days thereafter. The petitioner may file ar-reply brief within five (5) -days of the date of service of the opposing party's responsive brief. — Any-party may request oral-argument at-the-time his brief is filed or due. ■Interlocutory review-hereunder shall not stay the cause before the referee — unless the referee or the Court on its motion or upon motion of any party shall so-order,
(6) At the conclusion of the hearing) the referee shall file a written report-with the Court stating findings of fact, conclusions of law and-recommendation for final disposition of-the cause. — The original-record shall be filed with the report. — Copies of the referee’s report shall-be served upon all parties by the referee at the time it-is filed with the Court. Referral to Circuit Com *432 mittee. If UPL staff counsel decides to pursue a complaint, a UPL file will be opened and the matter referred to the appropriate circuit committee for investigation as authorized elsewhere in these rules.
(d) Review by -the Supreme Court of Florida.
(1) Objections to the report of the referee-- shall be filed-with the -Court-by any party aggrieved, within thirty (3Q)-days-af-ter-the filing of said report. If the objector desires, a brief in support of-the objections may be filed at the-time -the objections are filed. — Any-other-party-may file a responsive brief within twenty (20) days of-serviee of objector’s brief. -The objector may file a reply br-ief within ten (10) days of-serviee of-the opposing party's responsive — brief. Oral argument-will be allowed -at the Court's discretion and will be governed by the provisions of -the Florida Rules of Appellate RroeedurOr
(2) Upon-the expiration of the time-to file objections to the referee's report, the-Cour-t shall review the report of the referee, together with any briefs or objections-filed in support of or opposition -to such report. After review, the Court shall determine as a matter of law whether the respondent has engaged in the-unlicensed practice of law and whether his activities should be enjoined by-appropriate-order and whether further relief shall be granted. Closing by UPL Staff Counsel and Committee Chair. If UPL staff counsel and a circuit committee chair concur in a finding that the case should be closed without a finding of unlicensed practice of law, the complaint may be closed on such finding without reference to the circuit committee or standing committee.
(e) Nothing set forth in this rule shall be construed to limit-the authority — of the Court, upon proper -application, to-issue a preliminary or temporary injunction,-or at any stage of the proceedings to enter any such order as to the-Court may seem-proper when public harm or- the possibility thereof is-made apparent to the Court, in order that such harm may — be summarily-prevented or speedily enjoined. Referral to UPL Staff Counsel for Opening. A complaint received by a circuit committee or standing committee member direct from a complainant shall be reported to UPL staff counsel for docketing and assignment of a case number. Should the circuit committee or standing committee member decide that the facts, if proven, would not constitute a violation of the unlicensed practice of law, the circuit committee or standing committee member shall forward this finding to UPL staff counsel along with the complaint for notification to the complainant as outlined above. Formal investigation by a circuit committee may proceed after the matter has been referred to UPL staff counsel for docketing.
10-6. CONFIDENTIALITY PROCEDURES FOR INVESTIGATION
RULE 10-6.1 FILE CONFIDENTIALITY ACCESS HEARINGS
All unlicensed practice -of law-investigation matters — including files, — correspondence, preliminary investigation reports, interoffice memoranda, and records-of investigations -are conf-idential-anless otherwise provided-herein or ordered by the- Cour-U
(a) Conduct of Proceedings. The proceedings of circuit committees and the standing committee when hearings are held may be informal in nature and the committees shall be bound by the rules of evidence.
(b) Taking Testimony. The standing committee, each circuit committee, and members thereof conducting investigations are empowered to take and have transcribed the testimony and evidence of witnesses. If the testimony is recorded steno-graphically or otherwise, the witness shall be sworn by any person authorized by law to administer oaths.
(c) Rights and Responsibilities of Respondent. The respondent may be required to appear and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable fed *433 eral or state law. The respondent may be accompanied by counsel-
id) Rights of Complaining Witness. The complaining witness is not a party to the investigative proceeding although the complainant may be called as a witness should the matter come before a judge or a referee. The complainant may be granted the right to be present at any circuit committee hearing when the respondent is present before the committee. The complaining witness shall have no right to appeal the finding of the circuit committee.
RULE 10-6.2 SUBPOENAS
(a) Issuance by Court. Upon receiving a written- application of the chair of the standing committee or of a circuit committee alleging facts indicating that a person or entity is or may be practicing law without a license and that the issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief .judge of the circuit or the chief justice for the attendance of any person and production of books and records before designated counsel or the investigating circuit committee or any member thereof designated in such application at the time and place within its circuit designated by the investigating circuit committee. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena shall issue upon application by any person or entity under investigation-
lb) Failure to Comply. Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the con-temnor may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.
RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
Upon concluding its investigation, the circuit committee shall forward a recommendation to UPL staff counsel regarding the disposition of the complaint. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting. Unless otherwise provided by these rules, the recommendation of the circuit committee shall be reviewed by the standing committee for approval. All recommendations for litigation under these rules shall be reviewed by the board of governors for final approval prior to initiating litigation. Upon approval of the recommendations, UPL staff counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
10-7. ADVISORY OPINIONS PROCEEDINGS BEFORE A REFEREE
RULE 10-7.1 PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW PROCEEDINGS GENERALLY
(a) Definitions.
(1) Committee. The standing committee on the unlicensed practice of law> as constituted according to the directives contained in these rules.
(2) Petitioner. An- individual or organization seeking- guidance as to the applicability, in a hypothetical situation, of the state’s-prohibitions against-the unlicensed practice of law,
(3) Public — Notice.—Publication—in—a newspaper of general circulation in Leon County-, Florida,-and in The Florida Bar News.
(4)-Court. — The Supreme-Court of Florida (or such other court in the State of -Flor-ida. the Supreme Court may designate). Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in *434 the Supreme Court of Florida by The Florida Bar in its name.
(h) Requests — for—advisory—opinions. The committee shall respond to written requests from all persons and entities seeking-advisory opinions concerning activities which may-constitute the unlicensed-practice of law. — SuGh requests shall be in writing addressed-to The Florida Bar — Tal-iahasseerdSorida^-3230R — The-request- for an advisory- opinion shall-state in detail all operative facts upon which the-reques-t for opinion is based and contain the name-and address of- petitioner. Petitions for In-junctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10-7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Limitations-on Opinions, — No opinion shall be rendered with respect to any case or controversy-pending in any cour-t-in this jurisdiction and no informal opinion shall-be issued. Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(3) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before *435 the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief within 5 days of the date of service of the opposing party’s responsive brief. Any party may request oral argument at the time that party’s brief is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(5) At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, and a recommendation for final disposition of the cause. The original record shall be filed with the report. Copies of the referee’s report shall be served upon all parties by the referee at the time it is filed with the court-
lb) Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(c)(5) shall be filed by the referee along with the stipulation.
(d) Service of V-oiuntary-CounseL- The committee shall be empowered to-request and accept the-voluntary services of a person licensed to-practice-in this-state when the committee deems it-advisable-to receive written-or oral advice -regarding- the question presented -by the -petitioner-. Review by the Supreme Court of Florida.
(1) Objections to the- report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief within 20 days of service of the objector's brief. The objector may file a reply brief within 10 days of service of the opposing party’s responsive brief. Oral argument will be allowed at the court’s discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee’s report, the court shall review the report of the referee, together with any briefs or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent’s activities should be enjoined by appropriate order, and whether further relief shall be granted.
(e) Conflict — of—Interest.-Committee members shall not participate in any matter in which they have- either a material pecuniary interest that would be affected by a proposed-advisory-opinion or committee recommendation or any other conflict of interest that should-prevent them from participating. — However, no action of-tthe committee will be invalid where full disclosure has been made and the committee-has not-deeided that the member’s participation was improper. Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to *436 the court, in order that such harm may be summarily prevented or speedily enjoined.
(f) Notice, Appearance and Service.
(1) At least thirty (30) days in advance of the committee meeting at-which initial action is-to be taken with respect to a potential advisory opinion, the committee shall give public notice of the -date, time, and place of the meeting, state the question presented and invite written-comments on the-question, — On-the announced date-the committee shall hold a public hearing at which any person-affected-shall be entitled to present oral testimony- and be represents ed by — counsel,—Oral testimony by other persons may be allowed by the committee at its discretion. — At the time of or prior-to the hearing any-other person shall be -entitled to file written testimony on the issue before-the committee. — Additional procedures not inconsistent with this rule may be-adopted by the committee.
(2) The committee shall issue either a written- proposed-advisory opinion or a letter which declines-to issue an-opinion. —No other.form of communication shall -be deemed to be an-advisory- opinion.
(3) A proposed advisory opinion shall-be in writing and shall bear a date-of issuance. The — proposed opinion shall — prominently bear a title indicating that it-is a proposed advisory opinion-and a disclaimer stating that it-is only an interpretation of the law and does not constitute final-court action, The-committee shall arrange for the publication — of the proposed adv-isory opinion within a reasonable time,-
(g) Service and Judicial Review of P-ro-posed-Formal Advisory Opinion.
(1) The committee shall file a copy of the opinion-and all materials considered by^the committee in adopting the opinion with-the clerk of the Courts The proposed advisory opinion, together — with notice of the filing thereof, shall be-farnished-by certified mail to the petitioner-,
(2) Within thirty (30) days of the filing of the opinion the-petitioner-may file objeo tions and a brief-or memorandum in support thereof, copies of.which shall be served on the committee, — Any other interested-person may seek leave-of the Court to file and serve a-brief in-accordance with this same procedure, — The committee may file a responsive-brief within twenty-(-2Q) days of-service of the initial-brief. — The petitioner, as well- as other interested persons-with leave of-Gourt,-may file a reply brief within ten (10) days of service of-the responsive brief. — At its discretion,.the Court^shall permit reasonable extension of these-thae periods. — Oral argument will be allowed-at the Court’s discretion, — The Florida Rules of Appellate Procedure shall otherwise govern the above -methods — of filing, service, and-argument,
(3)Upon the expiration of the time to file objections, briefs, and replies thereto, the Court shall review-the advisory opinion, regardless of whether any- such objections are in fact mader-together-with any briefs or objections filed-in support of-or in opposition-to such opinion. — Upon- review,-it shall.approve, modify, or disapprove-the advisory- opinion, and the ensuing opinion shall have the for-ce-and effect of an order-of this Court and-be-published accordingly,There shall be no-further review of the opinion except as granted by this Court in its discretion, upon petition to-this Cou-r-h
10-8. I-MMUN-ITY CONFIDENTIALITY
RULE 10-8.1 GENERALLY FILES
The members of the committee and circuit committees, as-well -as staff persons and appointed voluntary counsel assisting those-members, shall have absolute immunity from civil liability for all acts in the course of their official duties,
(a) Files are Property of Bar. All matters, including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those unlicensed practice of law matters conducted in county or circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the *437 proceedings and any information that is part of the UPL record as defined, in these rules.
(b) UPL Record. The UPL record shall consist of the record before a circuit committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, and recordings and transcripts of hearings furnished to, served on, or received from the respondent or the complainant. The record before the circuit committee shall consist of all reports, correspondence, papers, and recordings furnished to or received from the respondent and the transcript of circuit committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The record before a referee and the record before the Supreme Court of Florida shall include all items properly’filed in the cause including pleadings, transcripts of testimony, exhibits in evidence, and the report of the referee.
(c) Limitations on Disclosure. Any material provided to or promulgated by The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the UPL record, that portion of the UPL record may be sealed by the circuit committee chair, the referee, or the court-
id) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall reply to inquiries regarding a pending or closed unlicensed practice of law investigation as follows:
(1) Cases Opened Prior to January 1, 1993. Cases opened prior to January 1, 1993, shall remain confidential.
(2) Cases Opened On or After January 1, 1993. In any case opened on or after January 1,1993, the fact that an unlicensed practice of law investigation is pending and the status of the investigation shall be public information; however, the UPL record shall remain confidential except as provided in rule 10-8.1(e)(4).
(3) Recommendations of Circuit Committee. The recommendation of the circuit committee as to the disposition of an investigation opened on or after (the effective date of these rules) shall be public information; however, the UPL record shall remain confidential except as provided in rule 10-8.1(e)(4),
(4) Final Action by Standing Committee and UPL Staff Counsel. The final action of the standing committee on investigations opened on or after (the effective date of these rules) shall be public information. Once the recommendation is accepted, the UPL record in cases opened on or after (the effective date of these rules) that are closed by the standing committee or UPL staff counsel as provided elsewhere in these rules, cases where a cease and desist affidavit has been accepted, and cases where a litigation recommendation has been approved shall be public information and may be provided upon specific inquiry except that information that remains confidential under rule 10-8.1(c). The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(f) Production of UPL Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the UPL record even if otherwise deemed confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(g) Notice to Judges. Any .judge of a court of record may be advised as to the status of a confidential unlicensed practice of law case and may be provided with a *438 copy of the UPL record. The judge shall maintain the confidentiality of the matter.
(h) Response to False or Misleading Statements. If public statements that are false and misleading are made about any UPL case, The Florida Bar may make any disclosure necessary to correct such false or misleading statements.
(i) Providing Otherwise Confidential Material. Nothing contained herein shall prohibit The Florida Bar from providing otherwise confidential material as provided in rule 10-3.2(f).
10-9. AMENDMENTS ADVISORY OPINIONS
RULE 10-9.1 GENERALLY- PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW
Rules governing — the investigation and prosecution of-the unlicensed practice of law may be amended in accordance with the procedures for-amending the Rules Regulating The Florida Bar.
(a) Definitions.
(1) Committee. The standing committee as constituted according to the directives contained in these rules.
(2) Petitioner. An individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state’s prohibitions against the unlicensed practice of law.
(3) Public Notice. Publication in a newspaper of general circulation in the county in which the hearing will be held and in The Florida Bar News.
(4) Court. The Supreme Court of Florida (or such other court in the state of Florida as the supreme court may designate).
(b) Requests for Advisory Opinions. The committee shall respond to written requests from all persons and entities seeking advisory opinions concerning activities that may constitute the unlicensed practice of law. Such requests shall be in writing addressed to The UPL Department, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300. The request for an advisory opinion shall state in detail all operative facts upon which the request for opinion is based and contain the name and address of the petitioner.
(c) Limitations on Opinions. No opinion shall be rendered with respect to any case or controversy pending in any court in this jurisdiction and no informal opinion shall be issued except as provided in rule 10-9.1(g)(1).
(d) Services of Voluntary Counsel. The committee shall be empowered to request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.
(e) Conflict of Interest. Committee members shall not participate in any matter in which they have either a material pecuniary interest that would be affected by a proposed advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member’s participation was improper.
(f) Notice, Appearance, and Service.
(1) At least 30 days in advance of the committee meeting at which initial action is to be taken with respect to a potential advisory opinion, the committee shall give public notice of the date, time, and place of the meeting, state the question presented, and invite written comments on the question. On the announced date the committee shall hold a public hearing at which any person affected shall be entitled to present oral testimony and be represented by counsel. Oral testimony by other persons may be allowed by the committee at its discretion. At the time of or prior to the hearing any other person shall be entitled to file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.
*439 (2) The committee shall issue either a written proposed advisory opinion, a letter that declines to issue an opinion, or an informal opinion as provided in rule 10-9.1(g)(1). No other form of communication shall be deemed to be an advisory opinion.
(3) A proposed advisory opinion shall be in writing and shall bear a date of issuance. The proposed opinion shall prominently bear a title indicating that it is a proposed advisory opinion and a disclaimer stating that it is only an interpretation of the law and does not constitute final court action. The committee shall arrange for the publication of notice of filing the proposed advisory opinion and a summary thereof in The Florida Bar News within a reasonable time. Interested parties shall be furnished a copy of the full opinion upon request.
(g) Service and Judicial Review of Proposed Advisory Opinions.
(1) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question is not the unlicensed practice of law, it shall decide, by a vote of a majority of the committee members present, either to publish the advisory opinion as provided in rule 10-9.1(f)(3) as an informal advisory opinion, or to file a copy of the opinion with the court as provided in rule 10-9.1(g)(2).
(2) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question constitutes or would constitute the unlicensed practice of law, the committee shall file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the court. The proposed advisory opinion, together with notice of the filing thereof, shall be furnished by certified mail to the petitioner.
(3) Within 30 days of the filing of the opinion, the petitioner may file objections and a brief or memorandum in support thereof, copies of which shall be served on the committee. Any other interested person may seek leave of the court to file and serve a brief, whether in support of or in opposition to the opinion, in accordance with this same procedure. The committee may file a responsive brief within 20 days of service of the initial brief. The petitioner, as well as other interested persons with leave of court, may file a reply brief within 10 days of service of the responsive brief. At its discretion, the court shall permit reasonable extension of these time periods. Oral argument will be allowed at the court’s discretion. The Florida Rules of Appellate Procedure shall otherwise govern the above methods of filing, service, and argument.
(4)Upon the expiration of the time to file objections, briefs, and replies thereto, the court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion. Upon review, it shall approve, modify, or disapprove the advisory opinion, and the ensuing opinion shall have the force and effect of an order of this court and be published accordingly. There shall be no further review of the opinion except as granted by this court in its discretion, upon petition to this court.
10-10. IMMUNITY
RULE 10-10.1 GENERALLY
The members of the standing committee and circuit committees, as well as staff persons and appointed voluntary counsel assisting those committees, shall have absolute immunity from civil liability for all acts in the course of their official duties.
10-11. AMENDMENTS
10-11.1 GENERALLY
Rules governing the investigation and prosecution of the unlicensed practice of law may be amended in accordance with the procedures set forth in rule 1-12.1.
CHAPTER 11. RULES GOVERNING THE LAW SCHOOL CIVIL AND CRIMINAL PRACTICE PROGRAM
11-1. GENERALLY
RULE 11-1.1 PURPOSE
The bench and the bar are primarily responsible for providing competent legal *440 services for all persons, including those unable to pay for these services. As one means of providing assistance to lawyers who represent clients unable to pay for such services and to encourage law schools to provide clinical instruction in trial work of varying kinds, the following rules are adopted.
RULE 11-1.2 ACTIVITIES
(a) Appearance in Civil or Administrative Proceedings. An eligible law student may appear in any court or before any administrative tribunal in this state on behalf of any indigent person if the person on whose behalf he the student is appearing has indicated in writing his consent to that appearance and the supervising lawyer has also indicated in writing approval of that appearance. In those cases in which the indigent person has a right to appointed counsel, the supervising attorney shall be personally present at all critical stages of the proceeding. In all cases, the supervising attorney shall be personally present when required by the trial judge who shall determine the extent of the eligible law student’s participation in the proceeding.
(b) Appearance in Criminal Proceedings. An eligible law student may also appear in any criminal matter on behalf of the state with the written approval of the prosecuting attorney or his the prosecuting attorney’s authorized representative and of the supervising lawyer. In such cases the supervising attorney shall be personally present when required by the trial judge who shall determine the extent of the law student’s participation in the proceeding.
(c) Appearance on Behalf of Governmental Agencies. An eligible law student may also appear in any court or before any administrative tribunal in any civil matter on behalf of the state, state officers, or state agencies or on behalf of a municipality or county, provided that the municipality or county has a full-time legal staff, with the written approval of the attorney representing the state, state officer, state agency, municipality, or county. The attorney representing the state, state officer, state agency, municipality, or county shall supervise the law student and shall be personally present when required by the court or administrative tribunal, which shall determine the extent of the law student’s participation in the proceeding.
(d) Filing of Consent and Approval. In each case the written consent and approval referred to above shall be filed in the record of the case and shall be brought to the attention of the judge of the court or the presiding officer of the administrative tribunal.
(e) Fixing of Standards of Indigence. The board of governors shall fix the standards by which indigence is determined under this chapter upon the recommendation of the largest voluntary bar association located in the circuit in which a program is implemented hereunder.
RULE 11-1.3 REQUIREMENTS AND LIMITATIONS
In order to make an appearance pursuant to this chapter, the law student must:
(a) Bbe duly enrolled in the United States in a law school approved by the American Bar Association;
(b) Shave completed legal studies amounting to at least four-(4) semesters or sk-(6) quarters for which the student has received not less than for-ty-eight-(48) semester hours or seventy-two (72) quarter hours of academic credit or the equivalent if the school is on some other basis;
(c) Bbe certified by the dean of his or her the student’s law school as being of good character and competent legal ability and as being adequately trained to perform as a legal intern in a law school practice program;
(d) Bbe introduced to the court in which he or she the student is appearing by an attorney admitted to practice in that court;
(e) Nneither ask for nor receive any compensation or remuneration of any kind for his or — her the student's services from the person on whose behalf he or-she the student renders services, but this shall not prevent a lawyer, legal aid bureau, law school, public defender agency, or the state *441 from paying compensation to the eligible law student (nor shall it prevent any agency from making such charges for its services as it may otherwise properly require); and
(f) Gcertify in writing that he or-she the student has read and is familiar with the Rules of Professional Conduct as adopted by this Gcourt and will abide by the provisions thereof.
RULE 11-1.4 CERTIFICATION
The certification of a student by the law school dean:
(a) Shall be filed with the clerk of this Gcourt, and, unless it is sooner withdrawn, it shall remain in effect until the expiration of eighteen (18) months after it is filed.
(b) May be withdrawn by the dean at any time by mailing a notice to that effect to the clerk of this Gcourt. It is not necessary that the notice state the cause for withdrawal.
(c) May be terminated by this Gcourt at any time without notice or hearing and without any showing of cause. Notice of the termination may be filed with the clerk of the Gcourt.
RULE 11-1.5 OTHER ACTIVITIES
(a)Preparation of Documents; Assistance of Indigents. In addition, an eligible law student may engage in other activities, under the general supervision of a member of the bar of this Gcourt, but outside the personal presence of that lawyer, including:
(1) Ppreparation of pleadings and other documents to be filed in any matter in which the student is eligible to appear, but such pleadings or documents must be signed by the supervising lawyer^
(2) Ppreparation of briefs, abstracts, and other documents to be filed in appellate courts of this state, but such documents must be signed by the supervising lawyer^
(3) Eexcept when the assignment of counsel in the matter is required by any constitutional provision, statute, or rule of this Gcourt, assistance to indigent inmates or correctional institutions or other persons who request such assistance in preparing applications for and supporting documents for post-conviction relief. If there is an attorney of record in the matter, all such assistance must be supervised by the attorney of record, and all documents submitted to the court on behalf of such a client must be signed by the attorney of record.
(4b) Identification of Student in Documents and Pleadings. Each document or pleading must contain the name of the eligible law student who has participated in drafting it. If he or she the student participated in drafting only a portion of it, that fact may be mentioned.
(be) Participation in Oral Argument. An eligible law student may participate in oral argument in appellate eourtsT but only in the presence of the supervising lawyer.
RULE 11-1.6 SUPERVISION
The member of the bar under whose supervision an eligible law student does any of the things permitted by this chapter shall:
(a) Bbe a lawyer whose service as a supervising lawyer for this program is approved by the dean of the law school in which the law student is enrolled and who is a member of The Florida Bar in good standing;
(b) Aassume personal professional responsibility for the student’s guidance in any work undertaken and for supervising the quality of the student’s work; and
(c) Aassist the student in his or her the student’s preparation to the extent the supervising lawyer considers it necessary.
RULE 11-1.7 MISCELLANEOUS
Nothing contained in this chapter shall affect the right of any person who is not admitted to the practice of law to do anything that he or she the person might lawfully do prior to the adoption of this chapter.
*442 RULE 11-1.8 CONTINUATION OF PRACTICE PROGRAM AFTER COMPLETION OF LAW SCHOOL PROGRAM OR GRADUATION
(a) Certification by Agency Attorney. A law student who has completed the law school practice program and (1) has had certification withdrawn by the law school dean by reason of completion of the program or (2) has graduated from law school following successful completion of the program may appear in court pursuant to this chapter if the attorney general, a state attorney, a public defender, a supervising attorney of a legal aid organization approved by the Supreme Court of Florida, or a supervising attorney of any other entity referred to in rule 11-1.2:
(1) Ffiles a certification in the same manner and subject to the same limitations as that required to be filed by the law school dean and files a separate certificate of the dean stating that the law student has successfully completed the law school practice program. This certification may be withdrawn in the same manner as provided for the law school dean’s withdrawal of his or her certification. The maximum term of certification for graduates shall be twelve (12) months from graduation; and
(2) Ffurther certifies that he or-she the attorney will assume the duties and responsibilities of the supervising attorney as provided by other provisions of this chapter.
(b) Non-Florida Law School Practice Programs. In the case of students enrolled in or having graduated from an American Bar Association approved non-Florida law school, completion for academic credit of a clinical program that involved the representation of actual clients under the supervision of a lawyer shall be deemed to be the equivalent of completion of the law school practice program for purposes of this rule.
(c) Certification by Legal Aid Organization. A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Ccourt certifying that it is a nonprofit organization and reciting with specificity:
(1) Tthe structure of the organization and whether it accepts funds from its clients;
(2) Tthe major sources of funds used by the organization;
(3) Tthe criteria used to determine potential clients’ eligibility for legal services performed by the organization;
(4) Tthe types of legal and nonlegal services performed by the organization; and
(5) Tthe names of all members of The Florida Bar who are employed by the organization or who regularly perform legal work for the organization.
Legal aid organizations approved on the effective date of this chapter need not reapply for approval, but all such organizations are under a continuing duty to notify the Ccourt promptly of any significant modification to their structure or sources of funds.
CHAPTER 12. EMERITUS ATTORNEYS PRO BONO PARTICIPATION PROGRAM
12-1. GENERALLY
RULE 12-1.1 PURPOSE
Individuals admitted to the practice of law in Florida have a responsibility to provide competent legal services for all persons, including those unable to pay for such services. As one means of meeting these legal needs, the following rules establishing the Eemeritus Aattorneys Fpro Bbono ^participation Bprogram are adopted.
RULE 12-1.2 DEFINITIONS
(a) Emeritus Attorney. An “emeritus attorney” is any person, retired from the active practice of law, who is or was admitted to practice law before the highest court of Florida or any other state or territory of the United States of^America or the District of Columbia; and
(1) Hhas been engaged in the active practice of law for a minimum of ten (10) *443 out of the fifteen -(15) years immediately preceding the application to participate in the emeritus program; and
(2) Hhas been a member in good standing of The Florida Bar or the entity governing the practice of law of any other state, territory* or the District of Columbia and has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within the past fifteen -(15) years; and
(3) lif not a retired member of The Florida Bar, has not failed the Florida bar examination three (3) or more times; and
(4) Aagrees to abide by the Rules of Professional Conduct and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes; and
(5) Nneither asks for nor receives compensation of any kind for the legal services to be rendered hereunder; and
(6) lis certified under rule 12-1.5.
(b) Approved Legal Aid Organization. An “approved legal aid organization” for the purposes of this chapter is a not-for-profit legal aid organization which that is approved by the Supreme Court of Florida as set forth herein. A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Supreme Court of Florida certifying that it is a not-for-profit organization and reciting with specificity:
(1) Tthe structure of the organization and whether it accepts funds from its clients;
(2) Tthe major sources of funds used by the organization;
(3) Tthe criteria used to determine potential clients’ eligibility for legal services performed by the organization;
(4) Tthe types of legal and nonlegal services performed by the organization;
(5) Tthe names of all members of The Florida Bar who are employed by the organization or who regularly perform legal work for the organization; and
(6)Tthe existence and extent of malpractice insurance which that will cover the emeritus attorney.
(c) Supervising Attorney. A “supervising attorney” as used herein is an active member in good standing of The Florida Bar who directs and supervises an emeritus attorney engaged in activities permitted by this chapter. The supervising attorney must:
(1) Bbe employed by or be a participating volunteer for an approved legal aid organization*; and
(2) Aassume personal professional responsibility for supervising the conduct of the matter, litigation^ or administrative proceeding in which the emeritus attorney participates.
RULE 12-1.3 ACTIVITIES
(a) Permissible Activities. An emeritus attorney, in association with an approved legal aid organization and under the supervision of a supervising attorney, may perform the following activities:
(1) The emeritus attorney may appear in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the emeritus attorney is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance. The written consent and approval shall be filed in the record of each case and shall be brought to the attention of a judge of the court or the presiding officer of the administrative tribunal.
(2) The emeritus attorney may prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the emeritus attorney is involved. Such pleadings also shall be signed by the supervising attorney.
(3) The emeritus attorney may engage in such other preparatory activities as are necessary for any matter in which he or she the emeritus attorney is involved.
(b) Determination of Nature of Participation. The presiding judge or hearing *444 officer may, in her or his the judge's or officer's discretion, determine the extent of the emeritus attorney’s participation in any proceedings before the court.
RULE 12-1.4 SUPERVISION ' AND LIMITATIONS
(a) Supervision by Attorney. An emeritus attorney must perform all activities authorized by this chapter under the direct supervision of a supervising attorney.
(to) Representation of Bar Membership Status. Emeritus attorneys permitted to perform services under this chapter are not, and shall not represent themselves to be, active members of The Florida Bar licensed to practice law in this state.
(c) Payment of Expenses and Award of Fees. The prohibition against compensation for the emeritus attorney contained in rule 12-1.2(a)(5) shall not prevent the approved legal aid organization from reimbursing the emeritus attorney for actual expenses incurred while rendering services hereunder nor shall it prevent the approved legal aid organization from making such charges for its services as it may otherwise properly charge. The approved legal aid organization shall be entitled to receive all court-awarded attorneys’ fees for any representation rendered by the emeritus attorney.
RULE 12-1.5 CERTIFICATION
(a) Permission to Perform Services. Permission for an emeritus attorney to perform services under .this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(la) Aa certification by an approved legal aid organization stating that the emeritus attorney is currently associated with that legal aid organization and that an attorney employed by or participating as a volunteer with that organization will assume the duties of the supervising attorney required hereunder;
(2b) Aa certificate from the highest court or agency in the state, territory, or district in which the emeritus attorney previously has been licensed to practice law, certifying that the emeritus attorney has fulfilled the requirements of active bar membership and has a clear disciplinary record as required by rule 12-1.2(a)(2); and
(3c) Aa sworn statement by the emeritus attorney that he or she the emeritus attorney:
aRl) Shas read and is familiar with the Rules of Professional conduct as adopted by the Supreme Court of Florida and will abide by the provisions thereof; ajid
b,(2) Ssubmits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by the Rules of Discipline and by rules 12-1.2(a)(4) and 12-1.7⅛ and
e,(3) Wwill neither ask for nor receive compensation of any kind of for the legal services authorized hereunder.
RULE 12-1.6 WITHDRAWAL OF CERTIFICATION
(a) Withdrawal of Permission to Perform Services. Permission to perform services under this chapter shall cease immediately upon the filing with the clerk of the Supreme Court of Florida of a notice either:
(1) Bby the approved legal aid organization stating that:
a,(A) Tthe emeritus attorney has ceased to be associated with the organization, which notice must be filed within five-(5) days after such association has ceased; or
br(B) Ccertification of such attorney is withdrawn. An approved legal aid organization may withdraw certification at any time and it is not necessary that the notice state the cause for such withdrawal. A copy of the notice filed with the clerk of the Supreme Court of Florida shall be mailed by the organization to the emeritus attorney concerned.
(2) Bby the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the emeritus attorney involved and to the approved legal *445 aid organization by which he or she the emeritus attorney had been certified.
. (b) Notice of Withdrawal. If an emeritus attorney’s certification is withdrawn for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the emeritus attorney was involved.
RULE 12-1.7 DISCIPLINE
In addition to any appropriate proceedings and discipline which that may be imposed by the Supreme Court of Florida under the Rules of Discipline and or the Rules of Professional Conduct^ the emeritus attorney shall be subject to the following disciplinary measures:
(a) Tthe presiding judge or hearing officer for any matter in which the emeritus attorney has participated may hold the emeritus attorney in civil contempt for any failure to abide by such tribunal’s orders; and
(b) Tthe Supreme Court of Florida or the approved legal aid organization may, at any time, with or without cause, withdraw certification hereunder.
CHAPTER 13. AUTHORIZED LEGAL AID PRACTITIONERS RULE
18-1. GENERALLY
RULE 13-1.1 PURPOSE
The purpose of this chapter is to expand the delivery of legal services to poor people. This chapter authorizes attorneys licensed to practice law in jurisdictions other than Florida to be certified to practice in Florida for up to one 1 year while employed by a legal aid organization. The attorney so certified must take the next available Florida bar examination.
RULE 13-1.2 DEFINITIONS
(a) Authorized Legal Aid Practitioner. An “authorized legal aid practitioner” is any person who:
(1) Wwas engaged in the active practice of law for three (3) years immediately preceding the application for certification under this chapter; and
(2) lis a member in good standing of the entity governing the practice of law of the any other state7 or territory7 or the District of Columbia (other than Florida) in which he or she is licensed, and has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within the past fifteen -(15) years; and
(3) Hhas not failed the Florida Bbar examination and has not been denied admission to the courts of any jurisdiction during the preceding f-ifteen-(15) years; and
(4) Aagrees to abide by the Rules Regulating tThe Florida Bar and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes; and
(5) Nneither asks for nor receives compensation of any kind from the person on whose behalf he or she the practitioner renders legal services hereunder (this shall not prevent the approved legal aid organization from paying compensation to the attorney); and
(6) lis certified under rule 13-1.5.
(b) Approved Legal Aid Organization. An “approved legal aid organization” for the purposes of this chapter is a not-for-profit legal aid organization which that is approved by the Supreme Court of Florida as set forth herein. A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Supreme Court of Florida certifying that it is a not-for-profit organization and stating with specificity:
(1) Tthe structure of the organization and whether it accepts funds from its clients;
(2) Tthe major sources of funds used by the organization;
(3) Tthe criteria used to determine potential clients’ eligibility for legal services performed by the organization;
(4) Tthe types of legal and nonlegal services performed by the organization;
*446 (5) Tthe names of all members of tThe Florida Bar who are employed by the organization or who regularly perform legal work for the organization; and
(6) Tthe existence and extent of malpractice insurance which that will cover the authorized legal aid practitioner.
(c) Supervising Attorney. A “supervising attorney” as used herein fe is an active member in good standing of The Florida Bar who directs and supervises an authorized legal aid practitioner engaged in activities permitted by this chapter. The supervising attorney must:
(1) Bbe employed by or be a participating volunteer for an approved legal aid organization; and
(2) Aassume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal aid practitioner participates.
RULE 13-1.3 ACTIVITIES
(a) Permissible Activities. An authorized legal aid practitioner, in association with an approved legal aid organization and under the supervision of a supervising attorney, may perform the following activities:
(1) Appear in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the authorized legal aid practitioner is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance. The written consent and approval shall be filed in each case and shall be brought to the attention of a judge of the court or the presiding officer of the administrative tribunal}.
(2) Prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the authorized legal aid practitioner is involved.- Such pleadings also shall be signed by the supervising attorney}.
(3) Prepare legal documents, provide legal advice, and otherwise engage in the practice of law; and.
(4) Engage in such other preparatory activities as are necessary for any matter in which he or she the practitioner is involved.
(b) Determination of Scope of Participation. The presiding judge or hearing officer may, in his or-her the judge's or officer’s discretion, determine the extent of the authorized legal aid practitioner’s participation in any proceeding.
RULE 13-1.4 SUPERVISION AND LIMITATIONS
(a) Supervision by Attorney. An authorized legal aid practitioner must perform all activities authorized by this chapter under the direct supervision of a supervising attorney.
(b) Representation of Bar Membership Status. Authorized legal aid practitioners permitted to perform services under this chapter are not, and shall not represent themselves to be, active members of The Florida Bar licensed to practice law in this state.
(c) Payment of Expenses and Award of Fees. The limitation on compensation for the authorized legal aid practitioner contained in rule 13-1.2(a)(5) shall not prevent the approved legal aid organization from reimbursing the authorized legal aid practitioner for actual expenses incurred while rendering services hereunder nor shall it prevent the approved legal aid organization from making such charges for its services as it may otherwise properly charge. The approved legal aid organization shall be entitled to receive all court-awarded attorney’s fees for any representation rendered by the authorized legal aid practitioner.
RULE 13-1.5 CERTIFICATION
(a) Permission for an authorized legal aid practitioner to perform services under this chapter shall become effective upon filing with and approval by the. clerk of the Supreme Court of Florida of:
(la) A certification by an approved legal aid organization stating that the authorized *447 legal aid practitioner is currently associated with that legal aid organization and that an attorney employed by or participating as a volunteer with that organization will assume the duties of the supervising attorney required hereunder}.
(2b) A certificate from the highest court or agency in the state, territory, or district in which the authorized legal aid practitioner is licensed to practice law certifying that the authorized legal aid practitioner is a member in good standing and has a clear disciplinary record as required by rule 13-1.2(a)(2). The certificate shall also advise of any pending complaints and/or investigations involving the authorized legal aid practitioner; and.
(Sc) A sworn statement by the authorized legal aid practitioner that he or-she the practitioner:
⅝(1) Shas read and is familiar with chapter 4 of the Rules Regulating tThe Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
br(2) Ssubmits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 of the Rules Regulating tThe Florida Bar and by rule 13-1.7, and authorizes his- or her the practitioner’s home state to be advised of any disciplinary action taken in Florida; and
e,(3) Wwill take the next available Florida bar examination.
RULE 13-1.6 WITHDRAWAL OR TERMINATION OF CERTIFICATION
(a) Cessation of Permission to Perform Services. Permission to perform services under this chapter shall cease immediately upon the earliest of the following events:
(1)The passage of ose 1 year from the date of the authorized legal aid practitioner’s certification by the GcourR; provided, however, the certification of any authorized legal aid practitioner who has passed the Florida bar examination shall continue in effect until the date he or she the practitioner is admitted to practice; — or.
(2) Failure of the Florida bar examination; — or.
(3) The filing with the clerk of the Supreme Court of Florida of a notice by the approved legal aid organization stating that:
aRA) Tthe authorized legal aid practitioner has ceased to be associated with the organization, which notice must be filed within five (5) days after such association has ceased; or
br(B) Ccertification of such attorney is withdrawn. An approved legal aid organization may withdraw certification at any time and it is not necessary that the notice state the cause for such withdrawal. A copy of the notice filed with the clerk of the Supreme Court of Florida shall be mailed by the organization to the authorized legal aid practitioner concerned.
(4) The filing with the clerk of the Supreme Court of Florida of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the authorized legal aid practitioner involved and to the approved legal aid organization to which he or she the practitioner had been certified. The certified legal aid attorney shall have fifteen (15) days to request reinstatement for good cause.
(b) Notice of Withdrawal of Certification. If an authorized legal aid practitioner’s certification is withdrawn* for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the authorized legal aid practitioner was involved.
RULE 13-1.7 DISCIPLINE
(a) Contempt; Withdrawal of Certification. In addition to any appropriate proceedings and discipline which that may be imposed by the Supreme Court of Florida under chapter 3 of these Rules Regulating *448 tThe Florida Bar, the authorized legal aid practitioner shall be subject to the following disciplinary measures:
(1) Tthe presiding judge or hearing officer for any matter in which the authorized legal aid practitioner has participated may hold the authorized legal aid practitioner in civil contempt for any failure to abide by such tribunal’s order, in the same manner as any other person could be held in civil contempt; and
(2) Tthe Supreme Court of Florida or the approved legal aid organization may, at any time, with or without cause, withdraw certification hereunder.
(b)Notice to Home State of Disciplinary Action. The Florida Bar shall notify the appropriate authority in the authorized legal aid attorney’s home state of any disciplinary action taken against the authorized legal aid practitioner.
RULE 13-1.8 SUNSET PROVISION
This chapter shall expire and all certificates issued hereunder shall likewise expire on January 1, 1993¿ unless sooner reenacted by the Supreme Court' of Florida.
CHAPTER 14. FEE ARBITRATION RULE
14-1. JURISDICTION AND VENUE
RULE 14-1.1 JURISDICTION
(a) Written Request after Dispute Required. Circuit arbitration committees shall have jurisdiction to resolve disputes over a fee paid,. charged, or claimed for legal services rendered by a member of The Florida Bar when the parties to the dispute agree to arbitrate by a request for arbitration signed by all parties after a dispute has arisen.
(b) Pending Civil Action. Circuit arbitration committees shall not have jurisdiction to resolve disputes involving matters in which a court has taken jurisdiction to determine and award a reasonable fee to a party or which that involve fees charged which that constitute a violation of the Rules Regulating The Florida Bar.
(c) Attorney-Client Relationship Required. Circuit arbitration committees have jurisdiction to resolve disputes between a member of The Florida Bar and a client or clients only.
(d) Authority to Decline Exercise of Jurisdiction. The chairperson of a circuit arbitration committee or the chairperson of a panel of a circuit arbitration committee, with the consent of the chairperson of the circuit arbitration committee, shall have authority to decline jurisdiction to resolve any particular dispute by reason of its complexity and protracted hearing characteristics.
RULE 14-1.2 VENUE (PLACE OF HEARING)
Fee dispute resolutions shall be determined by a fee arbitration committee located in the circuit where the member of The Florida Bar maintains a principal office, where the attorney performed a substantial amount of the legal services^ or where the parties agree the matter should be arbitrated.
RULE 14-1.3 RULES
Each party to an arbitration proceeding initiated under these rules shall be deemed to have consented to the application of the Florida Arbitration Code (Cchapter 682, Florida Statutes), except as modified by these rules.
14-2. STANDING COMMITTEE
RULE 14-2.1 GENERALLY
(a) Appointment of Members; Quorum. The Bboard of ^governors shall appoint a nine-(9):member standing committee on fee arbitration, not less than one-third of whom shall be nonlawyers. The Bboard of Ggo-vernors will appoint a chairperson and vice-chairperson of the committee. A majority of members of the committee constitutes a quorum. The lawyer members of the committee shall have been members of The Florida Bar for at least five (5) years.
(b) Terms. All members shall be appointed for three (3) year terms, each term commencing on July 1 of the year of appointment and ending on June 30 three *449 years of the third year thereafter. No committee member may serve for more than two- (2) consecutive full terms.
(c) Duties. The duties of the standing committee include:
(1) ^prescribing uniform forms and rules of procedure for circuit arbitration committees;
(2) Rrecommending to the Bboard of Cgovernors amendments to this rule;
(3) Establishing additional circuit arbitration committees where needed;
(4) Ggiving advice concerning fee arbitration matters to officers, the Bboard of Cgovernors, staff, sections, or committees of The Florida Bar as requested or required;
(5) ^gathering and maintaining vital statistical information from the circuit arbitration committees for use by the ^standing Ccommittee, Bboard of Cgovernors, or other appropriate bodies;
(6) Bpromoting the system; and
(7) Aapproving administrative fees for each circuit arbitration committee.
14-3. CIRCUIT ARBITRATION COMMITTEES
RULE 14-3.1 GENERALLY
(a) Membership. The circuit arbitration committees shall consist of not less than three (3) members, approved by the Bboard of Cgovernors, who practice law or reside within the circuit. The size of a circuit arbitration committee may be increased as the chairperson of each committee deems necessary. At least one-third of the membership of each committee shall be nonlaw-yers. The lawyer members of the committee shall have been members of The Florida Bar for at least five (5) years.
(b) Nomination and Appointment. Voluntary bar association presidentas) within each circuit and the Florida Ccouncil of Bbar Ppresidents may tender names of prospective members of the circuit arbitration committees to the Bboard of Cgovernors^ member of such circuit for recommendation to the Bboard of Cgovernors, which shall appoint the members. The Bboard of Cgo-vernors’ member for each circuit shall designate a chairperson and vice-chairperson for each circuit arbitration committee.
(c)Terms. Terms of service shall be for one 1 year, beginning July 1 and ending the following June 30 with¿ no member serving more than three (3) consecutive terms. The expiration of the term of a member shall not disqualify that member from concluding any matter pending before him-or her the member. Any member may be removed by the Bboard of Cgovernors.
14-4. INSTITUTION OF PROCEEDINGS
RULE 14-4.1 GENERALLY
(a) Consent. All proceedings shall be instituted by the filing of a written consent to arbitration under these rules signed by each party to the controversy. Each of such parties shall provide the committee with a concise statement of his or her that party’s position, including the amount claimed or in controversy, on the form prescribed and authorized by the Sstanding Ccommittee. Copies of the rules and consent forms will be supplied to the parties by the circuit arbitration committee.
(b) Attachments. If there is a written contract regarding fees between the parties, a copy of that written contract shall accompany the request or submission.
14-5. RULES OF PROCEDURE
RULE 14-5.1 CONFIDENTIALITY
(a) All records, documents, files, proceedings, and hearings pertaining to fee arbitration under these rules shall be made available, upon inquiry, to anyone.
RULE 14-5.2 BINDING NATURE
(a) Binding Determination. The parties to an arbitration proceeding under these rules shall be bound by the determination of the circuit arbitration committee panel subject to those rights and procedures to set aside or modify the award provided by Cchapter 682, Florida Statutes.
*450 (b) Enforcement of Determination. Any award rendered may be enforced by a court of competent jurisdiction.
RULES OF PROCEDURE FOR ARBITRATION PROCEEDINGS
RULE I. PREAMBLE
The following rules are those standards by which circuit arbitration committees must conduct their proceedings in fee arbitration matters.
RULE II. SELECTION OF ARBITRATORS
A. Referral to Arbitrators. Upon the proper filing of a request for arbitration, the matter shall be referred by the circuit arbitration committee chairperson to one 1 member of the circuit arbitration committee who is a lawyer who shall act as sole arbitrator when the amount in controversy is $2,500,0© or less. If the amount in controversy exceeds $2,500,00, the circuit arbitration committee chairperson shall refer the matter to a hearing panel of three 3 circuit arbitration committee members, one 1 of whom shall be designated panel chairperson for the case. Upon request of one 1 of the parties and in the sole discretion of the circuit arbitration committee chairperson, an extraordinary case involving $2,500,00 or less may be heard by a three 3-member panel. All three 3-member panels shall consist of one 1 nonlawyer and two 2 lawyers. Also, upon request of one 1 of the parties or in extraordinary circumstances, and in the sole discretion of the circuit arbitration committee chairperson, any case involving $2,500,00 or less may be heard by a nonlawyer arbitrator.
B. Eligibility to Serve. It shall be the obligation of any member of a circuit arbitration committee designated as a sole arbitrator or panel member to disclose to the circuit arbitration committee chairperson any reason why he or she the member cannot ethically or conscientiously serve. When a member declines or is unable to serve, the circuit arbitration committee chairperson shall designate another member eligible to serve. The circuit arbitration committee chairperson has the authority to remove a sole arbitrator or panel member from hearing a particular matter if, in the judgment of the chairperson, the member should not serve.
C. Postponements. If at the time set for hearing by a panel, the three-(3) members of the panel are not present, the panel chairperson, with the consent of the parties, may postpone the hearing or proceed with fewer than three-(3) members.
D. Death or Inability to Serve. If any member of the panel dies or becomes unable to continue to serve while the matter is pending, but before an award has been made, a substitute panel member shall be appointed by the panel chairperson unless the parties consent to proceed with the hearing. If a substitute panel member is appointed, he or- she the member shall review the evidence admitted and recorded in the proceedings, if recorded. If not recorded, the review shall consist of an examination of evidence admitted and oral summary by the panel chairperson followed by argument thereon from the parties.
E. Powers of Arbitrators. The members of the circuit arbitration committee selected as arbitrators of any dispute shall be vested with all the powers and shall assume all the duties granted and imposed upon arbitrators in accordance with Cchap-ter 682, Florida Statutes.
F. Time. The panel or the sole arbitrator assigned shall hold the hearing within forty-five (45) days after receipt of the assignment and shall render the award within ten-(10) days after the close of the hearing, unless extended by the chairperson of the circuit arbitration committee for good cause.
RULE III. RECORD OF PROCEEDINGS
Any party may provide, at his or her own the party’s cost, the service of a stenographer to record the proceedings. If the proceedings are transcribed, the arbitrators shall be promptly provided with a copy whieh that shall be open to inspection by all of the parties to the arbitration. By stipu *451 lation of the parties, the proceedings may be recorded by tape recorder or other electronic means.
RULE IV. HEARINGS
A. Setting and Notice of Hearing. The chairperson of the panel or the sole arbitrator, as the case may be, shall coordinate with the parties and panel members and thereafter fix a time and place for the hearing and shall cause written notice thereof to be served personally or by registered or certified mail on the parties to the arbitration at the address stated on the consent to arbitration form not less than ton-(10) days before the hearing. A party’s appearance at a scheduled hearing shall constitute a waiver by him or her of any deficiency in the notice of hearing.
B. Absence of Party. The arbitration may proceed in the absence of a party who, after notice, fails to attend or to obtain a postponement from the panel chairperson or sole arbitrator. Postponement, however, shall only be granted upon good cause shown. Despite the absence of a party or parties, no award shall be made without the submission of evidence to support the claim.
C. Representation by Counsel. Each party has an absolute right to be represented by counsel at any arbitration hearing.
D. Presentation of Evidence. If all parties to the controversy so agree, they may waive an evidentiary hearing and may submit their positions and contentions in writing, together with exhibits, if any, to the arbitrators who shall render a final decision based on the information before them within ten-(10) days of the receipt of such writings and exhibits. The arbitrators shall require all parties and witnesses to be sworn before they testify. The arbitrators, if they so desire, may request opening statements and prescribe the order of proof. In any event, all parties shall be afforded full opportunity for the presentation of any evidence. Depositions shall be allowed only for the perpetuation of testimony. All other pre-hearing discovery is prohibited. The procedures for subpoenas and witness attendance shall be as prescribed in Ssection 682.08, Florida Statutes (1991).
E. Right of Party to Attend. All parties shall have an absolute right to attend all hearings. The exclusion of other persons or witnesses shall be within the discretion of the arbitrators.
F. Chairperson to Preside. The arbitrators shall select one 1 of their members as chairperson. The chairperson of the panel or the sole arbitrator shall preside at the hearing and shall rule on the admission and exclusion of evidence and on questions of procedure, and shall exercise all powers relating to the conduct of the hearing. The hearing should be informal in nature without strict observance of the rules of evidence or the Florida Rules of Civil Procedure.
G. Factors to Consider Regarding Reasonable Fees. In reaching their decision, the arbitrators may consider all factors they deem relevant, including but not limited to the intention and understanding of the parties at the time the representation was undertaken as well as those factors for determining the reasonableness of a fee enumerated in rules 4-1.5(Bb) and (€c), Rules of Professional Conduct.
RULE V. CLOSING OF HEARINGS
The arbitrators shall specifically inquire of all parties whether they have any further evidence to submit in whatever form. If the answer is in the negative, the hearings shall be closed. The circuit arbitration committee files shall be preserved for a period of one (1) year from the date of submission of the award to the parties.
RULE VI. THE AWARD
The decision of the arbitrators shall be expressed in a written award on the form prescribed by the ^standing Ccommittee, signed by the arbitrators, which shall include a brief explanation of the basis of the award and shall be submitted to the parties. If there is a dissent, it shall be signed separately but the award shall be binding if signed by a majority of the arbitrators. Unless the consent to arbitration provides *452 otherwise, the arbitrators may grant any lawful relief, including specific performance. An award may also be entered upon the consent of all the parties. Once the award is signed, the hearing may not be reopened except upon consent of all parties and the chairperson or sole arbitrator. The award may be set aside, modified, or corrected only in accordance with Ejections 682.13 and 682.14, Florida Statutes, as amended.
RULE VII. DEATH OR INCOMPETENCE OF A PARTY
In the event of the death or adjudication of incompetency of a party to the arbitration proceedingsr during the course of arbitration but prior to the rendering of a decision, the proceeding shall abate upon the suggestion of death of a party or notice of adjudication of ineompetency of a party to the chairperson, unless the personal representative or the guardian of the party consents to go forward. In the event of death or incompetence of a party after the close of the proceedings but prior to a decision, the decision rendered shall be binding upon the heirs, administratorSj or executors of the deceased and on the estate and guardian of the incompetent.
CHAPTER 15. REVIEW OF LAWYER ADVERTISEMENTS AND SOLICITATIONS
15-1. GENERALLY
RULE 15-1.1 PURPOSE
The Florida Bar, as an official arm of the Supreme Court of Florida, is charged with the duty of enforcing the rules governing lawyer advertising and solicitation and with assisting members of The Florida Bar to advertise their services in a manner beneficial to both the public and the legal profession. The board of governors, pursuant to the authority vested in it under rule 2-8.3, shall create a Sstanding Ccommittee on Aadvertising to advise members of The Florida Bar on permissible advertising and solicitation practices. It shall be the duty of the committee to administer the advertising evaluation program set forth in rule 4-7.5.
15.2. STANDING COMMITTEE ON ADVERTISING
RULE 15-2.1 MEMBERSHIP AND TERMS
The Sstanding Ccommittee on Aadvertis-ing shall consist of four 4 members of The Florida Bar and three 3 nonlawyers representing the public. Members of the committee shall be appointed by the president-elect of The Florida Bar, as provided in rule 2-8.1. The president-elect shall designate the chairman and vice-chairman, with the advice and consent of the board of governors. Members of the committee shall serve staggered three 3-year terms. No member may serve more than two 2 consecutive terms. A quorum shall consist of a majority of the members.
RULE 15-2.2 FUNCTIONS
It shall be the task of the committee to evaluate all advertisements filed with the committee for compliance with the rules governing advertising and solicitation and to provide written advisory opinions concerning compliance to the respective filers^ to develop a handbook on advertising for the guidance of and dissemination to members of The Florida Bar-⅛ and to recommend to the board of governors from time to time such amendments to the Rules of Professional Conduct as the committee may deem advisable.
RULE 15-2.3 REIMBURSEMENT FOR PUBLIC MEMBERS
The nonlawyer public members of the statewide standing committee shall be reimbursed for reasonable travel and related expenses associated with attendance at meetings of the committee.
RULE 15-2.4 RECUSAL OF MEMBERS
Members of the committee shall recuse themselves from consideration of any ad *453 vertisement proposed or used by themselves or other lawyers in their firms.
15-3. PROCEDURE
RULE 15-3.1 MEETINGS
The committee shall meet as often as is necessary to fulfill its duty to provide a prompt opinion regarding a submitted advertisement’s compliance with the advertising and solicitation rules.
RULE 15-3.2 RULES
The committee may adopt such procedural rules, subject to review by the board of governors, for its activities as may be required to enable the committee to fulfill its function.
15-4. REPORT OF COMMITTEE
RULE 15-4.1 GENERALLY
Within three 3 months after the conclusion of the first year of the review program, the committee shall submit to the board of governors a report detailing the year’s activities of the committee. The report shall include such information as the board of governors may require.
RULE 15-4.2 RECORDS
The committee shall keep records of its activities for three 3 years.
CHAPTER 16. FOREIGN LEGAL CONSULTANCY RULE
RULE 16-1.1 PURPOSE
The purpose of this chapter is to permit a person who is admitted to practice in a foreign country as an attorney, counselor at law, or the equivalent to act as a foreign legal consultant in the state of Florida. This chapter authorizes an attorney licensed to practice law in 1 or more foreign countries to be certified by the Supreme Court of Florida, without examination, to render services in this state as a legal consultant regarding the laws of the country in which the attorney is admitted to practice.
RULE 16-1.2 DEFINITIONS
A foreign legal consultant is any person who:
(a) has been admitted to practice in a foreign country as an attorney, counselor at law, or the equivalent for a period of not less than 5 of the 7 years immediately preceding the application for certification under this chapter;
(b) has engaged in the practice of law of such foreign country for a period of not less than 5 of the 7 years immediately preceding the application for certification under this chapter and has remained in good standing as an attorney, counselor at law, or the equivalent throughout said period;
(c) is admitted to practice in a foreign country whose professional disciplinary system for attorneys is generally consistent with that of The Florida Bar;
(d) has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within 10 years immediately preceding the application for certification under this chapter and is not the subject of any such disciplinary proceeding or investigation pending at the date of application for certification under this chapter;
(e) has not been denied admission to practice before the courts of any jurisdiction based upon character or fitness during the 15-year period preceding application for certification under this chapter;
(f) has submitted, pursuant to requirements determined by the Supreme Court of Florida, an application for certification under this chapter and the appropriate fees;
(g) agrees to abide by the applicable Rules Regulating The Florida Bar and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes;
(h) is over 26 years of age;
(i) maintains an office in the state of Florida for the rendering of services as a foreign legal consultant; and
(j) has satisfied, in all respects, the provisions of rule 16-1.4.
*454 RULE 16-1.3 ACTIVITIES
(a) Rendering Legal Advice. A person certified as a foreign legal consultant under this chapter may render legal services in the state of Florida; provided, however, that such services shall:
(1) be limited to those regarding the laws of the foreign county in which such person is admitted to practice as an attorney, counselor at law, or the equivalent;
(2) not include any activity or any service constituting the practice of the laws of the United States, the state of Florida, or any other state, commonwealth, or territory of the United States or the District of Columbia including, but not limited to, the restrictions that such person shall not:
(A) appear for another person as attorney in any court or before any magistrate or other judicial officer or before any federal, state, county, or municipal governmental agency, quasi-judicial, or quasi-governmental authority in the state of Florida, or prepare pleadings or any other papers in any action or proceedings brought in any such court, or before any such judicial officer, except as authorized in any rule of procedure relating to admission pro hac vice, or pursuant to administrative rule;
(B) prepare any deed, mortgage, assignment, discharge, lease, agreement of sale, or any other instrument affecting title to real property located in the United States, or personal property located in the United States, except where the instrument affecting title to such property is governed by the law of a jurisdiction in which the foreign legal consultant is admitted to practice as an attorney, counselor at law, or the equivalent;
(C) prepare any will or trust instrument affecting the disposition of any property located in the United States and owned by a resident thereof nor prepare any instrument relating to the administration of a decedent’s estate in the United States;
(D) prepare any instrument with respect to the marital relations, rights, or duties of a resident of the United States or the custody or care of the children of such a resident;
(E) render professional legal advice on the law of the State of Florida, the United States, or any other state, subdivision, commonwealth, or territory of the United States, or the District of Columbia (whether rendered incident to the preparation of a legal instrument or otherwise); or
(F) render any legal services without utilizing a written retainer agreement that shall specify in bold type that the foreign legal consultant is not admitted to practice law in the state of Florida nor licensed to advise on the laws of the United States or any other state, commonwealth, territory, or the District of Columbia, unless so licensed, and that the practice of the foreign legal consultant is limited to the laws of the foreign country where such person is admitted to practice as an attorney, counselor at law, or the equivalent-
lb) Representing Status as Member of The Florida Bar. Foreign legal consultants certified to render services under this chapter shall not represent that they are admitted to The Florida Bar or licensed as an attorney or foreign legal consultant in another state, commonwealth, territory, or the District of Columbia, or as an attorney, counselor at law, or the equivalent in a foreign country, unless so licensed. Persons certified under this chapter shall not use any title other than “Foreign Legal Consultant, Not Admitted to Practice Law in Florida,” although such person’s authorized title and firm name in the foreign country in which the person is admitted to practice as an attorney, counselor at law, or the equivalent may be used if the title, firm name, and the name of the foreign country are stated together with the above-mentioned designation.
Foreign legal consultants certified under this chapter must provide clients with a letter disclosing the extent of professional liability insurance coverage maintained by the foreign legal consultant, if any, as well as an affirmative statement advising the client that any client aggrieved by the foreign legal consultant will not have access to the Clients’ Security Fund of The Florida *455 Bar. The letter must further include the list of activities that the foreign legal consultant certified under this chapter is prohibited from engaging in, as set out in rule 16-1.3(a)(2)(AHF).
RULE 16-1.4 CERTIFICATION
(a) Commencement of Permission to Perform Services. Permission for a foreign legal consultant to render legal services under this chapter shall become effective upon the filing of an application and certification, with respect to an applicant, by the International Law Section of The Florida Bar, of the requirements of rules 16-1.2(a) through (j) and 16-1.3(a) and (b) herein. In addition to any other evidence that The Florida Bar, in its discretion, may require, the application shall include the filing and approval of:
(1) a duly authenticated certificate from the entity governing the practice of law in the foreign country in which the applicant is licensed to practice, which shall be accompanied by the official seal, if any, of such entity, and which shall certify:
(A) the entity's jurisdiction in such matters;
(B) the applicant's admission to practice in such foreign country and the date thereof;
(C) the applicant’s good standing as an attorney, counselor at law, or the equivalent; and
(D) whether any charge or complaint has ever been filed against the applicant with such entity, and if so, the substance of each such charge or complaint and the adjudication or disposition thereof;
(2) a letter of recommendation signed by and with the official seal, if any, of 1 of the members of the executive body of such entity or from 1 of the judges of the highest court of law of such foreign country, certifying to the applicant’s professional qualifications;
(3) a letter of recommendation from at least 2 attorneys, counselors at law, or the equivalent admitted in and practicing in such foreign country, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant’s moral character;
(4) a letter of recommendation from at least 2 members in good standing of The Florida Bar, setting forth the length of time, when, and under what circumstances they have known the applicant and their appraisal of the applicant’s moral character;
(5) a sworn statement by the applicant that the applicant:
(A) has read and is familiar with the Rules of Professional Conduct as adopted by the Supreme Court of Florida and will abide by, and be subject to, the provisions thereof;
(B) submits to the .jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined in chapter 3 of these rules and rule 16-1.6. The statement by the applicant must also authorize notification to the entity governing the practice of law in the foreign country in which the applicant is licensed to practice of any disciplinary action taken against the applicant in Florida; and
(C) shall comply with the requirements of rule 16-1.3(b) regarding disclosure;
(6) a written commitment to notify the court of any resignation or revocation of the foreign legal consultant’s admission to practice in the foreign country of admission, or in any other state or jurisdiction in which said consultant has been licensed as an attorney, counselor at law, or equivalent or as a foreign legal consultant, or of any censure, suspension, or expulsion in respect of such admission; and
(7) a duly acknowledged instrument setting forth the applicant’s address within the state of Florida and designating the secretary of state as such person’s agent upon whom process may be served, pursuant to applicable Florida law, with like effect as if served personally upon such applicant, in any action or proceeding thereafter brought against the applicant arising out of or based upon any legal services rendered or offered to be rendered by such *456 applicant within or to the residents of the state of Florida, whenever after due diligence service cannot be made upon such applicant at such address.
(b) Annual Sworn Statement. A person certified under this chapter as a foreign legal consultant shall submit to The Florida Bar, on an annual basis, a sworn statement attesting to the foreign legal consultant’s good standing as an attorney, counselor at law, or the equivalent in the foreign country in which such person is licensed to practice and shall also include with such statement an annual renewal fee equivalent to annual dues paid by members of The Florida Bar, in good standing, and such other evidence as The Florida Bar shall deem necessary to determine the continuing qualifications of the foreign legal consultant under this chapter.
RULE 16-1.5 WITHDRAWAL OR TERMINATION OF CERTIFICATION
Permission to perform services under this chapter shall cease immediately upon the earliest of the following events:
(a) The filing of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the court to The Florida Bar and to the foreign legal consultant involved. The foreign legal consultant shall have 15 days to request reinstatement for good cause.
(b) The foreign country in which the foreign legal consultant is admitted to practice discontinues having a professional disciplinary system for attorneys that is generally consistent with that of The Florida Bar.
(c) The failure of the foreign legal consultant to comply with any applicable provisions of this chapter.
RULE 16-1.6 DISCIPLINE
(a) Discipline by Florida Courts. Each person licensed to practice as a foreign legal consultant under this chapter is expressly subject to the Rules of Professional Conduct and to continuing review of such consultant’s qualifications to retain any license granted hereunder, and shall be subject to the disciplinary .jurisdiction of the Supreme Court of Florida and the other courts of this state-
lb) Withdrawal of Certification. In addition to any appropriate proceedings and discipline that may be imposed by The Florida Ear or the Supreme Court of Florida under chapter 3 of the Rules Regulating The Florida Bar, the Supreme Court of Florida may, at any time, with or without cause, withdraw certification hereunder.
(c) Notification of Other Jurisdictions. The Florida Bar shall be authorized to notify each entity governing the practice of law in the foreign country in which the foreign legal consultant is licensed to practice law of any disciplinary action taken against the foreign legal consultant.
RULE 16-1.7 SUNSET PROVISION
This chapter shall expire and all certificates issued hereunder shall likewise expire on January 1, 1998, unless sooner reenacted by the Supreme Court of Florida.